JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kevin McCullers
84 Court Street
Bethlehem, Pa. 18016

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Feeda R. Musitief, Esquire
1333 Race Street
Philadelphia, Pa. 19107

## DEFENDANTS

Commonwealth of Pa., et al.

County of Residence of First Listed Defendant  Lehigh
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical |  |  | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability |  | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
|  |  | ☐ 550 Civil Rights | | | |
|  |  | ☐ 555 Prison Condition | | | |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. A1331, 28 U.S.C. A1367 and 42 U.S.C. Section 1983

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $  See Complaint
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  7-6-15
SIGNATURE OF ATTORNEY OF RECORD   X

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Kevin McCullers | : | CIVIL ACTION |
| v. | : | |
| Commonwealth of Pennsylvania, et al. | : | |
|  | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                           (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.               ( )


| 7-6-15 | Feeda R. Musitief | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-665-0100 | 215-665-1393 | fmusitief@fineandstaud.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 84 Court Street, Philadelphia, Pa. 18016

Address of Defendant: 1515 Fairmount Avenue, Philadelphia, Pa. 19130 *(See Attached)*

Place of Accident, Incident or Transaction: Whitehall, PA
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☒

Does this case involve multidistrict litigation possibilities?     Yes☐   No☒

RELATED CASE, IF ANY:

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place U in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, Feeda R. Musitief, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 7-6-15          _____          202768
                      Attorney-at-Law                   Attorney I.D.#

NOTE:   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7-6-15          Feeda R. Musitief, Esquire          202768
                      Attorney-at-Law                      Attorney I.D.#

CIV. 609 (5/2012)

## Addresses of Defendants

Commonwealth of Pennsylvania
1515 Fairmount Avenue
Philadelphia, PA 19130

Lehigh County
455 Hamilton Street
Allentown, PA 18101

City of Allentown
435 Hamilton Street
Allentown, Pa 18101

Lehigh County Constables Association
455 Hamilton Street
Allentown, Pa 18101

Howard Altemos
17 South 7th Street
Allentown, PA 18101

Carlos Roberto Bernardi
17 South 7th Street
Allentown, PA 18101

JOHN DOES (1 THROUGH 10)        :
17 South 7th Street             :
Allentown, PA 18101            :
                  Defendants.   :

## COMPLAINT

### I.  PARTIES

1.      Plaintiff, Kevin McCullers, is an adult individual and resident of the Commonwealth of Pennsylvania with an address stated above.

2.      Defendant, Commonwealth of Pennsylvania ("hereinafter "Commonwealth"), is a government entity established to write laws, enforce laws, proscribe, regulate, and protect the health, safety and welfare of the citizens and residents of the Commonwealth.  Defendant, Commonwealth's, legislature passed the Pennsylvania Commission on Crime and Delinquency Law, which resulted in the establishment of a subcommittee, "The Constables' Education and Training Board," which trains and certifies elected and appointed constables and deputy constables, including but not limited to, Howard Altemos, Carlos Roberto Bernardi, and John Does (1 through 10).

3.      Defendant, Lehigh County, is a municipality, government, and/or public entity with a registered office of business at the above stated address.  At all times relevant, Pennsylvania constables employed within the geographical boundaries of Defendant Lehigh County, perform duties on behalf of the County, such as serving complaints, protecting election polls, and serving warrants for unpaid parking and/or traffic tickets.

4.      Defendant, City of Allentown, is a municipality with a principal place of business as stated above.

5.      Defendant, Lehigh County Constables Association, is a non-profit organization duly existing under the laws of the Commonwealth of Pennsylvania and operates, in part, to assist in reviewing and resolving disputes related to a constable's performance of duties.

6.      Defendant, Howard Altemos ("Altemos"), is an adult individual, with a business address at the above address and at all times relevant, was elected and/or appointed to perform duties as a Pennsylvania State Constable for Allentown, Lehigh County.

7.      Defendant, Carlos Roberto Bernardi, ("Bernardi") is an adult individual, with a business address at the above address and at all times relevant, elected and/or appointed to perform duties as a Pennsylvania State Constable for the City of Allentown 8th Ward First District.   Defendant Bernardi was appointed to constable on December 11, 2007 by the Honorable Robert L. Steinberg of the Lehigh County Court of Common Pleas, due to a vacancy. Defendant Bernardi was then elected in November of 2009 to a six-year term as constable, unopposed, with 13% of the vote.

8.      Defendant, John Does (1 through 10), is/are adult individuals, with a business address at the above address, and at all times relevant, was/were elected and/or appointed to perform duties as a Pennsylvania State Constable.

9.      At all relevant times to this matter, Defendants, Altemos, Bernardi and John Does (1-10), were acting under color of law in their official capacity and on behalf of Defendant Commonwealth, Defendant, Lehigh County, and/or Defendant, City of Allentown.

10.      At all times relevant, Defendant, Commonwealth, Defendant, Lehigh County, Defendant, City of Allentown, and Defendant, Lehigh County Constables Association, agreed, accepted, acquiesced, and/or were otherwise bound by the actions, omissions, and conduct of their respective owners, officers, executives, managers, supervisors, employees, and agents

3

including but not limited to Defendants, Altemos, Bernardi, and John Does (1-10).

## II.     JURISDICTION

11.     Jurisdiction and venue are appropriate before the United States District Court for the Eastern District of Pennsylvania as all Defendants reside in the Eastern District of Pennsylvania, and all actions and occurrences giving rise to this litigation occurred in the Eastern District.   Subject matter jurisdiction is maintained under federal question jurisdiction, 28 U.S.C.A. 1331, and this Court maintains ancillary jurisdiction over the state law claims. 28 U.S.C.A. 1367.

## III.    INTRODUCTION

12.     In recent time across the United States, there have been a number of troubling occurrences involving law enforcement shooting and/or killing unarmed civilians in particular African Americans.

13.     The shooting of Plaintiff, Kevin McCullers, on July 17, 2014 at the hands of Pennsylvania State constables is one of the most troubling incidents to date.

14.     This lawsuit is brought to hold accountable state, local, and individual actors for the harms and losses suffered by Plaintiff, Kevin McCullers, and to bring necessary reform to the Constable system in Pennsylvania and to highlight the need for greater accountability on all levels of government.

15.     This lawsuit is brought in furtherance of protecting the Constitutional rights of all citizens in this country in particular the rights of African Americans to be free from illegal, unreasonable excessive use of force.

### III.    OPERATIVE FACTS

### A.  Pennsylvania Constables

16.    Pennsylvania constables "shall perform all duties authorized or imposed on them by [Pennsylvania] statute." 44 Pa.C.S.A. 7151.

17.    Pennsylvania constables are empowered to serve warrants for parking tickets and make arrests.  44 Pa.C.S.A. 7153 & 7158.

18.    Pennsylvania constables are permitted to carry firearms and of the 2,143 active constables in Pennsylvania, more than half are certified to carry firearms.

19.    Pennsylvania constables do not wear uniforms but are required to carry their identification as constable, and are recommended to wear clothing that identifies them as constables, while performing duties.

20.    The Constables' Education and Training Board, with the approval of the Pennsylvania Commission on Crime and Delinquency, trains constables and establishes standard for the certification or qualification of constables, to carry and use firearms in the performance of any duties.  44 Pa.C.S.A. 7148.

21.    In the 1990s, the Pennsylvania legislature attempted to place Pennsylvania constables under the purview of Defendant, Commonwealth's, Judiciary, as most duties are in furtherance of the Judicial Branch, however, constables are considered part of the Executive Branch, and thus the law was deemed unconstitutional under the separation of powers doctrine.

22.    Pennsylvania constables are government employees for various reasons, including but not limited to, the fact that the government trains them, controls the manner of their work, provides their tools, provides their certification, employs them in a work or occupation for which the constable could not work otherwise and thus he or she has limited skill of his or her own, and

the government has the right to terminate them at any time.

23.     Defendant, Commonwealth, and/or Defendant, Lehigh County, by and through the Lehigh County Court of Common Pleas President Judge, are/were empowered to create a Constable Review Board, or an advisory board for constables in the geographic area, wherein complaints can be lodged and recommendations for removal made by the public.

24.     On information and belief, no such advisory board was established.

25.     On information and belief, Defendant, Lehigh County Constables Association, operates as an advisory board for constables, or as another entity wherein constabulary duties are watched and examined.

26.     Recently, a Joint State Government Commission of Defendant, Commonwealth, conducted a study of the constable system and in April of 2014 proposed reforms including: increased training, the wearing of uniforms, increased accountability, and an expanded "judicial authority" to remove constables for malfeasance and prohibited conflicts.

27.     In April 2014, the Joint State Government Commission General Assembly of Defendant Commonwealth issued "Proposed Statutory Reforms" for constables in Pennsylvania. *A copy of the Proposed Reforms is attached hereto as Exhibit "A."*

28.     According to the Proposed Reforms and opinion of some legal experts "some of the actions constables currently perform do not fall into the categories appropriate for elected officials."

29.     At all times, Defendants knew or reasonably should have known that lack of hiring policies and procedures, non-enforcement of rules, lack of training, insufficient training, and insufficient supervision, were resulting in excessive use of force by constables, including homicide and/or attempted homicide, assault, weapons violations, and impersonating police

officers.

30.     On information and belief, prior to the subject incident, there were multiple incidents involving Pennsylvania constables violating constitutional rights, including but not limited to, use of excessive force and shootings, prompting complaint from citizens of the heavy-handed and sometimes criminal tactics of the constables.

31.     In 2008, the Associated Press issued multiple articles pertaining to the disarray of the Pennsylvania constabulary system, the need for reform, and the litany of abuses perpetrated by Pennsylvania constables. *Copies of the Associated Press Articles: "Abuses by Pa. constables persist; reform urged", 7/30/2008, and "Pa lawmaker to seek constable system reforms", 10/21/2008, attached hereto as Exhibit "B."*

32.     In 1998, also upon information and belief, Pennsylvania prosecutors asked the Pennsylvania legislature to regulate and rein in the constables.

33.     Defendants, Altemos, Bernardi, and/or John Does (1-10) was/were/are employed as Pennsylvania State Constable(s), with six (6) year terms, and is/are authorized by statute to serve process, serve warrants, and carry firearms without the need for an independent firearm license.

34.     Defendants, Altemos, Bernardi, and/or John Does (1-10), perform constable duties on behalf of Defendant, Commonwealth, Defendant, Lehigh County, and/or on behalf of Defendant, City of Allentown.

35.     Defendants, Altemos, Bernardi, and/or John Does (1-10) was/were and/or were supposed to be, trained and certified by "The Constables Education and Training Board" subcommittee of Defendant, Commonwealth.

36.     Defendants, Altemos, Bernardi, and/or John Does (1-10), were supervised and reviewed, or should have been supervised and reviewed by Defendant, Commonwealth, Defendant, Lehigh County, Defendant, City of Allentown, and/or Defendant, Lehigh County Constables Association.

37.     At all material times, the training provided by Defendants, to constables and in particular to Defendants, Altemos, Bernardi, and/or John Does (1-10) was/were severely inadequate and deficient regarding: announcing the constables presence, making arrest, serving warrants, discharging weapons, use of deadly force, and similar training on procedures reasonably and foreseeably resulting in the following incident.

38.     At all material times and prior to the shooting of Kevin McCullers, Defendants, Altemos, Bernardi, and/or John Does (1-10) were not fit to serve as constables.

39.     At all relevant times before the shooting of Plaintiff, Kevin McCullers, it was known or should have been known to Defendants, that Defendants, Altemos, Bernardi, and/or John Does (1-10) had/have violent propensities and/or persons in the public complained about legal and professional infractions made in the course of Defendants constabulary duties.

40.     Upon information and belief, Defendant Altemos has a history of violence, and also has had Protection from Abuse (PFA) orders entered against him, in Lehigh County, dating as far back as 1998.

41.     Upon information and belief, in 2013, Defendant Altemos's wife filed a PFA against Defendant Altemos for having pointed two handguns at her while the two were in an argument at their residence.

42.     Upon information and belief, Defendant Bernardi has a history of violence, and has also had criminal charges made against him for incidents dating back to 2003.

43.     In 2003, upon information and belief, Defendant Bernardi, is alleged, to have bruised, scratched, and given a swollen lip to his former wife at his residence in Allentown, Pennsylvania, resulting in the charges of simple assault and two counts of indecent assault.

44.     Upon information and belief, Defendant John Does (1-10) have a history of violence.

45.     On information and belief, Defendants Altemos, Bernardi, and John Does (1-10) has/have had other legal, criminal, and/or professional infractions for which Defendants knew or reasonably should have known.

46.     Despite Defendants Altemos, Bernardi, and John Does (1-10)'s various legal, criminal, and professional incidents, Defendants have not reviewed, limited, or deemed them incompetent.

47.     Upon information and belief, prior to the subject incident, Defendants Altemos, Bernardi, and/or John Does (1-10) were involved in incidents in which they had used excessive force and/or committed constitutional violations while performing constabulary duties.

48.     Upon information and belief, prior to the subject incident, Defendants Altemos, Bernardi, and/or John Does (1-10) had taken action and/or espoused beliefs underlying a racial bigotry or intolerance toward African Americans.

## B.  The Incident of July 17, 2014

49.     On July 17, 2014 at around approximately 7:30 a.m., Defendants Altemos, Bernardi, and/or John Does (1-10) travelled to Plaintiff, Kevin McCullers's, residence at 3449 Portland Drive, Whitehall, PA to serve a warrant for unpaid parking/traffic tickets, on behalf of Defendants, and under the authority of Pennsylvania statute, regulation, custom, and/or usage.

50.    Defendants, Altemos, Bernardi and/or John Does (1-10) were plain clothed and not readily identified as law enforcement and/or constables.

51.    At all material times, Defendants did not identify themselves as constables or other government entity on official business.

52.    Defendants, Altemos, Bernardi, and/or John Does (1-10)'s actions that day were under the personal direction of Defendant Commonwealth of Pennsylvania's Chairman Josh Shapiro, Defendant, Lehigh County's Commissioners, and/or Defendant, City of Allentown, and/or alternatively, these persons had actual knowledge and acquiescence in the activity.

53.    At the time of the incident, Plaintiff was exiting his residence, in his motor vehicle, driving out from his one car garage, to a nearby Dunkin Dounuts establishment.

54.    Defendants Altemos, Bernardi, and/or John Does (1-10) never knocked on Plaintiff's door, but were believed, at all times, to have been on Plaintiff's property.

55.    On information and belief, Defendants Altemos, Bernardi, and/or John Does (1-10) hid or took other action to avoid being observed by Plaintiff.

56.    Defendants Altemos, Bernardi, and/or John Does (1-10) did conceal their ability to be seen by positioning themselves to the left of Plaintiff's driveway.

57.    At the time of the incident, Plaintiff, Kevin McCullers was unarmed.

58.    As Plaintiff exited his garage and while he was still on his driveway, Defendants Altemos, Bernardi, and/or John Does (1-10), suddenly and without warning, fired on Plaintiff.

59.    On information and belief, Defendants Altemos, Bernardi, and/or John Does (1-10) aim/aimed and open fired on Plaintiff, using handgun(s), with intent to kill.

60.    On information and belief, Defendant Bernardi shot Plaintiff.

61.     On information and belief, the shooter was to Plaintiff's left and/or the driver's side of his vehicle.

62.     On information and belief, one of the Defendants shot Plaintiff's tire.

63.     Plaintiff did not provoke the shooting in any manner.

64.     At all material times, Defendants Altemos, Bernardi, and/or John Does (1-10) were never met or threatened with deadly force.

65.     Pursuant to Federal and State statutes and laws in affect at the time of the shooting, deadly force may only be employed where the constable or law enforcement officer is met with deadly force.

66.     Upon information and belief, and/or in the alternative, Defendants Altemos, Bernardi, and/or John Does (1-10) harbored animosity and ill will towards Plaintiff and conspired to deprive him of his Constitutional Rights and to cause him serious bodily harm including death.

67.     To the extent Defendants Altemos, Bernardi, and/or John Does (1-10) did not fire the bullet that struck Plaintiff, they conspired and assisted with the actions of the shooter.

68.     Defendants cannot justify the shooting of Plaintiff, Kevin McCullers, who was an unarmed civilian.

69.     Upon information and belief, Defendants, Altemos, Bernardi, and/or John Does (1-10) had been on Plaintiff's property on at least one occasion prior to July 17, 2014.  The Defendants had arrived after Plaintiff had left for work and Defendants encountered Plaintiff's girlfriend.

70.   Defendant Altemos, Bernardi, and/or John Does (1-10) were aggressive, belligerent, and rude with Plaintiff's girlfriend, resulting in her contacting the White Hall Township police department, who came out to the property and ended the encounter.

71.   On information and belief, Defendants Altemos, Bernardi, and/or John Does (1-10) did not render aid or assistance to Plaintiff after they had grievously injured Plaintiff.

72.   On information and belief, the bullet struck Plaintiff from the left side and traveled to his neck and/or cervical spine, causing paralysis and paralyzing Plaintiff.  Plaintiff also suffered a left scapular fracture.  Plaintiff has undergone posterior cervical thoracic fusion, and other surgeries and procedures.  Plaintiff has an inferior vena cava filter (IVC) to assist with blood clots and Deep Vein Thrombosis.

73.   To this date, Plaintiff is wheelchair bound.

74.   As a result of the incident, Plaintiff has severe, permanent, disabling and life altering injuries.

75.   As a direct and proximate result of Defendants actions herein, Plaintiff has suffered great physical pain and mental anguish including, paralysis, loss of use of limbs, bone fractures, disfigurement, loss of bodily function, structural and neurologic damage and harms, nerve damage, deep vein thrombosis and blood clots, the fear of blood clotting, muscle spasms, the need for surgeries, the need for treatment and assistive devices, the need for assistive machinery, mental stress, aide, fear, anxiety, shortening of livelihood, depression, humiliation, embarrassment, and mental anguish.

76.   As a direct and proximate result of Defendants actions herein, Plaintiff has incurred medical bills, hospital bills, surgery bills, medication costs, cost of assistive devices, cost of assistive machinery, cost of assistive living requirements, cost of assistive personnel

including nurses and aides, future medical bills and costs, loss of wages, loss of back pay, loss of front pay, loss of earning capacity, out-of-pocket expense, debt, liens, and other reasonably incurred costs and expenses.

77.     As a direct and proximate result of Defendants actions herein, Plaintiff has suffered, is suffering, and will suffer for an indefinite time into the future, significant pain and suffering, loss of mobility, paralysis, embarrassment, humiliation, loss of enjoyment of life, loss of function, loss of ability to perform every day chores, is disabled, is limited, is prevented from engaging in sporting, recreations, household, and other activities and chores, is limited in raising his children, is limited in being intimate and has erectile dysfunction, and has other significant effects and harms to his livelihood that can never be recovered.

78.     As a direct and proximate result of Defendants actions herein, Plaintiff has incurred substantial medical bills and will require substantial care over his lifetime including but not limited to therapy, medical devices, medications, doctor visits, and various care and treatment.

79.     To date, no criminal charges have been made against any individual involved in the incident of July 17, 2014, including either Plaintiff or the individual Defendants.

80.     To date, Defendants have protected, failed to prosecute, and refuse to divulge the name(s) of the Pennsylvania constable(s) involved in the shooting of Plaintiff,

81.     On information and belief, Defendant Bernardi is eligible and running for re-election as Pennsylvania constable, and is using the same hardball tactics he used in 2009, such as Petitioning to Contest Nomination Petitions of other candidates for Pennsylvania constable.

**COUNT ONE - FEDERAL CIVIL RIGHTS VIOLATIONS, 42 U.S.C.A. §1983**
**PLAINTIFF v. DEFENDANTS, COMMONWEALTH OF PENNSYLVANIA, LEHIGH**
**COUNTY, CITY OF ALLENTOWN, ALTEMOS, BERNARDI, AND JOHN DOES**
**(1-10)**

82.     Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

83.     As a direct and proximate result of Defendants conduct alleged herein, Plaintiff was deprived of his right to be free from the needless and unreasonable use of excessive force; and, to be secure in his person and property. As a result of Defendants actions, Plaintiff suffered and continues to suffer harm, losses, damages, and injury, set forth above, and further in violation of his Constitutionally protected rights, and in particular, the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983.

84.     At all times, the foregoing actions of Defendants Altemose, Bernardi, and/or John Does (1-10) on July 17, 2014, were acting in their individual and/or official capacity and under the personal direction of Defendant Commonwealth of Pennsylvania's, Chairman Josh Shapiro, Defendant, Lehigh County's Commissioners, and/or Defendant, City of Allentown, and/or alternatively, these Defendants and individuals had actual knowledge and acquiescence in the activity.

85.     Upon information and belief, the foregoing actions of July 17, 2014 were the direct and proximate result of Defendants having encouraged, tolerated, ratified and having been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, review, supervision, investigation or discipline in the areas of:

      a.   Inadequate and under training and supervision;

      b.   The use of unreasonable and excessive force;

      c.   The monitoring of constables, including Defendants Altemos, Bernardi,

14

and/or John Does (1-10), whom Defendants knew or should have known had a penchant for violence, intolerance and bigotry for African Americans, were suffering from emotional and/or psychological problems, and/or otherwise were impaired in his/their ability to function as constables and thus the foregoing incident was obvious and foreseeable;

d. The failure to identify and take remedial or disciplinary action against constables who were the subject of prior internal complaints or misconduct, including Defendants Altemos, Bernardi, and/or John Does (1-10), for which the foregoing incident was foreseeable and obvious;

e. The inadequate hiring, retention, and lack of screening of constables, including Defendants, for which Defendants showed deliberate indifference to the foreseeable and obvious consequence of these actions;

f. Using different personnel when Defendants knew or reasonably should have known the foregoing incident would occur;

g. The failure to establish or remedy insufficient policies, procedures, directives, training, and/or instruction, including but not limited to, announcing presence, arrest, serving warrant, use of force, group dynamics, use of firearms, and discharging firearms in public when the foregoing incident was a reasonably foreseeable and obvious consequence of these policies, procedures, directives, training, and/or instruction; and,

h. Failing to take other action, evincing a deliberate indifference to the safety of Plaintiff, when the foregoing incident was reasonably foreseeable.

86.     All of the foregoing conduct attributed to Defendants reasonably, foreseeably, and causally resulted in the offenses to Plaintiff and his injuries and harms as set forth herein.

87.     At all times relevant, Defendants knew and were aware of Defendants Altemose, Bernardi, and/or John Does (1-10) prior legal, criminal, and professional infractions and incidents including the protection from abuse and assault charges and were aware that Defendants Altemose, Bernardi, and/or John Does (1-10) presented a danger to the public.

88.     Defendants failed to properly sanction or discipline constables, who were aware of-, conceal, and/or aid violations of Constitutional rights of citizens by other Defendants employees, thereby causing and encouraging Defendants constable including Defendants Altemos, Bernardi, and/or John Does (1-10), in this case, to violate the rights of citizens such as Plaintiff.

89.     Defendants were all directly involved in the decisions leading to Defendants Altemos, Bernardi, and/or John Does (1-10) actions on July 17, 2014 including the shooting of Plaintiff.

90.     Defendants failed to set-up an appropriate Constable Review Board, wherein complaints regarding Defendants Altemos, Bernardi, and/or John Does (1-10)'s actions would be received and recorded, and thus were deliberately indifferent to the obvious and foreseeable harms of Plaintiff's constitutional violations.

91.     Defendants failed to give proper notice to the public of where to make complaints and grievances regarding Defendants Altemos, Bernardi, and/or John Does (1-10), and thus were deliberately indifferent to foreseeable harms of Plaintiff's constitutional violations.

92.    Defendants failed to record or have appropriate procedures in place to record and respond to complaints and grievances about Defendants Altemos, Bernardi, and/or John Does (1-10), prior to the incident, and thus were deliberately indifferent to the foreseeable harm.

93.    Defendants failed to recommend removal of Defendants Altemos, Bernardi, and/or John Does (1-10) or discipline him/them for prior incidents, and thus were deliberately indifferent to foreseeable harm.

94.    Defendants failed to take appropriate action and to recommend that Defendants Altemos, Bernardi, and/or John Does (1-10) be relieved or limited in constabulary duties when Defendants knew or reasonably should have known he/they was/were not fit for all or full constabulary duties, and thus were deliberately indifferent to foreseeable harm.

95.    Defendants have failed to devise an appropriate means to supervise and regulate constables, who are empowered with the authority to serve process, keep the peace, make arrest, and carry firearms in the name and official capacity of Defendants, and thus were deliberately indifferent to foreseeable harm.

96.    Defendants have failed to provide, and set forth appropriate guidelines and rules from which an individual's fitness for duty as constable can be determined or ruled, for whether he or she should continue to carry a firearm, and thus were deliberately indifferent to foreseeable harm.

97.    Defendants violated Plaintiff's Constitutional Rights to be free from unwarranted search and seizures, arrests, due process, excessive force, and similar Constitutional Rights by permitting improperly trained, and unsupervised constables to enter property, make arrests, serve warrants, and carry and discharge firearms in the course of duties, and thus were deliberately indifferent to foreseeable harm.

98.     In addition to permitting Pennsylvania Constables to violate Constitutional Rights of citizens and residents with insufficient screening, training, supervision, and oversight, Defendants have failed to provide appropriate eligibility parameters for constables and/or a reasonable manner for their hire, election, and/or appointment to avoid against misconduct, and thus were deliberately indifferent to foreseeable harm.

99.     Defendants permitted Defendants Altemos, Bernardi, and/or John Does (1-10) to carry a firearm(s) as constable when he/they could not as citizen(s), under the circumstances.

100.    Defendants failed to take appropriate action to prevent the foreseeable incident.

101.    Defendants have, by the above-described actions, deprived Plaintiff of rights secured by the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

102.    Defendants' actions were, at all times, willful, wanton, and with reckless or callous indifference to Plaintiff's federally protected rights or were motivated by evil motive or intent, and therefore justify the imposition of punitive damages.

WHEREFORE, Plaintiff, Kevin McCullers, requests the following relief from Defendants, Commonwealth of Pennsylvania, Lehigh County, City of Allentown, Howard Altemos, Carlos Roberto Bernardi, and/or John Does (1-10), individually or jointly, for:

        a.    Compensatory damages;

        b.    Punitive damages;

        c.    Reasonable attorney's fees and costs;

        d.    Such other and further relief as appears reasonable and just; and

        e.    A jury trial as to each Defendant and as to each count.

**COUNT TWO - SUPPLEMENTAL STATE COUNTS FOR ASSAULT AND BATTERY**
**PLAINTIFF v. DEFENANT ALTEMOSE, BERNARDI, & JOHN DOES (1-10)**

103.    Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

104.    On July 17, 2014 Defendants Altemos, Bernardi, and/or John Does (1-10) intentionally raised a firearm/firearms at Plaintiff, while on Plaintiff's property, putting Plaintiff in reasonable fear and apprehension of an imminent and harmful touching that caused Plaintiff resulting injuries and harms including fear, anxiety, stress, depression, mental anguish and other emotional pain and suffering.

105.    On July 17, 2014 Defendants Altemos, Bernardi, and/or John Does (1-10) intentionally shot Plaintiff, which was an intentional offensive and harmful touching, which has caused Plaintiff great physical pain and mental anguish including, paralysis, loss of use of limbs, bone fractures, disfigurement, loss of bodily function, structural and neurologic damage and harms, deep vein thrombosis and blood clots, the fear of blood clotting, muscle spasms, the need for surgeries, the need for treatment and assistive devices, the need for assistive machinery, mental stress, aide, fear, anxiety, depression, and mental anguish.

106.    As a direct and proximate result of Defendants Altemos, Bernardi, and/or John Does (1-10)'s conduct, Plaintiff has incurred medical bills, hospital bills, surgery bills, medication costs, cost of assistive devices, cost of assistive machinery, cost of assistive living requirements, cost of assistive personnel including nurses and aides, loss of wages, loss of back pay, loss of front pay, loss of earning capacity, out-of-pocket expense, debt, liens, and other reasonably incurred costs and expenses.

107.    The shooting of Kevin McCullers was the direct result of severely inadequate and recklessly indifferent training, direction, and supervision of Defendants Altemos, Bernardi, and/or John Does (1-10), who were never properly supervised, disciplined, directed, or trained on proper use of deadly force, circumstances warranting using fire arms, and proper use of fire arms.

108.    As a direct and proximate result of Defendants Altemos, Bernardi, and/or John Does (1-10)'s conduct, Plaintiff has loss of mobility, loss of enjoyment of life, loss of function, loss of ability to perform every day chores, is disabled, is limited, is prevented from engaging in sporting, recreations, household, and other activities and chores, is limited in raising his children, and has other significant effects and harms to his livelihood that can never be recovered.

109.    All of Plaintiff's injuries are significant, severe, and permanent.

110.    Defendants Altemos, Bernardi, and/or John Does (1-10) was/were, at all times, willful, wanton, and with reckless and/or without callous indifference to Plaintiff's health and safety and motivated by evil intent, and therefore justify the imposition of punitive damages.

WHEREFORE, Plaintiff, Kevin McCullers, requests the following relief from Defendants Howard Altemos, Carlos Roberto Bernardi, and/or John Does (1-10), individually or jointly:

        a.       Compensatory damages;

        b.       Punitive damages;

        c.       Costs of suit;

        d.       Such other and further relief as appears reasonable and just; and

        e.       A jury trial as to each Defendant and as to each count.

**COUNT THREE – NEGLIGENCE / RESPONDEAT SUPERIOR/ AGENCY**
**PLAINTIFF v. DEFENDANTS, COMMONWEALTH OF PENNSYLVANIA, LEHIGH**
**COUNTY, CITY OF ALLENTOWN, AND LEHIGH COUNTY CONSTABLES**
**ASSOCIATION**

111.   Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

112.   At all times relevant, Defendants were under an obligation to ensure that citizens of the Commonwealth of Pennsylvania, Lehigh County, and City of Allentown, were not unnecessarily and unreasonably attacked and harmed by governmental entities, agents, and constables.

113.   At all times relevant, Defendants were under an obligation to ensure that citizens of the Commonwealth of Pennsylvania, Lehigh County, and City of Allentown did not unnecessarily and unreasonably have their Federal and States rights compromised and taken by governmental entities, agents, and constables.

114.   At all times, Alternatively, Defendants Altemos, Bernardi, and/or John Does (1-10) was/were under the direction, supervision, oversight, guidance, and otherwise working on behalf of Defendants, and/or Defendants knew and acquiesced in the forgoing actions.

115.   Upon information and belief, the foregoing actions of July 17, 2014 were the direct and proximate result of Defendants having encouraged, tolerated, ratified and having been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, review, supervision, investigation or discipline in the areas of:

     a.   Inadequate and under training and supervision;

     b.   The use of unreasonable and excessive force;

c. The monitoring of constables, including Defendants Altemos, Bernardi, and/or John Does (1-10), whom Defendants knew or should have known had a penchant for violence, intolerance and bigotry for African Americans, were suffering from emotional and/or psychological problems, and/or otherwise were impaired in his/their ability to function as constables and thus the foregoing incident was obvious and foreseeable;

d. The failure to identify and take remedial or disciplinary action against constables who were the subject of prior internal complaints or misconduct, including Defendants Altemos, Bernardi, and/or John Does (1-10), for which the foregoing incident was foreseeable and obvious;

e. The inadequate hiring, retention, and lack of screening of constables, including Defendants, for which Defendants showed deliberate indifference to the foreseeable and obvious consequence of these actions;

f. Using different personnel when Defendants knew or reasonably should have known the foregoing incident would occur;

g. The failure to establish or remedy insufficient policies, procedures, directives, training, and/or instruction, including but not limited to, announcing presence, arrest, serving warrant, use of force, group dynamics, use of firearms, and discharging firearms in public when the foregoing incident was a reasonably foreseeable and obvious consequence of these policies, procedures, directives, training, and/or instruction; and,

116.    Defendants failed to properly supervise, hire, appoint, train, sanction or discipline constables, who they knew or reasonably should have known were a danger and threat and would reasonably result in injury and harm to citizens, including Plaintiff.

117.    Defendants failed to set-up an appropriate Constable Review Board, wherein complaints regarding Defendants Altemos, Bernardi, and/or John Does (1-10)'s actions would be received and recorded and actions could be taken to deem the incompetent and remove.

118.    Defendant failed to give proper notice to the public of where to make complaints and grievances regarding constables, including Defendants Altemos, Bernardi, and/or John Does (1-10).

119.    Defendants failed to record or have appropriate procedures in place to record and respond to complaints and grievances about Defendants Altemos, Bernardi, and/or John Does (1-10), prior to the incident.

120.    Defendants failed to recommend removal of Defendants Altemos, Bernardi, and/or John Does (1-10)'s constable status or discipline him/them for prior incidents.

121.    Defendants failed to take appropriate action and to recommend that Defendants Altemos, Bernardi, and/or John Does (1-10) be relieved or limited in his/their constable duties when Defendants knew or reasonably should have known he/they was/were not fit for the constable duties, and that what occurred was reasonably foreseeable.

122.    Defendants have failed to devise an appropriate means to supervise and regulate constables, who are empowered with the authority to serve process, keep the peace, make arrest, and carry firearms in the name of the Commonwealth of Pennsylvania, with insufficient oversight and supervision.

123.    Defendants have failed to provide, and set forth appropriate guidelines and rules from which an individual's fitness for duty as constable can be determined or ruled, for whether he or she should continue to carry a firearm.

124.    Defendants permitted Defendants Altemos, Bernardi, and/or John Does (1-10) to carry a firearm as a constable when he/they would not be able to do the same as a citizen, under the circumstances.

125.    Defendants failed to properly screen, train, supervise, and provide oversight for Defendants Altemos, Bernardi, and/or John Does (1-10), to prevent the foregoing incident.

126.    Defendants have, by the above-described actions, deprived Plaintiff of rights secured by the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

127.    Defendants took no action to limit or review Defendants when obtaining knowledge and/or reasonable knowledge of the constables violent histories and legal, criminal, and professional infractions.

128.    Defendants' actions were, at all times, willful, wanton, and with reckless or callous indifference to Plaintiff's safety, health, and welfare and/or were motivated by evil motive or intent, and therefore justify the imposition of punitive damages.

WHEREFORE, Plaintiff, Kevin McCullers, requests the following relief from Defendants, Commonwealth of Pennsylvania, Lehigh County, City of Allentown, and/or Lehigh County Constables Association, individually or jointly, for:

a.      Compensatory damages;

b.      Punitive damages;

c.      Fees and costs;

24

d.      Such other and further relief as appears reasonable and just; and

e.      A jury trial as to each Defendant and as to each count.


                              FINE AND STAUD, LLC
                              RESPECTFULLY SUBMITTED,

                    By:      _____
                              FEEDA R. MUSITIEF, ESQUIRE
                              Attorney Identification No. 202768
                              Attorney for Plaintiff

                              FINE AND STAUD, LLC
                              1333 Race Street
                              Philadelphia, PA 19107
                              (215) 665-0100
                              fmusitief@fineandstaud.com

Date: 7 - 6 - 15


25

# Exhibit A

# JOINT STATE
# GOVERNMENT COMMISSION
### General Assembly of the Commonwealth of Pennsylvania

## CONSTABLES IN PENNSYLVANIA:
## PROPOSED STATUTORY REFORMS

### APRIL 2014



JOINT STATE GOVERNMENT COMMISSION
*Serving the Pennsylvania General Assembly Since 1937*

The Joint State Government Commission was created by the act of July 1, 1937 (P.L.2460, No.459), as amended, and serves as the primary and central non-partisan, bicameral research and policy development agency for the General Assembly of Pennsylvania.

# Joint State Government Commission

### Room 108 Finance Building
### 613 North Street
### Harrisburg, PA 17120-0018

**Telephone:**   717-787-4397

**Fax:**   717-787-7020

**E-mail:**   jntst02@legis.state.pa.us

**Website:**   http://jsg.legis.state.pa.us

**Project Manager:**   Ronald Grenoble, Assistant Counsel

**Project Staff:**   Yelena Khanzhina, Public Policy Analyst
Ted Herman, Public Policy Analyst
Michelle Kreiger, Administrative Assistant



GENERAL ASSEMBLY OF THE COMMONWEALTH OF PENNSYLVANIA
**JOINT STATE GOVERNMENT COMMISSION**
ROOM 108 – FINANCE BUILDING
HARRISBURG, PA 17120

http://jsg.legis.state.pa.us/

**PHONE:** 717-787-4397 **FAX:** 717-787-7020

April 24, 2014

**FLORINDO J. FABRIZIO**
Chairman
**JOHN C. RAFFERTY, JR.**
Vice Chairman

**EXECUTIVE COMMITTEE**
**SENATE MEMBERS:**
  JOSEPH B. SCARNATI, III
  President Pro Tempore
  DOMINIC F. PILEGGI
  Majority Leader
  JAY COSTA
  Minority Leader
  PATRICK M. BROWNE
  Majority Whip
  ANTHONY H. WILLIAMS
  Minority Whip
  JOHN R. GORDNER
  Chair, Majority Caucus
  RICHARD A. KASUNIC
  Chair, Minority Caucus

**HOUSE MEMBERS:**
  SAMUEL H. SMITH
  Speaker
  MICHAEL C. TURZAI
  Majority Leader
  FRANK J. DERMODY
  Minority Leader
  STANLEY E. SAYLOR
  Majority Whip
  MICHAEL K. HANNA
  Minority Whip
  SANDRA J. MAJOR
  Chair, Majority Caucus
  DAN B. FRANKEL
  Chair, Minority Caucus

**ADMINISTRATIVE STAFF:**
  GLENN J. PASEWICZ
  Executive Director
  STEPHEN F. REHRER
  Counsel

To the Members of the General Assembly of Pennsylvania:

The Joint State Government Commission is pleased to present this report, *Constables in Pennsylvania: Proposed Statutory Reforms*, which was authorized by 2013 House Resolution 138. The resolution directed the Commission to study the constable system in Pennsylvania and report its findings and recommendations to the Chief Justice of the Supreme Court of Pennsylvania and the Judiciary Committee of the House of Representatives.

The report provides a historical background of constables and summarizes current statutory and relevant common law. It recommends amending the primary statute relating to constables by updating monetary amounts, repealing anachronistic sections, expanding prohibited conflicts, eliminating unnecessary distinctions among types of municipalities, clarifying some authority and providing oversight. Several recommendations should make certain constabulary practices more uniform throughout the Commonwealth.

Sincerely,

Glenn Pasewicz
Executive Director

# TABLE OF CONTENTS

EXECUTIVE SUMMARY ................................................................................... 1
    Introduction...................................................................................................... 1
    Summary of Key Proposals ............................................................................ 2
        Conflicts............................................................................................. 2
        Powers & Duties ............................................................................... 2
        Fees .................................................................................................... 2
        Penalties & Remedies ....................................................................... 3
        Organizations of Report ................................................................... 3

OVERVIEW OF THE CONSTABULARY .................................................... 5
    History ............................................................................................................. 5
    Constables in Pennsylvania............................................................................ 6
    Current Common & Statutory Law Relating to Pennsylvania's Constabulary ........... 8
        Nature & Existence ........................................................................... 8
        Powers & Duties ............................................................................... 9
        Vacancy............................................................................................. 11
        Training............................................................................................. 12
        Compensation ................................................................................... 14
        Penalties & Remedies ....................................................................... 15
        Deputy Constables ........................................................................... 16
    Training ........................................................................................................... 17
        Constables' Education & Training Board.......................................... 17
        Constables' Education & Training Program ...................................... 17

ISSUES & RECOMMENDATIONS................................................................ 23
    Issues Covered by Statutory Recommendations............................................ 23
        Definitions......................................................................................... 23
        Townships......................................................................................... 24
        Conflicts............................................................................................ 24
        Training............................................................................................. 25
        Powers & Duties ............................................................................... 26
        Compensation ................................................................................... 28
        Penalties & Remedies ....................................................................... 29

PROPOSED AMENDMENTS TO 44 PA.C.S. ............................................. 31

**SUPPLEMENTAL BACKGROUND INFORMATION** ......................................... 45

    Pennsylvania Justice Network (JNET) ............................................................... 45

    Education & Training Requirements of Enforcement Officers

        within Commonwealth Agencies ......................................................... 47

        Pennsylvania State Police ................................................................... 47

        Municipal Police Officers ................................................................... 49

        Lethal Weapons Training Act .............................................................. 49

        Capitol Police Officers........................................................................ 49

        Sheriffs and Deputy Sheriffs.............................................................. 50

        Motor Carrier Enforcement Officers .................................................. 50

        Revenue Enforcement Agents.............................................................. 51

        Department of Conservation and Natural Resources Rangers............ 51

        Corrections Officers ............................................................................ 52

        Parole Agents ..................................................................................... 52

        Pennsylvania House of Representatives Security Officer ................... 53

        Senate of Pennsylvania Security Officer ............................................ 53

        Wildlife Conservation Officers and Deputies..................................... 54

        Waterways Conservation Officers and Deputies ................................ 55

**APPENDICES** ........................................................................................................ 57

    **Appendix A**

    House Resolution No. 138 ................................................................................... 57

    **Appendix B**

    Certified Constables By County in 2013 ............................................................. 59

    **Appendix C**

    Current Constabulary Compensation ................................................................... 61

    **Appendix D**

    Education & Training Requirements of Selected Enforcement Officers..................... 65

    **Appendix E**

    PA Statutes (excluding 44 Pa.C.S. ch.71) Referencing Constables............................. 69

# EXECUTIVE SUMMARY

### Introduction

House Resolution No. 138 of 2013 directs "the Joint State Government Commission to study and make recommendations on the constable system in Pennsylvania" and report to Pennsylvania's Chief Justice and the chairs of the Judiciary Committee of the House of Representatives.[1] The resolution expresses the General Assembly's commitment "to meaningful reform" and focuses on increased oversight, accountability, and more uniform practices. Shortly after the resolution was adopted, the Chief Justice helpfully shared suggestions for legislative action that were recommended by a majority of a workgroup empaneled by the Supreme Court "to statutorily improve the constable system in Pennsylvania."[2] HR 138 recognizes the long history of the constabulary in Pennsylvania and changes in duties, training, performance expectations and fees throughout that history.

Accordingly, Commission staff focused on the same three items: oversight, accountability (by clarifying the statute), and more uniform practices (by adding oversight and clarifying the statute). The report recommends authorizing an intragovernmental board at the county level to oversee the constabulary. It further recommends creating an executive board at the Commonwealth level, whose oversight of the constabulary would be subject to judicial review. These recommendations are intended to facilitate more accountability and more uniform practices affecting both the executive and the judiciary throughout the Commonwealth.

Aside from oversight, there are other recommended statutory amendments to increase accountability. The statutory subchapter relating to conflicts should be expanded. The statutory subchapter relating to powers and duties should be modernized by either clarifying these duties and powers or eliminating them. Other recommended amendments relating to penalties and remedies would expand judicial authority to remove constables.

The recommended amendments provide for more uniformity by eliminating unnecessary distinctions among constables elected from boroughs, cities, and townships. If a provision applied to only one type of municipality, that provision is recommended to either be repealed or extended to apply to the other types of municipalities. Recommended amendments to the subchapter relating to compensation are to clarify and update the fee structure. (Other monetary amounts throughout the statute are dated and also recommended to be updated accordingly.) As it stands now, the payor sometimes contends that the payee is improperly claiming payment, while the payee conversely contends that the payor is not complying with the statute. By clarifying the fees, accountability regarding both the payor and payee will likely increase, and this should result in more uniform practices.

---

[1] Appendix A, *infra* p. 57-58.
[2] Letter from Chief Justice Ronald D. Castille to Representatives Ronald S. Marsico & Thomas R. Caltagirone (May 16, 2013), *available at* http://www.pacourts.us/news-and-statistics/news?Article=316.

While studying the constabulary and considering statutory amendments, Commission staff informally consulted executive and judicial employees with relevant experience. Those consulted were constructive, thoughtful, and generous with their time. If the General Assembly decides to consider the recommended amendments, it would benefit by hearing directly from others with relevant experience. This input could be useful to assess how well the report balanced the resolution's objectives with the practicality and advisability of the recommended amendments.

**Summary of Key Proposals[3]**

- Monetary amounts throughout the statute should be updated.
- Provisions affecting constables in one type of municipality and not the other two should either be repealed or extended to the other two types of municipalities.
- Required hours of training should be increased from a total of 80 to a range of 80 to 100 to allow additional topics to be covered; under the *status quo,* substitutions of one topic for another would likely have to occur to keep it at 80 hours.

*Conflicts*

- Prohibited conflicts relating to employment should be expanded to preclude the public office of constable from potentially being used to benefit private financial arrangements.
- Constables and magisterial district judges should be forbidden to work together when there is a close filial or household relationship between the constable and the magisterial district judge or his staff to reduce the temptation to inflate the accrual of fees.

*Powers & Duties*

- To promote protection and respect during encounters and interactions, constables should be required to wear a uniform or other identifiable clothing when working, thereby allowing the public to more readily and immediately recognize the constable and his authority.
- Constabulary service at elections should depend upon its utility as determined at a county level rather than mandated throughout the Commonwealth.
- Anachronistic timber law and trespassing livestock duties should be repealed from the statute.
- Arrest authority should apply to a constable regardless of the type of municipality, and his warrantless arrest authority should be specified in the statute.

*Fees*

- As with most other monetary amounts in the statute, the amounts payable as fees should be updated.
- To make the payment of fees more uniform, the statute should include further clarification.
- A fee claimed or arising under the circumstances of a prohibited nepotistic conflict should not be payable.

---

[3] The recommended statutory amendments appear *infra* pp. 31-44.

*Penalties & Remedies*

- To increase accountability, judicial authority to remove constables should be expanded to include malfeasance and prohibited conflicts.
- To increase accountability and make constabulary practices between the payor and payee more uniform, an intragovernmental county board should be authorized. Regardless of the formation of county boards, a Commonwealth board should be established to achieve uniform practices throughout Pennsylvania.

## Organization of Report

As an overview, the historical background of constables is presented and followed by a summary of the current statute, 44 Pa.C.S. ch. 71 (relating to constables), and the training program. The issues addressed by the recommended statutory amendments are then presented and followed by the recommended amendments.   Further supplemental background information is then presented and followed by appendices.

# OVERVIEW OF THE CONSTABULARY

**History**

     The office of constable is among the oldest law enforcement offices still in existence.  The term, constable, is derived from *comes stabuli*[4] and was used in the Roman Empire, mostly in Byzantium, from the fifth century A.D. to denote the head of the stables of the imperial court.[5]  In medieval Europe, constables were high officers of state and military commanders.  For example, the Constable of France had significant military and judicial powers, even holding supreme military command in the fourteenth century.[6]  In England, the office of the constable was introduced following the Norman invasion of the British Isles in 1066.[7]  The conquerors maintained the older Anglo-Saxon system of justice with a few modifications.[8]  To handle local legal matters in some communities, the Normans established the Court Leet, which looked after purely local matters, in contrast to the Court of the Tourn, which handled both a wider range of and more serious cases.[9]  The *Comes Stable* (or constable in modern English) was head of the Court Leet.[10]  The Comes Stable was often appointed by the King, but he was also responsible to local officials, who could petition to remove him if he failed to do his job properly.[11]  The constable's duties consisted of keeping peace and order in a specific area.[12]

     At the origin of the office of the constable in early England, it had been connected to local government as opposed to broader entities and the constable's powers were more clearly limited than the judiciary's.  Constables had law enforcement responsibilities.  According to the Statute of Winchester (1285), which codified local law enforcement, constables could arrest suspicious strangers, who were to be guarded until further investigation.[13]  A famous English judge, Henry of Bratton, pointedly stated that "it is the duty of the constable to enroll everything in order, for he has record as to the things he sees; but he cannot judge . . . .  He has record as to matters of fact, not matters of judgment and law."[14]

---

[4] Officer in charge of the stable.

[5] Encyclopaedia Britannica, constable, http://www.britannica.com/EBchecked/topic/133679/constable (last visited Mar. 21, 2014).

[6] *Id.*

[7] Crime & Punishment in Can., *The History of Constables from 483 A.D. to 1800*, http://www.russianbooks.org/crime/cph1.htm (last visited Mar. 21, 2014).

[8] A History of Policing, http://www.klis.com/allsaints/pnotes.htm (last visited Mar. 21, 2014).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] Crime & Punishment in Can., *supra* note 7.

[14] Harvard L. Sch. Library, *Bracton Online—English*, http://bracton.law.harvard.edu/cgi-bin/brac-hilite.cgi?Unframed+English+4+136+constable (last visited Mar. 21, 2014).

In medieval England, the title, constable, also applied to military officers commanding castles and garrisons.[15] "Sometimes the appointment was combined with that of a conservator (later justice) of the peace, who assisted the sheriff in enforcing the law."[16] In the seventeenth century, every local area had a high constable and petty constables subordinate to him.[17] High constables suppressed riots and violent crimes and armed the militia that would enable them to do so while petty constables maintained order in their villages.[18] "The high and petty . . . constables remained the executive legal officers in counties until the County Police Acts of 1839 and 1840," following the Metropolitan Police Act of 1829, which "allowed certain justices to establish a paid police."[19] Those acts created the modern police system, and the English constable became the lowest police rank.

## Constables in Pennsylvania

The office of constable in Pennsylvania was largely based on the office of constable in England. Along with other institutions, it was brought to this country by the early English settlers. "The first Constables in the territory called Penn's Woods began serving in . . . 1664."[20] Except for one year of Dutch rule, the area that eventually became the Commonwealth of Pennsylvania operated under the Duke of York's Laws from 1664 to 1681.[21] The territory now occupied by Pennsylvania, New York, and New Jersey belonged to the Duke of York then.[22] The Duke's *Book of Lawes* "provided for the first constables who managed the affairs of the towns or parishes, the principal unit of government during the 1660's."[23] Unlike the sheriff, who was selected yearly by the governor, the town officers – the constable and a board of overseers – "were directly the choice of the people."[24] Each town had its own constitution and by-laws, "which, when sanctioned by the court of sessions, became the basis of its own administration. Such constitution and laws were framed by the constable and a majority of overseers, and local observance became binding upon local inhabitants."[25] Constables' duties included property appraisal and tax collection; in addition, they served on the town court.[26] "The constable and overseers were also, *ex-officio*, church-wardens, and in this capacity were the ecclesiastical governors and moral guardians of the

---

[15] Encyclopaedia Britannica, *supra* note 5.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Pa. State Constables, http://www.pastateconstables.com/history.php (last visited Mar. 21, 2014).

[21] Kathleen A. Loos, *Powers and Duties of Constables in Pennsylvania* 1 (1974).

[22] E. R. L. Gould, *Local Self-Government in Pennsylvania*, The Pa. Magazine of History & Biography, 156-57 (Vol. 6, No. 2) (1882), *available at* http://www.jstor.org/stable/20084548?seq=2&Search=yes&searchText=Local&searchText=Pennsylvania&searchTe xt=in&searchText=Self-Government&list=hide&searchUri=%2Faction%2FdoBasicSearch%3FQuery%3DLocal%2BSelf-Government%2Bin%2BPennsylvania%26amp%3Bacc%3Doff%26amp%3Bwc%3Don%26amp%3Bfc%3Doff&pre vSearch=&resultsServiceName=null (last visited Mar. 21, 2014).

[23] Loos, *supra* note 21.

[24] Gould, *supra* note 22, at 157. The constable was elected for one year. *Id.*

[25] *Id.*

[26] Loos, *supra* note 21.

parish."[27]  Similar to England, "the principal purpose of the office has been to provide for a peace officer within easy reach of every citizen." [28]

Starting with the first settlements and throughout the Commonwealth's history, constables have been preservers of the peace.[29]  Published in 1913, *Pennsylvania Justices' Digest and Guide* describes the constabulary in the following way:

> Every constable, at the Common Law is a conservator of the peace; and, as such, he may arrest those who break the peace, confine them, bring them before a Justice to find surety or, he may himself take surety, when the breach is committed in his view. He is the proper executive hand of the Justice of the Peace, to serve his process and execute his lawful commands.[30]

Some researchers believe that by the mid-twentieth century, the historical function of the constable as peace officer had virtually disappeared in Pennsylvania; "more and more the constable's chief function has become commercial in nature."[31]  Presumably, this is due to a combination of factors.  Arresting criminal offenders is likely more unpleasant and more dangerous than performing the duties that are commercial in nature.  Also, boroughs and townships created their own police departments to replace the criminal aspect of constabulary service.

Currently in Pennsylvania, constables are elected for a six-year term.  Approximately 1,300 constables and deputy constables are or remain certified every year.[32]  Constables are elected at the municipal level but governed by state law and have statewide authority in certain instances; thus, they are referred to as State Constables.[33]

*Black's Law Dictionary* emphasizes that a constable's powers are narrower in scope than those of a sheriff.  It defines a constable as "a peace officer responsible for minor judicial duties, such as serving writs and warrants, but with less authority and smaller jurisdiction than a sheriff."[34]

> The operations of constables can be classified into four principal categories: assistance to the magistrate, especially service of process; small debt collection; landlord-tenant work, including collection of overdue rent or eviction; and miscellaneous and often anachronistic statutory functions encrusted upon the office of the constable by years of legislative activity.[35]

---

[27] Gould, *supra* note 22, at 158.

[28] Loos, *supra* note 21, at 2.

[29] *Id.* at 1-2.

[30] A. R. Place, *Pennsylvania Justices' Digest and Guide with Forms of Practice Embracing All the Statues, Decisions and Forms Pertaining to the Duties of Justices of the Peace, Aldermen, Magistrates, Mayors, Burgesses and Constables* 42 (1913).

[31] *The Philadelphia Constable*, 104 U. Pa. L. Rev. 508, 518 (1956).

[32] Interview with John F. Pfau, Manager of Bureau of Training Servs., Pa. Comm'n on Crime & Delinquency, in Harrisburg (Apr. 23, 2013).

[33] DVD: *Pa. Act 49 Basic Course* (Pa. Comm'n on Crime & Delinquency 2013).

[34] Black's Law Dictionary 329 (8th ed. 2004).

[35] *The Philadelphia Constable*, *supra* note 31.

Not all constables perform all of these functions. In fact, it is common for some constables to engage in one type of work. Civil-oriented constables serve process, handle landlord-tenant complaints and execute the enforcement of monetary judgments and levies while criminal-oriented constables execute arrest warrants, transport prisoners, and provide court security.

As for criminal duties and responsibilities, constables have been charged with a variety of functions, from searching for certain kinds of weeds and enforcing their destruction to inspecting public dance halls and liquor parlors, from enforcing fish laws and seizing dogs running at large to protecting property threatened by riots in Philadelphia.[36] Civil duties of the constable involve collecting money on writs of execution and enforcing the rights of landlords against delinquent tenants as well as formerly serving "summons and warrants for violation of borough ordinances when directed to him by the borough mayor or justice of the peace."[37]

Over the years, constables' functions have changed significantly. "A survey of the statutes would give a distorted picture of the existing pattern of a constable's daily work."[38] According to some legal experts, some of the actions constables currently perform do not fall into the categories appropriate for elected public officials. "The constable today is the product of historical evolution rather than a public servant created by the legislature for a specified purpose."[39] This may be the key factor that necessitates a review and updated clarification of the Pennsylvania constabulary.

### Current Common & Statutory Law Relating to Pennsylvania's Constabulary

*Nature & Existence*

In colonial America, the constabulary was the chief guardian of the peace; in contemporary Pennsylvania, police have become the publicly employed force relied upon to preserve public order. Although constables remain peace officers,[40] they are now chiefly relied upon to serve the judiciary by aiding the judicial process. Unlike police, the constabulary is elected;[41] however, like police, the constabulary exercises executive rather than judicial or legislative power.

---

[36] Loos, *supra* note 21, at 9-11.
[37] *Id.* at 12.
[38] *The Philadelphia Constable, supra* note 31, at 531.
[39] *Id.* at 539.
[40] "Simply stated, a constable is a peace officer." *In re Act 147*, 598 A.2d 985, 990 (Pa. 1991).
[41] A constable may not be an alderman or magisterial district judge but may hold other elective or political party offices. 44 Pa.C.S. § 7131. Under a former but similarly worded version of the statute, an elective office has been judicially interpreted to refer to a political party rather than any other governmental office. *Commw. ex rel. MacElree v. Legree*, 609 A.2d 155, 158 (Pa. 1992).

The office of constable was abolished for cities of the first class in 1970.[42]  The elected term of constables elsewhere is six years.[43]  A constable is independent of both the judiciary and the municipality in which he was elected.[44]  With this independence, there is no direct, routine or formal oversight of the constabulary.  Constables and their deputies performing duties other than judicial ones may not hold themselves out to be judicial agents or representatives.[45]  As independent contractors, constables and their deputies are not entitled to any legal representation from the judiciary, attorney general or any governmental unit including a local agency.[46]

The ancient office of constable, whose general duty was to keep the peace, came to have common-law and statutory duties.  It is easier to find current statutes than to determine with certainty whether common-law duties from the 1800's remain sufficient authority.  E.g., constables may not enforce motor vehicle laws because there is no statutory authorization for them to do so nor may they derive this authority from the common law.[47]

*Powers & Duties*

Constables perform various statutorily authorized duties.[48]  There is "no protected liberty interest in receiving assignments from the" judicial district in which a constable is elected.[49]  Because they are elected, constables have a property interest in their position; however, there is no statutory extension of that property interest in receiving assignments from a particular judicial district.[50]  Constables or their deputies are required to "[b]e present at the polling place in each election district . . . during the continuance of each election and while the votes are being counted" to preserve "the peace."[51]  If a coroner cannot "serve process in a suit . . . in which a sheriff . . . may be a party, a constable . . . may serve as the . . . coroner."[52]

---

[42] 44 Pa.C.S.
[43] A city (of the 2d class, 2d class A or 3d class), borough, inc. town or twp.. *Id.* § 7111.  A constable can be elected in each ward for boroughs divided into wards and cities of the 2d & 3d classes; twps. of the 1st class can have two constables elected. *Id.* §§ 7112, 7113(b), 7114(a).  Constables elected in twps. must appear in their county's court of common pleas to accept or decline the office and forfeit $40 for neglecting or failing to appear.  *Id.* §7114(b).  Constables in twps. give bonds "for just and faithful discharge" of official duties in the range of $500-3,000 as directed by the court. *Id.* § 7114(c).  These bonds are "for the same purposes . . . as a sheriff's bond" and benefit "persons who . . . sustain injury by reason of neglect of duty." *Id.*  "An action upon an official bond of a public official" must be commenced within four years.  42 Pa.C.S. § 5525(a)(6).  Once elected, a statute may not "extend the term of any public officer."  Pa. Const. art. III, § 27.  The same constitutional limitation applies to emoluments, *id.*, which would mean that statutory fees may not be increased during the term of office but mileage reimbursements could be.
[44] *In re Act 147*, 598 A.2d at 986.
[45] 44 Pa.C.S. § 7142(f).
[46] *Rosenwald v. Barbieri*, 462 A.2d 644, 648 (Pa. 1983).
[47] *Commw. v. Roose*, 710 A.2d 1129, 1130 (Pa. 1998).
[48] 44 Pa.C.S. § 7151.
[49] *Swinehart v. McAndrews*, 221 F.Supp.2d 552, 557 (E.D.Pa. 2002), *aff'd*, 69 F.App'x 60 (3d Cir. 2003).
[50] 221 F.Supp.2d at 558-59.
[51] 44 Pa.C.S. § 7152(I).  If a polling place is not at a building with a police station, police officers must remain more than 100 feet from a polling place during an election unless they are there to vote, serve warrants or respond to a call to preserve peace.  Act of June 3, 1937 (P.L.1333, No.320), § 1207; 25 P.S. § 3047.
[52] 44 Pa.C.S. § 7153.

A constable must have "given security by bond and warrant, with two sufficient sureties and to the satisfaction of the court of common pleas," for a tax collector to "[g]ive a warrant against delinquent tax payers to a constable."[53]  The warrant for the taxes may not be greater than the amount of the requisite bond.[54]  Constables must report and pay all collections at least weekly "after the warrants have been issued."[55]  Commissions may be imposed to collect these taxes, which "accrue interest until they are paid."[56]

A constable detecting a trespasser on timber land may arrest the trespasser if the constable reasonably suspects the trespasser of committing "an offense against any law for the protection of forests."[57]

"[O]n or before the return day of the writ of execution," a constable must provide the magisterial district judge "the receipt of the plaintiff or any other legally sufficient return" to "be discharged from the writ."[58]  If the constable does not timely return or falsely returns or if the return is insufficient, the magisterial district judge is required to summon the constable within eight days "to show cause why a writ of execution should not be issued against the constable for the amount of the writ of execution" covering "[t]he debt, interest and costs of" the writ of execution that had been delivered to the constable.[59]  This amount would be entered as a judgment against the constable if he then failed to appear or "show sufficient cause why the writ of execution should not be issued against him."[60]

If a "constable has no information to impart in the return," he "is not required to make a return . . . to the court of common pleas" in counties of the sixth through eighth classes.[61]  A court may direct a "constable to investigate a complaint of a violation of law" and report to the court.[62]  "[A] constable of a borough" is statutorily authorized to make warrantless arrests of those he observes breaching the peace or being drunk, those illegally endangering property or imperiling the personal security of citizens, and those violating an ordinance "for which a fine or penalty is imposed."[63]  A constable is statutorily required to impound livestock if an owner or tenant of improved land notifies the constable of trespassing livestock.[64]  The constable then has up to 24 hours to give written notice to the owner of the livestock, if known and residing within the county where the trespass occurred.[65]  If the owner of the livestock pays for the damage to the land, the

---

[53] *Id.* § 7154(a)(1).  The sum of the security must be $5,000.  *Id.*

[54] *Id.* § 7154(a)(2).

[55] *Id.* § 7154(b).

[56] *Id.* § 7154(c).  This applies to "all taxes remaining unpaid on the first day of January after the year for which they were assessed."  *Id.*

[57] *Id.* § 7155.  The statute does not require a warrant.  *Id.*

[58] *Id.* § 7156(a).

[59] *Id.* § 7156(b).

[60] *Id.*  The plaintiff would then apply to the magisterial district judge to "issue an execution against the constable for the amount of the judgment" and direct an authorized person to serve the summons to the constable.  *Id.*  The fine for not serving this summons is $20.  *Id.*

[61] *Id.* § 7157(a).

[62] *Id.* § 7157(b).

[63] *Id.* § 7158.  He can also arrest those he observes being vagrant, riotous or engaging in disorderly conduct.  *Id.*

[64] *Id.* § 7159(a).

[65] *Id.* § 7159(b)(1).  If the known owner of the livestock resides outside the county of trespass, the written notice must be sent by registered mail within the same 24-hour period.  *Id.* § 7159(b)(2).

costs of care, and the constabulary fee within four days of receipt of the notice, the constable has up to three days after receiving payment to return the trespassing livestock to the owner.[66] If the owner does not timely pay, appraisers file a report and the livestock are publicly sold within one day of the filing.[67] The constable writes a report of the sale for and remits money from the sale to the magisterial district judge, who pays the land owner for costs and damages then remits any surplus to the county treasury.[68] "If the sale results in a deficit," the costs are fully paid or divided *pro rata* with any remainder "paid to the owner of the land for any damage sustained."[69]

*Vacancy*

Pennsylvania's constitution forbids U.S. congressional members and U.S. officers and appointees to simultaneously be constables.[70] If one holds an incompatible office, the constable's position would be null and void so that his office would become vacant.[71] An elected constable may not hold and exercise "the office of . . . township or borough auditor."[72] There might be a different application of this constitutional prohibition to borough officers because "[t]he General Assembly may . . . declare what offices are incompatible."[73] The Borough Code clearly disallows a civil service commissioner to simultaneously be a constable;[74] however, it appears that a borough's mayor[75] and other borough officials[76] could simultaneously be constables.

If there is a vacancy in the office of constable, a court of common pleas in the county of the vacancy is authorized to appoint a suitable person to serve as constable for the remainder of the unexpired term.[77] With approval of a court of common pleas, a constable may appoint a deputy constable if that appointee resides in the applicable borough, ward or township.[78] Another deputy constable may be appointed to replace one who died or is unable or refuses to act.[79]

---

[66] *Id.* § 7159(c). If the owner does not timely pay, a magisterial district judge must appoint three, disinterested local landowners to appraise to "consider the appraisal" of the damage and report the "value and costs of care and . . . report to the magisterial district judge within five days." *Id.* § 7159(d).

[67] *Id.* § 7159.1(a). An owner may stop the sale by paying "prior to the sale" or suing "for replevin." *Id., id.* § 7159.1(b). Damages and fees would still have to be paid in "a successful action of replevin." *Id.* § 7159.1(c).

[68] *Id.* § 7159.1(a)(3). The owner of the livestock has up to two years after the sale to claim the surplus. *Id.*

[69] *Id.* § 7159.1(a)(4). Costs would be applied to the constable, magisterial district judge, appraisers and care of the trespassing livestock. *Id.*

[70] Pa. Const. art. VI, § 2; Act of May 15, 1874 (P.L.186, No.120), § 1; 65 P.S. § 1. A constable in active military service "during any war or emergency" does not vacate his office. *Id.*

[71] *Id.* § 2.

[72] Act of May 18, 1876 (P.L.179, No.148), § 1; 65 P.S. § 6.

[73] Pa. Const. art. VI, § 2.

[74] Act of Feb. 1, (1966) 1965 (P.L.1656, No.581), § 1173; 53 P.S. § 46173.

[75] *Id.* § 1002-A; 53 P.S. § 46002-A.

[76] *Id.* § 1104; 53 P.S. § 46104.

[77] 44 Pa.C.S. § 7121. Filling this vacancy requires a petition of at least 10 qualified electors residing where the vacancy is. *Id.*

[78] *Id.* § 7122(a). Appointed deputy constables must remain *bona fide* residents where appointed or the appointment may be revoked. *Id.* § 7122(a), (b).

[79] *Id.* § 7122(b)(2). "[T]he courts have held that approval of a deputy constable's appointment should not be a pro forma matter. . . . [T]he cases generally have discouraged the practice of approving deputy appointments and . . . consistently have required a constable to show a reason or necessity for the appointment before receiving court approval." *In re Hunter*, 782 A.2d 610, 615 (Pa. Commw. Ct. 2001). Acceptable reasons have been too large of a volume to attend to one's official duties and personal disability or another unusual condition. *Id.* There is no

A court of common pleas may require an incompetent constable to post additional security or remove him.[80]  If removed, "the court may appoint a suitable individual to fill the vacancy until a successor is elected and qualified."[81]

*Training*

The Pennsylvania Commission on Crime and Delinquency has a Constables' Education and Training Board.[82]  The Pennsylvania State Police Commissioner or his designee serves on the board along with six gubernatorial appointees subject to senatorial consent.[83]  Three gubernatorial appointees must be constables, one a magisterial district judge, one a court administrator, and one a county commissioner.[84]  The terms are three years and are limited to "one additional consecutive term."[85]  Board members are not compensated but are "reimbursed the necessary and actual expenses incurred" attending board meetings and performing statutory duties.[86]  The governor may remove an appointee from the board "for good cause upon written notice."[87]  Board members elect a chairman for a one-year term.[88]  The board must convene at least four times yearly but may convene more often whenever the chairman or any four members write all members at least 10 days in advance.[89]

Constables and their deputies must be certifiably trained to perform judicial duties and obtain statutory fees, surcharges, and mileage reimbursement.[90]  This certifiable training is implemented and administered by the Constables Education and Training Program,[91] which includes "training for a total of 80 hours."[92]  Specifically, the program includes requisite courses of study and training, continuing education, approval of schools, minimum qualifications and certification of instructors, development of courses, certification of constables and their deputies, regulations, insurance monitoring, and reports to the governor and General Assembly on the program's administration, costs, and proposed changes along with board activities.[93]  Constables and their deputies have a mandatory continuing education program of up to 40 hours yearly.[94]

---

corresponding statutory requirement of "court approval for the removal of a deputy by the constable." *In re Page*, 205 A.2d 637, 638 (Pa. Super. Ct. 1964).

[80] 44 Pa.C.S. § 7172(b).

[81] *Id.*  "The appointed individual must have a freehold estate with at least $1,000 beyond incumbrance or furnish security." *Id.*

[82] *Id.* § 7143(a).

[83] *Id.* § 7143(b).

[84] *Id.*  Appointed constables must be certified. *Id.* § 7143(c). Public officials may not serve on the board beyond the time that they are in office; vacancies filled for the remainder of the unexpired term. *Id.* § 7143(c), (d).

[85] *Id.* § 7143(c).

[86] *Id.* § 7143(e).

[87] *Id.* § 7143(f).

[88] *Id.* § 7143(g).  The chairman of the board may succeed himself. *Id.*

[89] *Id.* § 7143(h).  A quorum is four board members. *Id.*

[90] *Id.* § 7142(a).

[91] *Id.* § 7144.

[92] *Id.* § 7145.  The content is "determined by regulation," but must "include instruction in the interpretation and application of" statutory fees. *Id.*

[93] *Id.* § 7144.  The insurance monitoring relates to price and availability for the requisite liability insurance and is done "[i]n consultation with the Insurance Commissioner." *Id.*

[94] *Id.* § 7146.  This program concerns subjects deemed "necessary and appropriate" by Constables' Educ. & Training Bd.. *Id.*

Standards for "certification or qualification of constables and" their deputies to carry and "use firearms in the performance of any duties" are established by Constables' Education and Training Board "with the review and approval of the Pennsylvania Commission on Crime and Delinquency."[95]

Constables' Education and Training Account is "a special restricted account within the General Fund" to finance the training program and activities of Constables' Education and Training Board.[96] Constabulary performance for which there is statutory compensation[97] results in a surcharge for cases before magisterial district judges.[98] The surcharge is $5 and assessed by each docket number in criminal cases and by each named defendant in civil cases.[99] Constables must turn over collected surcharges to the issuing authority within a week; the issuing authority remits these surcharges to Department of Revenue to deposit into the account.[100] Disbursements from Constables' Education and Training Account are made by Pennsylvania Commission on Crime and Delinquency.[101] The Commonwealth's auditor general must audit this account at least every three years.[102] The commission is authorized to use "surplus funds in the account to assist constables and" their deputies "with costs associated with attendance at continuing education programs."[103]

Constables and their deputies must be insured for professional liability "covering each individual in the performance of his judicial duties with a minimum coverage of" $250,000 per incident "and minimum aggregate of" $500,000 per year.[104] Certification "to perform judicial duties" ceases automatically when and if the requisite insurance coverage is no longer current or if proof of requisite insurance coverage is not filed "with the clerk of the courts."[105] The statutorily required training and certification of constables and their deputies does not "impose respondeat superior liability on any county."[106]

The Confidence in Law Enforcement Act[107] does not apply to constables but probably should. This act generally forbids hiring or continuing to employ persons convicted of felonies or serious misdemeanors as law enforcement officers.[108] Under this act, a currently employed law enforcement officer is suspended during the pendency of a disqualifying charge.[109]

---

[95] *Id.* § 7148.
[96] *Id.* § 7149(a).
[97] *Id.* §§ 7161-7166.
[98] *Id.* § 7149(b).
[99] *Id.* A county is not "required to pay this surcharge on behalf of any indigent or other defendant in a criminal case." *Id.*
[100] *Id.* § 7149(c).
[101] *Id.* § 7149(d).
[102] *Id.* § 7149(e).
[103] *Id.* § 7149(f).
[104] *Id.* § 7142(b). Proof of insurance must be filed with the clerk of courts. *Id.*
[105] *Id.* § 7142(c). Recertification is immediate if a constable or his deputy has the requisite insurance and files this proof with the clerk of courts or if an uninsured constable or his deputy obtains the requisite insurance coverage (and files the requisite proof). *Id.* § 7142(d).
[106] *Id.* § 7142(e).
[107] Act of Jan. 29, 2004 (P.L.4, No.2); 53 P.S. §§ 752.1-752.5.
[108] *Id.* § 3; 53 P.S. § 752.3.
[109] *Id.* § 4; 53 P.S. § 752.4.

*Compensation*[110]

Compensation of constables is statutorily set. "Actual mileage for travel by motor vehicle" is "reimbursed . . . equal to the highest rate allowed by the Internal Revenue Service."[111] Travel costs for more than one defendant "transported simultaneously" are "divided between or among the defendants."[112] When transporting a prisoner or serving an arrest warrant for a felony or misdemeanor or one for a juvenile or a defendant of the opposite sex, a constable or his deputy may be accompanied by another certified constable or deputy and each would receive the statutory fee.[113] "In civil and landlord-tenant cases, constable fees must be paid in advance to the court for services desired to be performed."[114] The fees may not be paid to the court more than 15 days after the service is performed in a civil or landlord-tenant case "and a proper request for payment is submitted."[115] For criminal cases, the fees must be paid not more than 30 days "after the service is performed and a proper request for payment is submitted."[116] The statute details the fees for civil and landlord-tenant cases as well as for criminal cases and serving "district court-issued subpoenas" in those cases.[117] Fees for services unspecified in the statute are to be the same as those for similar, statutory services.[118]

Fees are also statutorily specified for court appearances and returns, notices of election, and for juvenile matters.[119] A constable is entitled to fees or mileage for making returns when they are required by the court.[120] For service at elections, the county must pay a constable and his deputies "the same compensation payable to inspectors and clerks under . . . Pennsylvania Election Code."[121] The statute specifies fees for impounding and selling animals and viewing damages.[122] For seizure of motor vehicle registration plates and cards and drivers' licenses under Vehicle Code, constables are compensated $15 each (plus mileage) by Department of Transportation.[123]

---

[110] A table of the current statutory compensation appears as Appendix C, *infra* p. 61.

[111] 44 Pa.C.S. § 7161.

[112] *Id.*

[113] *Id.* "In all other civil, landlord-tenant and summary criminal cases, the issuing authority may authorize payment to a second officer." *Id.*

[114] *Id.* These fees are nonrefundable "to the plaintiff if a case is settled or a debt is satisfied less than 48 hours prior to a scheduled sale or ejectment." *Id.*

[115] *Id.*

[116] *Id.* If the county accounts are payable monthly, the timeliness for criminal cases is within "15 days after the close of the month." *Id.*

[117] *Id.*

[118] *Id.* § 7161(i). To get paid, a constable would need to perform a statutory service or a service similar to a statutory one. Interpreting a similarly worded clause in a prior statute, the clause should "be construed strictly but no so strictly as to nullify it." *McCallister v. Armstrong Cnty.*, 9 Pa. Super. Ct. 423 (1898).

[119] *Id.* § 7161.1.

[120] *Id.* § 7162.

[121] *Id.* § 7163.

[122] *Id.* § 7164.

[123] *Id.* § 7165.

Generally, constables also employed as policemen may not accept fees and other compensation other than their salaries as policemen.[124]  They could still accept "public rewards and legal mileage allowed to a constable for traveling expenses," and The Borough Code[125] might allow borough policemen to "receive all costs, fees and emoluments pertaining to" the office of constable in the borough.[126]

A law may not "increase or diminish" a public officer's "salary or emoluments, after his election or appointment."[127]  While constables receive no salary, the statutory fees would be emoluments.[128]

*Penalties & Remedies*

Upon a verified petition alleging official incompetence, a court of common pleas may inquire into the official conduct of a constable.[129]  A constable's surety's verified petition could be based upon intemperance or neglect of duty; a different party's verified petition would need to allege another reason.[130]  A judicial finding of incompetence could result in a mandated additional security or removal from office.[131]  A judicially appointed successor to replace a judicially removed constable is statutorily required to have a security.[132]

The statute specifically covers defaults on remittance of collected tax[133] and an action against a constable's furnished security.[134]  "A constable who neglects or refuses to perform the duties under . . . Pennsylvania Election Code commits a misdemeanor of the third degree . . . ."[135]  Mistakenly, the statute makes it a misdemeanor of the third degree for constables employed as policemen to accept "any fee or other compensation, in addition to their salary" in violation of a repealed law.[136]

---

[124] *Id.* § 7132(a).

[125] Act of Feb. 1, 1966 (1965 P.L.1656, No.581); 53 P.S. §§ 45101-48501.

[126] 44 Pa.C.S. § 7132(b).

[127] Pa. Const. art. III, § 27.

[128] *Apple v. Crawford Cnty.*, 105 Pa. 300 (1884).  Compensation fixed by law for services or annexed to the office as fees. *Id.*

[129] 44 Pa.C.S. § 7172(a).

[130] *Id. E.g.*, "oppression of a litigant or witness." *Id.*  The judicial inquiry is "into the official conduct of the constable" so that "objectionable conduct" occurring "while acting as a railway police officer" instead of as a constable limited judicial authority to remove a constable from office.  *In re petition to remove Constable Visoski*, 852 A.2d 345, 347 (Pa. Super. Ct. 2004).

[131] 44 Pa.C.S. § 7172(b).

[132] *Id.*

[133] *Id.* § 7173.

[134] *Id.* § 7174.

[135] *Id.* § 7175.

[136] *Id.* § 7176.  This section was enacted by the act of Oct. 9, 2009 (P.L.494, No.49), § 2; §(4)(2)(xvi), (xvii) of the same act repealed the law referenced in § 7176.

The statute also allows a constable's surety who paid for a constable's neglectful failure to collect money on execution of a process to then equitably collect on the judgment.[137]  Constables elected or appointed to serve in a township may be fined for failing to serve or appoint a deputy to serve.[138]

A constable who demands or charges an excessive fee is liable for the overcharge plus a $50 forfeiture if the constable refuses to return the overcharge within ten days of his written notification.[139]

*Deputy Constables*

With approval of a court of common pleas, a constable may appoint a deputy constable if that appointee resides in the applicable borough, ward or township.[140]  Plaintiffs can request a deputy be specially appointed in a civil suit, and these appointments do not require approval by a court of common pleas.[141]  Another deputy constable may be appointed to replace one who died or is unable or refuses to act.[142]

"The constable executes . . . his office by himself or by his deputy.  No separate office of deputy constable exists . . ., and when a vacancy occurs in the office of constable, . . . the deputy ceases to exist as such."[143]  The statute does not require "court approval for the removal of a deputy by the constable."[144]

The Confidence in Law Enforcement Act[145] does not apply to deputy constables but probably should.  This act generally forbids hiring or continuing to employ persons convicted of felonies or serious misdemeanors as law enforcement officers.[146]  Under this act, a currently employed law enforcement officer is suspended during the pendency of a disqualifying charge.[147]

---

[137] 44 Pa.C.S. § 7177.

[138] *Id.* § 7178.

[139] Act of May 26, 1897 (P.L.100, No.84), § 1; 65 P.S. § 134.

[140] 44 Pa.C.S. § 7122(a).  Appointed deputy constables must remain *bona fide* residents where appointed or the appointment may be revoked. *Id.* § 7122(a), (b).  Judicial revocation would occur via "petition of five duly qualified electors . . . and proof of the facts requiring revocation."  *Id.* § 7122(b)(1).  The judiciary could also revoke an appointment if a subsequent petition successfully asserts that the deputy was not a *bona fide* resident when originally appointed.  *Appeal of Reed*, 164 A. 619 (Pa. 1933).

[141] *Id.* § 7122(b)(1).

[142] *Id.* § 7122(b)(2).  "[T]he courts have held that approval of a deputy constable's appointment should not be a pro forma matter. . . . [T]he cases generally have discouraged the practice of approving deputy appointments and . . . consistently have required a constable to show a reason or necessity for the appointment before receiving court approval." *In re Hunter*, 782 A.2d 610, 615 (Pa. Commw. Ct. 2001).  Acceptable reasons have been too large of a volume to attend to one's official duties and personal disability or another unusual condition.  *Id.*  There is no corresponding statutory requirement of "court approval for the removal of a deputy by the constable."  *In re Page*, 205 A.2d 637, 638 (Pa. Super. Ct. 1964).

[143] *National Cash Register Co. v. Berg*, 99 Pa. Super. Ct. 34 (1930).

[144] *Page*, 205 A.2d at 638.

[145] Act of Jan. 29, 2004 (P.L.4, No.2); 53 P.S. §§ 752.1-752.5.

[146] *Id.* § 3; 53 P.S. § 752.3.

[147] *Id.* § 4; 53 P.S. § 752.4.

**Training**

*Constables' Education & Training Board*

Act No. 102 of 1992[148] statutorily established Constables' Education and Training Board to train and certify constables and deputy constables through its Constables' Education and Training Program. Before the board assembled and the program began, this act was repealed and replaced by another act two years later.[149] Fifteen years after that, the act was again repealed and replaced by another.[150] All three versions[151] of this law established both the board and its education and training program.

The board operates with the oversight and staff support of Pennsylvania Commission on Crime and Delinquency.[152] The constables' training and certification programs are continuously improved and modified to keep in step with changing constabulary needs and the constabulary role in the criminal justice system. The training is provided by various, regional training contractors. The commission's Bureau of Training Services supervises and coordinates their activities. It ensures proper curriculum development and delivery as well as timely and accurate constabulary certification and recertification.

A constable or deputy constable is required to be certified to perform any judicial duties or demand or receive any statutory fee, surcharge or mileage.[153] The board establishes, implements and administers requirements for the basic and continuing education programs for constables and deputy constables and certifies those who have satisfactorily completed the basic and continuing education and training.[154]

*Constables' Education & Training Program*

The basic constables' education and training program includes training for a total of 80 hours.[155] A mandatory continuing education program includes up to 40 hours a year.[156] The program is funded by the surcharges assessed as costs on cases before magisterial district judges; the amount of the surcharge has not been increased since its inception in 1994.[157]

---

[148] Act of July 9, 1992 (P.L.689, No.102).

[149] Act of July 15, 1994 (P.L.265, No.44).

[150] Act of Apr. 9, 2009 (P.L.494, No.49).

[151] The 1st version amended the act of July 20, 1917 (P.L.1158, No.401), referred to as Constable Fee Law. The 2d version repealed Constable Fee Law to enact 42 Pa.C.S. ch. 29, subch. C (relating to constables). The 3d and current version repealed 42 Pa.C.S. ch. 29, subch. C, to enact 44 Pa.C.S. ch. 71 (relating to constables).

[152] 44 Pa.C.S. §§ 7143(a), 7144.

[153] *Id.* § 7142(a).

[154] *Id.* §§ 7144-7146.

[155] *Id.* § 7145.

[156] *Id.* § 7146.

[157] *Id.* § 7149(b). The surcharge is "$5 per docket number in each criminal case and $5 per named defendant in each civil case in which a constable or deputy constable performs a service . . . except" counties are not required to pay the "surcharge on behalf of any indigent or other defendant in a criminal case." *Id.*

The board singularly uses Penn State University to develop the training curriculum, which ensures consistency in instruction, course presentation, and content among the regional training delivery contractors.[158]  The curriculum contains the topical outline, instructor outlines and study guides, trainee study guides, PowerPoint® presentations, handouts, and standardized test questions for each subject module.[159]

The basic training subjects stay essentially the same from year to year. In 2012 and 2013, the constables' basic training 80-hour curriculum included the following topics:

- Role of the constable in the justice system
- Professional development
- Civil law and process
- Criminal law and process
- Use of force
- Mechanics of arrest
- Defensive tactics
- Prisoner transport and custody
- Court security
- Crisis intervention.[160]

In 2013, basic training also included the use of an expandable baton and oleoresin capsicum (OC) spray.[161]

The "Role of the Constable in the Justice System" provided an introduction to the Pennsylvania justice system and an overview of the development of the role of the constable in the Commonwealth. It also discussed civil and criminal liability issues that pertain to the office of the constable and some of the constable's legal responsibilities.  The instruction defined concepts such as civil suit, civil wrong, negligence, malfeasance, false arrest and imprisonment, defamation, and other relevant concepts; it also highlighted differences between a civil action and a criminal action. The course detailed constables' behavior in medical emergencies and in situations involving children.

"Professional Development" covered formal and informal communication, both written and oral, and gathering information.  The second set of issues dealt with professional conduct in pursuing a constable's day-to-day tasks and analyzed concepts of moral standards, ethics, individual responsibility and cultural diversity. The segment also touched upon the effects of duty-related stress and coping mechanisms.  Part of the time was devoted to instruction on accurate completion of constable fee sheets as required by 44 Pa.C.S. § 7145.

---

[158] Constables' Educ. & Training Bd., Pa. Comm'n on Crime & Delinquency, Annual Rep. 5 (2012).
[159] Id.
[160] Id. at 6-7.
[161] E-mail from John Pfau, Manager, Bureau of Training Servs., Pa. Comm'n on Crime & Delinquency (Mar. 11, 2014) (on file with J. State Gov't Comm'n).

The "Civil Law and Process" segment discussed constables' duties in the area of civil procedure, mainly landlord-tenant and other service of civil process issued by magisterial district judges. Instruction focused on due process.

"Criminal Law and Process" offered an overview of the history and development of Pennsylvania's criminal law, Crimes Code, and specific constabulary duties related to the criminal process. The focus was on the classification of crimes, criminal procedure, and constabulary authority.

"Use of Force" examined the legal issues associated with the proper application of force according to Crimes Code and the use of various force options.

"Mechanics of Arrest" detailed proper techniques for the arrest of compliant and non-compliant individuals, along with handcuffing techniques. Instructional methods included practical exercises as well as classroom lecture.

The "Defensive Tactics" section covered techniques for defense against armed and unarmed attackers, with the emphasis on retaining the handgun while under attack.

"Prisoner Transport and Custody" reviewed basic procedures related to prisoner transport, emphasizing safety and legality of constabulary practices.

The "Court Security" segment was designed to heighten awareness of potential problems that may arise in the courtroom and appropriate responses.

"Crisis Intervention" highlighted basic ways to defuse confrontations to prevent them from evolving into life-threatening situations, with the emphasis on recognizing behavioral signals and minimizing risk. Part of this section was Management of Aggressive Behavior training.

Continuing education content varies from year to year. The requisite 2012 continuing education course that constables and deputy constables had to successfully complete to renew their certification for 2013 consisted of 20 hours of training. The following mandatory subjects were taught:

- Defensive tactics
- Cultural diversity
- Ethics
- Use of force.[162]

All four courses were tested by a written examination.

The first course offered a review of and practice in basic defensive tactic techniques, reinforced by force-on-force role-playing scenarios. As defensive tactics are an indispensable part of a constable's arsenal, the course reviewed patterns of movement and footwork, demonstrated

---

[162] Constables' Educ. & Training Bd., *supra* note 158, at 8.

handgun retention techniques and emergency knife defense, and discussed handcuffing tactics, techniques, and procedures. The course also analyzed critical mental skills such as situational awareness, subject assessment, and environmental assessment. The course included numerous drills. Trainees had an opportunity to practice at least three ground defense escape techniques.

The second course arose out of recognition that constables, like all law enforcement officers, more often deal with people from various cultural backgrounds. Lack of cultural awareness may lead to misunderstanding and, in turn, to an escalation of conflict. The purpose of the class was to increase cultural awareness and thusly improve constables' ability to interact successfully with persons from various cultures.

The third course reemphasized the importance of ethics in fulfilling constables' duties and reviewed various ethical problems a constable might encounter. It also focused on a specific state document that constables must file.

The fourth class focused on 18 Pa.C.S. ch. 5 (relating to general principles of justification), which addresses the use of force, as well as related federal case law. This block of instruction included training in mental toughness skills that can help overcome the effects of stress on one's memory.

In addition to the mandatory continuing education, the board offers optional training courses to constables and deputy constables who are currently in office and up to date with their training, insurance and certification. In 2012, the 8-hour optional training involved hands-on training in a gym or similar facility.[163] Half of the training was devoted to using force options under stress, and the second half, "Monadnock Expandable Baton," certified constables' use of an expandable baton.

The continuing education courses offered in 2013 included the following:

- Civil law review: enforcement of judgments
- Criminal law review: warrant service
- Defensive tactics: core competencies
- Defensive tactics: using force options under stress (an optional course.)
- Lessons learned: constable involved shooting.[164]

All 2013 continuing education courses included a written examination.

The first course was designed to provide a timeline and procedural guidance to constables in the enforcement of judgments rendered by magisterial district judges for monetary payment. The course contained a detailed review of Pa. Minor Ct. Civ. R. ch. 400 (relating to enforcement of judgments rendered by magisterial district judges for the payment of money), along with several case studies and scenarios directly related to the performance of levies by constables.[165]

---

[163] *Id.* at 9.
[164] DVD: Constables' Continuing Educ. (Pa. Comm'n on Crime & Delinquency 2013).
[165] E-mail from Pfau, *supra* note 161.

"Criminal Law Review" examined the legal basis for warrant service as *per* Pa. R. Crim. P., as well as the tactics for safe and efficient service.[166]  "Defensive Tactics" provided a review of and practice in basic constabulary defensive tactic techniques including patterns of movement and footwork, handgun retention techniques, handcuffing tactics and procedures, takedowns, blocks, methods of transitioning between force options, emergency knife defense, and ground defense escape techniques.[167]

The 2013 version of a "Lessons Learned" continuing education course was "Surviving a Constable-Involved Shooting Accident."  A constable-involved shooting is a highly traumatizing event that can cause various problems for the constable.  The four-hour module was designed to familiarize constables with possible consequences of a shooting and to teach them how to prepare for and overcome the challenges of such a situation.  The course used two recent incidents to highlight critical issues.[168]

The board also establishes standards to certify or qualify constables and their deputies "to carry or use firearms in the performance of any duties."[169]  Similar to continuing education, the firearms qualification is annual.  "As constables take firearms training in one calendar year, they are certified to carry firearms in the performance of their duties the following calendar year."[170]  Any constable who is in office and currently certified may attend firearms training and qualification courses; successful completion allows him to achieve initial certification to carry a firearm.  Remaining certified to carry firearms on duty requires annual attendance at and successful completion of a 20-hour firearms program.[171]

To certify constables to carry firearms, the board "must ensure they are legally eligible to possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in the Commonwealth, under" 18 Pa.C.S. § 6105 and 18 U.S.C. § 922(g).[172]  "Therefore, prior to issuing firearms certification," Pennsylvania Commission on Crime and Delinquency "performs a criminal history background check."[173]

The 40-hour Basic Firearms course was designed to provide essential training in acceptable law enforcement techniques for new constables and those with a lapsed firearms certification of three years or more.[174]  It is offered upon the completion of the basic 80-hour constable training.  The Basic Firearms course consists of lectures, laboratory activities and practical exercises that provide a basic understanding and skills in the safe manipulation of a service revolver/pistol.  "The course stresses safe handling techniques, proper cleaning, correct weapons handling skills and marksmanship."[175]  The course includes interactive judgmental shooting scenarios.  The 20-hour

---

[166] *Id.*
[167] *Id.*
[168] *Id.*
[169] 44 Pa.C.S. § 7148.
[170] Constables' Educ. & Training Bd., *supra* note 158, at 9.
[171] *Id.* at 10.
[172] *Id.* The Pa. law relates to persons not to possess, use, manufacture, control, sell or transfer firearms; the U.S. law similarly makes it unlawful for certain persons to ship, transport or possess firearms.
[173] *Id.*
[174] 37 Pa. Code § 431.48(b).
[175] DVD: *2013 Basic Firearms: Pa. Act 49 Course* (Pa. Comm'n on Crime & Delinquency 2013).

Annual Firearm recertification course offers a review of basic firearm-related skills. Both programs emphasize safety and judgmental shooting.[176] To successfully complete either a basic or an annual firearms course, a constable must pass a written test and a qualification course-of-fire that tests skills.[177]

The board constantly seeks improvements to its constable firearms training. A new qualification course-of-fire was introduced in 2010. This course includes the use of barricades, moving to cover, and employing verbal challenges at each stage, reinforces the training and simulates "real world" scenarios.[178] In 2007, the board added a 20-hour Advanced Firearms course for constables who have higher proficiency with their weapons and want to develop their skills further. Only constables who qualified with a range score of 88% or higher the previous year are allowed to participate in the Advanced Firearms course.[179] The Advanced Firearms curriculum includes tactical shooting and moving drills, close-contact, one-handed shooting, firing from kneeling and prone positions, and shooting at partially exposed targets.[180] Cover and concealment was the highlighted topic for the 2013 Advanced Firearms Module.[181]

A former statute provided constables already in office on its effective date an opportunity to achieve certification through a waiver examination, without attending basic training courses.[182] Presently, a similar waiver examination is used by a different group of constables: those who have served in another law enforcement capacity such as police officers or deputy sheriffs and have other Pennsylvania-based law enforcement training and experience.[183] The law enforcement waiver exam includes the topics that constitute the basic constable training course, and the exam is continuously revised and updated.[184]

From the initiation of Constables' Education and Training Program through 2013, a total of 3,999 people have either successfully completed basic training or passed the waiver examination and have been certified by the board.[185] As part of its effort to disseminate information to constables as well as to magisterial district judges and other members of the Commonwealth's justice system, the board issues Constables' Training Bulletins.[186]

---

[176] Constables' Educ. & Training Bd., *supra* note 158, at 10.
[177] *Id.*
[178] *Id.*
[179] *Id.*
[180] *Id.* at 11.
[181] DVD: *2013 Advanced Firearms: Pa. Act 49 Course* (Pa. Comm'n on Crime & Delinquency 2013).
[182] 42 Pa.C.S. § 2945 (repealed 2009).
[183] 37 Pa. Code §§ 431.23, 431.24.
[184] Constables' Educ. & Training Bd., *supra* note 158, at 11.
[185] E-mail from Pfau, *supra* note 161.
[186] Constables' Educ. & Training Bd., *supra* note 158, at 14, *available at* http://www.portal.state.pa.us/portal/server.pt?open=512&objID=5386&&PageID=494523&level=4&css=L4&mode=2.

# ISSUES & RECOMMENDATIONS

House Resolution No. 138 asserts a legislative commitment to meaningful constabulary reform, emphasizing "increased oversight and accountability."[187] Pennsylvania's constabulary is a historical position that has become partly regulated. Constables operate independently but largely support Pennsylvania's minor judiciary. Historical practices, partial regulation, and independent operation combine to perpetuate confusion for the constables and anybody with whom they interact.

This part of the report will consider some issues and disclose staff proposals to address those issues and update the law. The goal is to clarify intragovernmental authority while increasing some supervisory aspects and promoting more uniform practices and standards for constables locally and Commonwealth wide. This is a staff report based upon informal discussions with individuals holding both executive and judicial positions. Staff obtained different perspectives and conflicting advice. These proposals reveal how staff recommends balancing these differences. If the General Assembly would like to pursue these or similar recommendations, Commission staff is willing to assist committee staff in revising these proposals. Of course, legislative committees would be well-served to hear directly from those with relevant experience who either support or oppose these recommendations.

## Issues Covered by Statutory Recommendations

### Definitions

The statute defines one word, livestock.[188] Commission staff has not found a Pennsylvania trial court or appellate court ruling relating to constabulary impoundment of trespassing livestock that is more recent than 1935. While livestock can still trespass, it is hard to believe that an owner of land on which livestock has trespassed would know to notify his local constable; he might not even be aware who his local constable is (if there is one). Moreover, constables must equip themselves. A constable would have to impound the trespassing livestock with the owner of the land where the livestock trespassed or find an entity "best situated to care for the livestock."[189]

Constables are not trained to impound livestock, and it is unlikely that many would be notified to do so. It is unlikely that a candidate for election to the constabulary would pursue that position to impound livestock. Staff perceives this to be an outdated duty and recommends that it be repealed from the statute, which would make this definition irrelevant. Since the only defined term in the statute is for a seemingly anachronistic constabulary duty, the section relating to definitions is recommended for repeal.

---

[187] Appendix A, *infra* p. 57.
[188] 44 Pa.C.S. § 7102.
[189] *Id.* § 7159(a)(1).

*Townships*

With no apparent rationale, some statutory provisions apply to townships and not cities or boroughs. *E.g.*, elected constables of townships who fail to appear in court to accept or decline the office are subject to forfeiture of $40 and there is a specified statutory bond for constables in townships.[190] There is no equivalent statutory requirement for constables in boroughs and cities. These kinds of provisions should either be repealed or extended to constables regardless of municipality.

The recommendation is to eliminate the statutory forfeiture of $40 applying to a constable in a township when declining his office. Conversely, the requisite bond would remain for constables in townships and be extended to constables in boroughs and cities. The amounts of the bond have been updated. Both of these recommendations promote statutory uniformity as applied to constables elected in boroughs, cities, and townships.

*Conflicts*

The statute addresses conflicts for some public offices[191] and police officers.[192] There should be some consideration to statutorily recognize and forbid other potential conflicts to prevent constables from possibly relying on their elected position to assist private arrangements. Another key consideration is separating a public official's constabulary authority benefiting the public from his perceived or actual constabulary authority benefiting private persons and employers. The prohibited conflicts would apply to both constables and their deputies.

The recommendation is to repeal the statutory exception allowing borough police to accept constabulary fees. This recommendation would promote statutory uniformity as applied to police employed by boroughs, cities, and townships. More amendments are recommended to address other potential conflicts that could arise if constables are otherwise employed as bail bond enforcement agents, professional bondsmen, debt collectors, collector-repossessors, police for nonprofit corporations, railroad police, humane society police, security guards, and private detectives. Most of these potential conflicts are addressed by simply forbidding simultaneous employment as a constable and in these other capacities. Bail bond enforcement agents are unlicensed in the Commonwealth; therefore, if this proposal is adopted, constables would be prohibited from working in this capacity (at least for now).

The recommendation includes prohibiting a convicted felon or Megan's law registrant from being a constable or deputy constable. This recommendation is somewhat similar to the Confidence in Law Enforcement Act, which generally forbids hiring or continuing to employ persons convicted of felonies or serious misdemeanors as law enforcement officers.[193] Constables' Education and Training Board would be required to check criminal history record information before certifying constables and deputy constables.

---

[190] *Id.* § 7114(b), (c).
[191] *Id.* § 7131(a).
[192] *Id.* § 7132.
[193] Act of Jan. 29, 2004 (P.L.4, No.2); 53 P.S. §§ 752.1-752.5.

The final recommendation relating to conflicts is to forbid the opportunity for nepotistic approval of fees. Typically, magisterial district judges assign work and authorize the charges payable to constables and deputy constables. Staff became aware of allegations of phony bills being submitted to collect constabulary fees for services never actually performed.[194] This could be especially tempting if a constable is married to a magisterial district judge's clerk. To reduce this temptation, constables would be forbidden to accept work from a magisterial district judge if there is a close relationship or household membership involved. Conversely, a magisterial district judge would be forbidden to request services from a constable due to the same conflict. The prohibition on nepostic approval of fees could help facilitate equitable work opportunities for constables.

*Training*

The monetary amounts throughout 44 Pa.C.S. ch. 71 (relating to constables) are dated. *E.g.*, the amount of insurance to cover liability dates from a score of years ago.[195] These amounts and almost all other monetary amounts throughout the chapter are recommended to be updated. Since proof of this coverage is required for constables and their deputies and its requisite amount is proposed to be increased, Constables' Education and Training Board would be required to recurrently evaluate its availability and affordability.

The statutory maximum total hours for Constables' Education and Training Program is 80 hours.[196] There seems to be plenty to cover in the time allowed by the statute; if the board decides to add a topic or expand instruction on a current topic, it must eliminate a topic or reduce instruction on a current topic (because the full 80 hours are used now). To give the board some flexibility to add or expand instruction and not simultaneously eliminate or reduce instruction, the statute should probably convert the maximum of 80 total hours to a minimum and allow the board to maximize instruction at 100 hours. Since 80 total hours of instruction is the *status quo*, changing the statutory maximum to a statutory minimum is not an actual change; however, allowing up to another 20 hours of instruction would change the *status quo* if the board decides to add instruction that is not offset by decreasing instruction elsewhere.

The other proposed amendment for this statutory subchapter would use Constables' Education and Training Account to pay for a newly established board to oversee the constabulary Commonwealth-wide. This account already finances "training program expenses, the costs of administering the program and all other costs associated with the activities of the board" along with constabulary costs associated to attend continuing education programs.[197] Account revenues have been relatively flat for years while the board's costs have increased.[198] The account is funded by a statutory surcharge that has not been increased in the 20 years since its enactment and the inception of the program.[199] To pay for the new oversight board and bolster the account, the

---

[194] Dan Kelly, *Two Berks Constables, District Judge's Secretary Charged in Billing Taxpayers in No-work Scheme*, Reading Eagle, Sept. 23, 2008, *available at* http://www2.readingeagle.com/article.aspx?id=106848 (last visited Apr. 14, 2014).

[195] 44 Pa.C.S. § 7142(b); dating at least from the act of June 15, 1994 (P.L.265, No.44), § 1.

[196] *Id.* § 7145.

[197] *Id.* § 7149.

[198] Constables' Educ. & Training Bd., *supra* note 158, at 3.

[199] *Id.*

statutory fee is proposed to almost double. Even if this new oversight board is not created, the statutory surcharge should still be increased substantially.

*Powers & Duties*

A recommendation would require constables and their deputies performing an authorized duty to wear a uniform or other clothing identifying them as constables and require them to carry a badge. While performing judicial duties, constables must already comply with this requirement.[200] Easy identification is intended to promote protection, authority, and respect during encounters and other interactions among the constabulary and the public.

To preserve peace, constables are statutorily required to serve all elections at the polling place in each election district during the election and while votes are being counted.[201] This is the only statutorily mandated duty of constables. If a polling place is not at a building with a police station, police officers must remain more than 100 feet from a polling place during an election unless they are there to vote, serve warrants or respond to a call to preserve peace.[202] Some county officials contend that this is an unnecessary requirement because police can be summoned if the peace is disturbed at polling places. Some constables believe that they honestly and validly preserve peace while serving elections. There are not enough constables to fulfill this statutory obligation.

The sensible solution is to require constables to preserve peace at polling places where and when there is a perceived need to do so (and not require this service where and when there is no perceived need). Judges of election serve at each polling place and would probably be in the best position to determine the desirability of constabulary service at their locations. County boards of elections could decide as well but would be less likely than judges of elections to develop a familiarity with individual polling places. Since there may be more judges of elections wanting constabulary service at elections than there are available constables and deputies, judges of elections should be required to request constabulary service through the county's director of elections and voter registration. The county director could then assign constables where most needed if there more demand than can be met. The director could also request constables to serve in neighboring boroughs, townships and wards if the constable's service is not requested at his most local or otherwise preferred polling place.

Constabulary duties have evolved throughout their hundreds of years of existence. The statute authorizes constables to arrest those reasonably suspected (but having no warrant) of violating timber laws.[203] Warrantless arrests by our constabulary should be highly limited because contemporary constables are not patrol officers. Timber laws should be enforced by rangers rather than by elected constables and their deputies. Property owners could also report suspected crimes to the police. Constables are not trained to enforce timber laws, and one wonders why they would be patrolling a forest looking to do so. This statutory authorization should have been repealed. At

---

[200] Pa. Unified Judicial Sys., Constable Policies, Procedures & Standards of Conduct IV(C).
[201] 44 Pa.C.S. § 7152.
[202] Act of June 3, 1937 (P.L.1333, No.320), § 1207; 25 P.S. § 3047.
[203] 44 Pa.C.S. § 7155.

one time, constables of townships and boroughs were *ex officio* game wardens, thereby requiring them to protect timber.[204] As far as staff can tell, this statutory authority is actually obsolete.

The statute also directs constables to impound and sell trespassing livestock.[205] This is another statutory provision that is likely obsolete. Constables are not trained to impound and sell trespassing livestock. The person on whose land livestock trespasses might not know that the statute directs him to notify his local constable.[206] Moreover, the person on whose land livestock trespasses might not know who his local constable is or how to contact him.[207] One could presume that Department of Agriculture might be better suited to statutorily assign authority to impound and sell trespassing livestock rather than an independent, elected constable, who must equip himself on an individual basis.

The statute authorizes constables of boroughs to arrest "without warrant and upon view . . . any person who" breaches the peace or is vagrant, riotous, disorderly or drunken.[208] Constables of boroughs are also authorized to arrest "without warrant and upon view . . . any person who" engages in an "unlawful act tending to imperil the personal security or endanger the property of . . . citizens."[209] Finally, the statute also authorizes constables of boroughs to arrest "without warrant and upon view . . . any person who" violates an ordinance imposing a fine or penalty.

Statutory authority relating to warrantless arrests should apply to constables in townships and cities rather than just in boroughs. Aside from this inconsistency, this statutory authority does not pay a fee to the constabulary for these warrantless arrests. Any of these warrantless arrests would be *gratis*. Moreover, this statutory authority would otherwise be exercised by salaried patrol officers rather than the contemporary, fee-for-service constabulary.

Creating a statutory fee for warrantless arrests by constables would not be a viable alternative. It would pose an untenable conflict of interest for the constabulary, who would be paid *per* arrest, and would subject the payor to excessive demands for payment. If the payor is a governmental entity, a constable could create budgetary trouble by arresting as many subjects as he could. It could create enormous mistrust towards law enforcement because many arrestees would presume that they are being arrested to generate constabulary fees.

Aside from the potential conflict of interest, this statutory authority for warrantless arrests is too broad. The recommended amendment would apply to constables in boroughs, cities and townships to statutorily limit their warrantless arrest authority to crimes endangering persons in their presence and view while on duty. The elected constabulary holds the position for a term of six years and is unsupervised. In contemporary society, it does not seem proper to popularly elect an unsupervised individual for a lengthy term while granting him extensive warrantless arrest authority.

---

[204] Act of Mar. 22, 1899 (P.L.17, No.14) (repealed by the act of Mar. 30, 1925 (P.L.89, No.59)).

[205] 44 Pa.C.S. §§ 7159, 7159.1.

[206] *Id.* § 7159(a).

[207] Pa. Comm'n on Crime & Delinquency allows one to electronically search for constables; however, it does not provide contact information. *Available at* https://www.pccdcis.state.pa.us/search.asp (last visited Apr. 1, 2014).

[208] 44 Pa.C.S. § 7158.

[209] *Id.*

The constabulary must pay for all its own equipment. The elected constabulary is unlikely to be trained and equipped similarly to municipal police forces that routinely patrol to detect and prevent crime and have a supervisory structure. The elected constabulary does not have the institutional expertise and technology that is available to contemporary police departments. The elected constabulary does not have governmentally assigned legal counsel, charging authority for arrests and access to the intragovernmental data that patrol officers have. False arrests by the constabulary could result in unaffordable insurance *premia*.

In Pennsylvania today, constables are more similar to sheriffs than to police because they function primarily to assist the judiciary rather than to enforce laws *via* a general police power. The statute should recognize this distinction and clarify the warrantless arrest authority for constables by making it uniform throughout the Commonwealth.

Citing their safety in executing arrest warrants and their asserted authority to make warrantless arrests, constables have consistently expressed their interest in having full and unlimited access to Pennsylvania Justice Network.[210] Criminal justice agencies control access to this network and do not permit the constabulary to use it. While constables should have relevant information if the subject of a warrant for arrest has a criminal history indicating his potential danger, they would not need access to this network for warrantless arrests as the recommended amendment would negate its utility in that context.

Appendix E[211] contains references to constables in Pennsylvania statutes outside of 44 Pa.C.S.. Many of these are obscure, outdated or otherwise unjustifiable in contemporary society. *E.g.*, one of these statutes dates from 1885 and directs constables to notify owners of mountain lands to cut weeds within ten days of the notification.[212] A constable neglecting this duty is liable to a fine of $10.[213] The proposed amendments in this report are limited to 44 Pa.C.S. ch. 71; however, some of these other statutes should be amended or repealed.

*Compensation*

Constabulary fees are statutorily set.[214] These fees are fixed and only change when the statute is amended, which occurs infrequently and irregularly. Most of these fees date from close to a decade ago. Any amendment should include updated fees. Monetary amounts fixed elsewhere in the statute are also recommended to be updated for the same reason.

Staff is aware of observations and complaints about the disuniform application and interpretation of the statutory fees. The recommended amendment proposes clarifying verbiage to reduce the incidence of disparate payments otherwise dependent upon the county or magisterial district judge. If the recommended statutory amendments are enacted, a nepostically engaged constable's fees would not be payable. Because the statutory authority for constables to sell

---

[210] Supplemental background information is available *infra* p. 45.
[211] *Infra* p. 69.
[212] Act of Apr. 24, 1885 (P.L.9, No.11); 3 P.S. § 243.
[213] *Id.*
[214] 44 Pa.C.S. ch. 71, subch. G.

trespassing livestock is proposed for repeal, the corresponding fees for doing so are also proposed for repeal.

Pennsylvania's constitution forbids increasing emoluments of any public officer after his election.[215]  Staff does not know how the past fee increases affected constables during their tenure, but an emolument is compensation for services annexed to an official position as a fee.[216]  It seems that any statutory fee increases would be constitutionally forbidden to be paid to a constable unless and until the constable is reelected.

*Penalties & Remedies*

The statutory authority to remove constables is recommended to be broadened to include malfeasance and engaging in prohibited conflicting employment.  Another statutory alternative would be an action in *quo warranto*.  "[W]hen the General Assembly creates a public office, it may impose terms . . . on the removal of the public officer so created."[217]  The statute would also expressly say that a constable may revoke the appointment of his deputy with or without judicial approval.  "[T]he constable should have the right at any time, like any other principal, to terminate the deputy's power to act for him . . . ."[218]

The section relating to the compensation violation is corrected to refer to the existent law.  The current statute mistakenly referred to a repealed law.  The amount of the penalty is also updated because the current amount dates from 1897.

The statutory fine applied to a constable in a township who fails to serve or appoint a deputy to do so is recommended to be repealed.  The statute authorizes this fine only for constables in a township.  If retained, it should be extended to constables in boroughs and cities.  Staff decided to recommend its repeal instead because it disbelieves that this fine is routinely imposed.

There are complaints about constabulary service as well as complaints from constables.  The constabulary should have more formalized supervision than an election every six years.  Since the constabularly is an independent, executive position paid on a fee-for-service basis that is locally elected yet can operate Commonwealth-wide, more formalized supervision is challenging.  Constables should also have an accessible and functional forum for their concerns to be fairly addressed.

The recommendation is to statutorily authorize county boards to resolve disputes relating to constabulary performance and pay.  To increase uniform practices, county boards could also implement policies to supplement statutes and regulations.  Board membership would include representatives of the executive and judiciary.

---

[215] Pa. Const. art. III, § 27.
[216] *Apple v. Crawford Cnty.*, 105 Pa. 300 (1884).
[217] *Burger v. Sch. Bd. of McGuffey Sch. Dist.*, 923 A.2d 1155, 1164 (Pa. 2007).  Pa. Const. art. VI, § 1, authorizes the legal creation of officers not constitutionally provided for; this authority "necessarily involves and implies legislative power to annex conditions of tenure."  *Weiss v. Ziegler*, 193 A. 642, 644 (Pa. 1937).
[218] *In re Page*, 205 A.2d 637, 638 (Pa. Super. Ct. 1964).

The recommendation is to require Pennsylvania Commission on Crime and Delinquency to create a Commonwealth board, which could consider appeals from county boards or consider disputes originally if there is no county board. Otherwise, it would function similarly; however the commission could establish policies to supplement statutes that would apply Commonwealth-wide. Appeals of disputes before the board would go to Commonwealth Court. Funding for the board would come from Constables' Education and Training Account. If this recommendation is to be considered, the General Assembly would need direct input from the commission on its viability and affordability.

Staff considered alternatives to a Commonwealth board, but this seems to be a more certain way to implement policies Commonwealth-wide. Other than when performing judicial duties, constables are not and cannot be supervised by the judiciary. At the county level, the sheriff or district attorney could supervise constables, but, since they are all independently elected, one should not be subject to direct subordination to another. The other consideration is that constables have disputes with the paying authority, and those disputes should be fairly considered by a more independent entity. Sometimes the payor regards claims for payment to be improper. Conversely, sometimes the payee contends that the payor is not complying with the statute.

If the constabulary was not established centuries ago and had not remained operational, it is unlikely that this position would be revived in its current form. Elimination of the constabulary would require its replacement because it provides services necessary for the minor judiciary.[219] A replacement would not be cheaper, and there does not seem to be resources available to cover the higher costs for any replacement. Since retaining the constabulary seems to be the more viable recommendation, its authority and supervision should be statutorily clarified and updated.

---

[219] Historical, patrol duties of the constabulary have already been replaced by municipal police.

# PROPOSED AMENDMENTS TO 44 PA.C.S.

Amending Title 44 (Law and Justice) of the Pennsylvania Consolidated Statutes, in constables, further providing for powers and duties, for conflicts, for training, for compensation and for penalties and remedies and making repeals.

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1.  Section 7102 of Title 44 of the Pennsylvania Consolidated Statutes is repealed:

[§ 7102.  Definitions.
    The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

"Livestock."  Cattle, horses, sheep, goats and swine of every age and sex.]

Section 2.  Section 7114 of Title 44 is amended to read:

§ 7114.  Townships.
    [(a)  Election.--] The following shall apply:
        (1)  The qualified voters of every township shall vote for and elect a properly qualified person for constable.
        (2)  The qualified electors of each township of the first class may vote for and elect a properly qualified person to serve as constable, in addition to the constable elected under paragraph (1).
    [(b)  Procedure upon election; penalty.--Every person elected to the office of constable in a township shall appear in court on the first day of the next court of common pleas of the same county to accept or decline the office. A person who neglects or refuses to appear, after having been duly notified of the election, shall forfeit to the township the sum of $40 to be levied by order of the court.
    (c)  Bond.--The bond given by a constable in a township shall be in a sum not less than $500 nor more than $3,000, as the court shall direct, and shall be taken by the clerk of the court in the name of the Commonwealth, with conditions for just and faithful discharge by the constable of the duties of office. The bond shall be held in trust for the use and benefit of persons who may sustain injury by reason of neglect of duty, and for the same purposes and uses as a sheriff's bond.]

Section 3.  Title 44 is amended by adding a section to read:

§ 7115.  Bond.
    The bond given by a constable shall be in a commercially available sum not less than $1,000 nor more than $5,000, as the court shall direct, and shall be taken by the clerk of the court in the name of the Commonwealth, with conditions for just and faithful discharge by the constable of the

duties of office.  The bond shall be held in trust for the use and benefit of persons who may sustain injury by reason of neglect of duty, and for the same purposes and uses as a sheriff's bond.

Section 4. Section 7132 of Title 44 is amended to read:

§ 7132. Police officers.

   [(a)  Constable employed as policeman not to accept other fees in addition to salary.--] Except for public rewards and legal mileage allowed to a constable or deputy constable for traveling expenses, [and except as provided in subsection (b), it is unlawful for] a constable or deputy constable who is also employed as a policeman [to] may not charge or accept a fee or other compensation, other than his salary as a policeman, for services rendered or performed pertaining to his office or duties as a policeman or constable or deputy constable. Reimbursement for mileage is not payable to a constable for travel within the municipality where the constable or deputy constable is also employed as policeman.

   [(b)  Exception.--Unless prevented from doing so by the operation of the civil service provisions of the act of February 1, 1966 (1965 P.L.1656, No.581), known as The Borough Code, borough policemen who reside in the borough may hold and exercise the office of constable in the borough, or in any ward thereof, and receive all costs, fees and emoluments pertaining to such office.]

Section 5. Title 44 is amended by adding sections to read:

§ 7133. Bail bond enforcement agent.

   (a)   General rule.--Unless separately licensed within the Commonwealth as a bail bond enforcement agent and except as provided in subsection (b), a constable or deputy constable may not recapture suspects who are released on bail.  If separately licensed within the Commonwealth as a bail bond enforcement agent, a constable or deputy constable recapturing suspects released on bail shall comply with all statutes and regulations governing bail bond enforcement agents.

   (b)   Exception.--Regardless of licensure as a bail bond enforcement agent, a constable or deputy constable may execute a warrant of arrest issued for an individual released on bail.

§ 7134. Professional bondsman.

   A constable or deputy constable may not engage in or continue to engage in business as a professional bondsman.

§ 7135. Debt collection.

   (a)  Debt collector.--Except when engaged under judicial or other civil process, a constable or deputy constable may not enforce, collect, settle, adjust or compromise claims on behalf of a creditor or collection agency.

   (b)  Collector-repossessor.--Unless regularly employed by an installment seller or a sales finance company, a constable or deputy constable may not collect a payment on an installment sale contract or repossess a motor vehicle that is the subject of an installment sale contract.  When collecting a payment or repossessing a motor vehicle as a regularly employed person, a constable or deputy constable may not hold himself out to be a constable or deputy constable.  A constable or deputy constable who is authorized as a regularly employed person to collect these payments or

repossess motor vehicles may not independently contract to perform the same or similar services as a constable or deputy constable.

(c) Definitions.--As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"Claim." As defined in 18 Pa.C.S. § 7311(h) (relating to unlawful collection agency practices).

"Collection agency." As defined in 18 Pa.C.S. § 7311(h).

"Creditor." As defined in 18 Pa.C.S. § 7311(h)

"Installment sale contract." As defined in 12 Pa.C.S. § 6202 (relating to definitions).

"Installment seller." As defined in 12 Pa.C.S. § 6202.

"Motor vehicle." As defined in 12 Pa.C.S. § 6202.

"Sales finance company." As defined in 12 Pa.C.S. § 6202.


§ 7136. Other incompatible employment.

A constable or deputy constable may not accept employment or continue to remain employed in these capacities:

(1)   Police for a nonprofit corporation appointed under 22 Pa.C.S. § 501 (relating to appointment by nonprofit corporations).

(2)   Railroad or street railway police appointed under 22 Pa.C.S. § 3301 (relating to appointment).

(3)  Humane society police officer as defined in 22 Pa.C.S. § 3702 (relating to definitions).

(4)  Security guard employed by a patrol agency as defined by section 2(e) of the act of August 21, 1953 (P.L.1273, No.361), known as The Private Detective Act of 1953.

(5)  Private detective as defined by section 2(c) of The Private Detective Act of 1953.


§ 7137. Disqualification.

(a)  Ineligibility.--An individual is ineligible to be a constable or deputy constable if that individual:

(1)  Was convicted of an offense graded as a felony and has not been pardoned.

(2)  Is required to register under 42 Pa.C.S. § 9799.13 (relating to applicability).

(b)  Certification.--The Constables' Education and Training Board may not certify a constable or deputy constable under section 7144(9) (relating to program established) who is disqualified under subsection (a). To comply with this section, the board shall check criminal history record information under 18 Pa.C.S. Ch. 91 (relating to criminal history record information).


§ 7138. Nepotism.

(a)  Magisterial district judge.--A magisterial district judge may not request services from nor assign work to a constable or deputy constable related to the magisterial district judge or a staff member of the magisterial district judge.

(b)  Constable.--A constable or deputy constable may not perform work for or accept an assignment from a magisterial district judge if the constable or deputy constable is related to the magisterial district judge or a staff member of the magisterial district judge.

(c)  Definition.--As used in this section the term ''related to'' refers to spouses, parents, siblings, aunts, uncles, nieces, nephews, cousins, grandparents, grandchildren and members of the same household.

Section 6. Section 7142 of Title 44 is amended to read:

§ 7142. Conduct and insurance.

* * *

(b)  Liability insurance.--Every constable and deputy constable must file with the clerk of courts proof that he has, currently in force, a policy of professional liability insurance covering each individual in the performance of his judicial duties with a minimum coverage of [$250,000] $500,000 per incident and a minimum aggregate of [$500,000] $750,000 per year. The Constables' Education and Training Board shall [immediately] recurrently investigate and implement the most cost-effective method of achieving liability insurance for constables and deputy constables under this subsection.

(c)  Loss of certification.--Any constable or deputy constable who fails, neglects or refuses to maintain a current insurance policy as required by subsection (b) or to file proof thereof with the clerk of courts shall cease automatically to be certified to perform judicial duties upon the expiration of the policy of which proof has been filed with the clerk of courts.  A fee earned prior to loss of certification remains payable to the constable or deputy constable.

* * *

Section 7. Sections 7144 and 7145 of Title 44 are amended to read:

§ 7144. Program established.
The board, with the review and approval of the commission, shall:

* * *

(12)  Make an annual report to the Governor and to the General Assembly concerning:
(i)  The administration of the Constables' Education and Training Program.
(ii)  The activities of the board.
(iii)  The costs of the program.
(iv)  Proposed changes, if any, in this subchapter.
(v)  The availability of insurance.

§ 7145. Program contents.
The Constables' Education and Training Program shall include training for a total [of] ranging from a minimum of 80 hours to a maximum of 100 hours, the content of which shall be determined by regulation. The training shall include instruction in the interpretation and application of the fees provided for in section 7161 (relating to fees).

Section 8.  Section 7149 of Title 44 is amended to read:

§ 7149. Restricted account.
(a)  Account established.--There is established a special restricted account within the General Fund, which shall be known as the Constables' Education and Training Account, for the purposes

of financing training program expenses, the costs of administering the program and all other costs associated with the activities of the board and the implementation of this subchapter and as provided under subsection (f). This account shall also be used to pay the costs associated with the Commonwealth constabulary review board established by section 7179(c) (relating to oversight).

(b)  Surcharge.--There is assessed as a cost in each case before a magisterial district judge a surcharge of [$5] $9 per docket number in each criminal case and [$5] $9 per named defendant in each civil case in which a constable or deputy constable performs a service provided in Subchapter G (relating to compensation), except that no county shall be required to pay this surcharge on behalf of any indigent or other defendant in a criminal case.

\* \* \*

Section 9. Sections 7151 and 7152 of Title 44 are amended to read:

§ 7151. General imposition of duties and grant of powers.

(a)  Statutory duties.--Constables or deputy constables shall perform all duties authorized or imposed on them by statute.

(b)  Uniform.--When performing or attempting to perform an authorized duty, a constable or deputy constable shall wear a police-style uniform or other clothing clearly identifying him as a constable or deputy constable and carry a constabulary badge.  If a constable or deputy constable is wearing clothing clearly identifying him as a constable or deputy constable, the writing on the clothing must say "constable" or "deputy constable" and may not say "police".  When a constable or deputy constable is working with and accompanied by a second constable or his deputy, only one is required to wear a uniform or other clothing clearly identifying him as a constable or deputy constable.  By regulation, the Pennsylvania Commission on Crime and Delinquency may establish standards for uniform or other clothing consistent with this section.

§ 7152. Elections.

(a)  Duty.--The constable of a borough, township or ward, or his deputy, shall do all of the following:

(1)  Be present at the polling place in each election district of the borough, township or ward at [each election] elections during the continuance of each election and while the votes are being counted, for the purpose of preserving the peace.

(2)  Serve at [all] elections.

(b)  Applicability.--A constable:

(1)  Shall perform the duty under subsection (a) when a county director of elections and voter registration requires the constable to be present at a polling place within an election district of the borough, township or ward in which the constable was himself elected.

(2)  May perform the duty under subsection (a) when a county director of elections requests the constable to be present at a polling place within an election district of the county outside of the borough, township or ward in which the constable was himself elected.

(3)  May not perform the duty under subsection (a) unless required or requested to do so by the county director of elections and voter registration, who must base his requirement or request on the input of judges of election.

(c)  Deputy constable.--If the duty under subsection (a) is required or requested under subsection (b), a constable may have his deputy:

(1) Substitute for him.
(2) Supplement the constable's presence when the requirement or request is for more than one polling place.

Section 10.  Section 7155 of Title 44 is repealed:

[7155. Arrest of offenders against forest laws.
    If a person is detected by a constable in the act of trespassing upon any forest or timber land within this Commonwealth, under circumstances as to warrant reasonable suspicion that the person has, is or may commit an offense against any law for the protection of forests and timber land, the constable may, without first procuring a warrant, arrest the person.]

Section 11.  Section 7156(b) of Title 44 is amended to read:

§ 7156. Executions.

* * *

    (b)  Invalid returns.--If a constable or deputy constable makes a false return, does not produce the plaintiff's receipt on the return day or makes a return deemed insufficient by the magisterial district judge, the magisterial district judge shall issue a summons to the constable or deputy constable to appear on the designated day, which may not be more than eight days from the date of issuance, to show cause why a writ of execution should not be issued against the constable or deputy constable for the amount of the writ of execution under subsection (a). If the constable or deputy constable does not appear or does not show sufficient cause why the writ of execution should not be issued against him, the magisterial district judge shall enter judgment against the constable or deputy constable for the amount of the writ of execution under subsection (a) with costs. No stay may be entered upon the writ of execution, and, upon application of the plaintiff or his agent, the magisterial district judge shall issue an execution against the constable or deputy constable for the amount of the judgment, which may be directed to an authorized person. The summons under this subsection shall be issued to an authorized person to serve. If the summons is not served, that person shall pay a fine of [$20] $25. If an authorized person cannot be conveniently found to serve the summons, the magisterial district judge shall direct it to the supervisor of the highways of the township, ward or district where the constable or deputy constable resides, who shall serve the summons or pay a penalty of [$20] $25.

    * * *

Section 12.  Section 7158 of Title 44 is amended to read:

§ 7158. Arrest [in boroughs].
    (a)  Authority.--In addition to [any other powers granted under law] executing a warrant of arrest, a readily identifiable constable or deputy constable while on official business [of a borough shall] may, without warrant and upon view and probable cause, arrest and commit for hearing any person [who: