UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

KEVIN MCCULLERS,                              :
                    Plaintiff,               :
          v.                                 :          No. 5:15-cv-3732
                                             :
COMMONWEALTH OF PENNSYLVANIA,  :
LEHIGH COUNTY,                               :
CITY OF ALLENTOWN,                           :
CARLOS ROBERTO BERNARDI,                     :
JOHN DOES, 1 THROUGH 10,                     :
FRED J. CONTINO,                             :
and HOWARD W. ALTEMOS, JR.,                  :
                    Defendants.              :

———————————————————————

## MEMORANDUM
**Defendant City of Allentown's Motion to Dismiss, ECF No. 28 - Granted/Denied in part**
**Defendant Lehigh County's Motion to Dismiss, ECF No. 30 - Granted/Denied in part**
**Defendant Altemos's Motion to Stay, ECF No. 31 - Granted**
**Defendant Bernardi's Motion to Dismiss, ECF No. 41 - Granted/Denied in part**
**Defendant Commonwealth of Pennsylvania and Contino's Motion to Dismiss, ECF No. 50 - Granted/Denied in part**

**Joseph F. Leeson, Jr.**                                          **June 30, 2016**
**United States District Judge**

I.       **INTRODUCTION**

On July 6, 2015, Plaintiff Kevin McCullers initiated this civil rights action pursuant to 42

U.S.C. § 1983, asserting violations of his constitutional rights and state tort claims following an

incident on July 17, 2014, at which he was shot by constable Defendant Howard W. Altemos, Jr.,

and had the tire of the vehicle he occupied fired upon by constable Defendant Carlos Roberto

Bernardi, who, along with the John Doe Defendants, were serving a warrant for unpaid

parking/traffic tickets on behalf of the remaining Defendants.  Following receipt of an Amended

Complaint, Defendants Bernardi, Contino, Commonwealth of Pennsylvania, Lehigh County, and

City of Allentown moved to dismiss the Amended Complaint.  Altemos filed a Motion to Stay these proceedings pending the outcome of the criminal case filed against him arising from this incident.  For the reasons set forth below, the Motions to Dismiss are granted in part and denied in part, and the Motion to Stay is granted.

## II.    BACKGROUND

McCullers filed a Complaint on July 6, 2015, pursuant to 42 U.S.C. § 1983.  ECF No. 1.  On September 9, 2015, he filed an Amended Complaint.  Am. Compl., ECF No. 26.  McCullers alleges that Defendants Altemos, Bernardi, and John Does perform constable duties on behalf of Defendants Commonwealth of Pennsylvania ("Commonwealth"), Lehigh County, and the City of Allentown ("City").  Am. Compl. ¶ 35.  He claims that at all times relevant to the action, Altemos, Bernardi, and John Does acted on behalf of, or at the direction of, the Commonwealth, Lehigh County, the City, and Defendant Fred J. Contino, Chair of the Constables Education and Training Board.  *Id.* ¶ 10.

McCullers alleges that on July 17, 2014, Altemos, Bernardi, and John Does travelled to his residence in Whitehall, Pennsylvania to serve him with a warrant for unpaid parking/traffic tickets.  *Id.* ¶ 50.  They were allegedly dressed in plain clothes, never identified themselves as constables or as government officials, and never knocked on his door.  *Id.* ¶¶ 51, 53, 56.  Instead, as McCullers was exiting his garage in his motor vehicle, they allegedly concealed their positions and then fired on him without warning and with the intent to kill.  *Id.* ¶¶ 58-61.  McCullers alleges that he was shot by Altemos, that his tire was struck with a bullet from Bernardi's firearm, and that these Defendants had conspired to commit the shooting.  *Id.* ¶¶ 62-64, 69.  McCullers alleges that he was unarmed and did nothing to provoke being fired upon.  *Id.* ¶¶ 59, 65.

McCullers alleges that Altemos, Bernardi, and John Does did not render aid or assistance after shooting him.  *Id.* ¶ 76.  The bullet fired by Altemos entered the left side of his body and travelled to his neck and spine, causing paralysis.  *Id.* ¶ 77.  McCullers asserts that he has had to undergo surgeries and remains restricted to a wheelchair.  *Id.* ¶¶ 77-78.

He claims that the actions of Altemos, Bernardi, and John Does on July 17, 2014, were under the personal direction of, or with the actual knowledge and acquiescence of, the Commonwealth's Chairman, Lehigh County's Commissioners and/or Judiciary, the City, and/or Contino.  *Id.* ¶ 54.  McCullers alleges that Altemos, Bernardi, and John Does were acting pursuant to a formal policy or standard operating procedures.  *Id.* ¶ 71.  McCullers further alleges that the Commonwealth, Lehigh County, the City, and Contino knew that the lack of training was resulting in excessive uses of force by their constables.  *Id.* ¶ 30.  He claims that they knew Altemos, Bernardi, and John Does had violent propensities and had received complaints about legal and professional infractions in the course of their duties.  *Id.* ¶¶ 40-49.  He also alleges that Altemos, Bernardi, and John Does were not fit to serve as constables or to carry firearms.  *Id.* ¶ 39.  McCullers alleges that these Defendants had been at his residence on a prior occasion, at which time they were aggressive and rude to his girlfriend and that Township police responded to end the encounter.  *Id.* ¶¶ 73-74.

McCullers claims that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments.  *Id.* ¶¶ 84-105.  Specifically, he alleges that Altemos, Bernardi, and John Does used excessive force and that the other named Defendants encouraged or ratified the conduct.  *Id.*  Defendants were allegedly deliberately indifferent to the practices and customs that facilitated these events, by, inter alia, allowing constables to carry firearms and make arrests without adequate training and supervision.  *Id.*  McCullers also brings state tort claims of assault

and battery against Altemos, Bernardi, and John Does.  *Id.* ¶¶ 106-113.  Finally, he claims that the Commonwealth violated his state constitutional rights by failing to supervise and train the constables.  *Id.* ¶¶ 124-141.[1]

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss - Rule 12(b)(6)

In rendering a decision on a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  *Id.*; *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8).

---

[1]    McCullers also asserted a negligence claim against the Lehigh County Constables Association for failure to supervise, Am. Compl. ¶¶ 114-123, but he voluntarily dismissed this party on December 10, 2015, *see* Notice of Voluntary Dismissal, ECF No. 68.

For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d 224, 232 (citing *Twombly*, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678.  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555).  This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'"  *See id.*, 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "Detailed factual allegations" are not required, *id.* at 678 (quoting *Twombly*, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," *id.* at 680 (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)

(citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    ANALYSIS

### A.    McCullers has failed to state a claim against the City of Allentown.

In its Motion to Dismiss, the City asserts that the Amended Complaint failed to allege sufficient facts to state a cognizable claim under the First or Fourteenth Amendment and that the *Monell*[2] claim is based on an erroneous conclusory allegation and should be dismissed.  *See* City's Mem. Supp. Mot. Dismiss, ECF No. 28; City's Reply, ECF No. 46.[3]

#### 1.    *McCullers has failed to state a claim against the City under the First and Fourteenth Amendments, but is given leave to amend his Fourteenth Amendment equal protection claim.*

Although the Amended Complaint alleged that McCullers's rights under the "First, Fourth, and Fourteenth Amendments" were violated, *see* Am. Compl. ¶ 85, McCullers states in his Response to the Motion to Dismiss that he "does not claim [a] violation of his First Amendment rights."  Pl.'s Opp'n ¶ 8, ECF No. 42.  For this reason, and in the absence of any allegations supporting a violation of McCullers's First Amendment rights, any First Amendment claim is dismissed.

Defendant City also asserts that McCullers has not set forth a viable substantive due process claim under the Fourteenth Amendment because a claim for excessive use of force in the course of making an arrest is properly brought under the Fourth Amendment, not under the more generalized protections of due process.  City's Mem. Supp. Mot. Dismiss 4 (citing *Graham v.*

---

[2]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a local government may be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

[3]    The City also argues that it is immune to McCullers's state law claims under the Political Subdivision Torts Claims Act.  City's Mot. Dismiss ¶ 9.  However, McCullers has not alleged state law claims against the City; rather, the only claim against it is Count One, which asserts that the City violated McCullers's rights under the First, Fourth, and Fourteenth Amendments. Am. Compl. ¶¶ 84-105.

*Connor*, 490 U.S. 386, 388 (1989) (holding that claims that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard'")).  McCullers responds that his Fourteenth Amendment claim is grounded on an alleged violation of his right to equal protection under the law, and that Defendants' actions were based on his race.  Pl.'s Mem. Opp'n 8.  In Reply, the City argues that McCullers fails to allege sufficient facts to plead a plausible claim under a theory of equal protection.  City's Reply 3.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from purposefully discriminating between individuals on the basis of race.  *Shaw v. Reno*, 509 U.S. 630, 642 (1993).  "To succeed on an equal protection claim based upon racial discrimination, a plaintiff must allege that he is a member of a protected class, that the defendant intended to discriminate, and that the plaintiff suffered disparate impact based upon race."  *Watford v. Millville Police Dep't*, No. 09-6111, 2010 U.S. Dist. LEXIS 77432, at *19 (D.N.J. July 27, 2010).  "Intentional discrimination can be shown when: (1) a law or policy explicitly classifies citizens on the basis of race; (2) a facially neutral law or policy is applied differently on the basis of race; or (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact."  *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (internal citations omitted).

Although McCullers fails to specifically allege that he is the member of a protected class, the Court will infer from the allegations that he is African American.  The Amended Complaint offers commentary on the "troubling occurrences involving law enforcement shooting and/or killing unarmed civilians in particular African Americans," and the need to protect "the

7

Constitutional rights of all citizens in this country in particular the rights of African Americans."

*See* Am. Compl. ¶¶ 13-16.  These introductory allegations, however, are insufficient to support

his claim.  *See Voth v. Hoffman*, No. 14-7582, 2016 U.S. Dist. LEXIS 57289, at *35 (D.N.J. Apr.

28, 2016) (dismissing the plaintiff's section 1985 race-based conspiracy claims because they

were "entirely conclusory" and offered "no facts from which the Court could find that 'an

invidious discriminatory animus lay behind the coconspirators' actions'").  McCullers also

makes two conclusory allegations that Altemos, Bernardi, and John Does may be intolerant of

African Americans.  *See* Am. Compl. ¶ 49 ("Upon information and belief, prior to the subject

incident, Defendants Altemos, Bernardi and/or John Does (1-10) had taken action and/or

espoused beliefs underlying a racial bigotry or intolerance toward African Americans."); *id.* ¶

87(m) ("Defendants knew or should have known [the constables] had a penchant for violence,

intolerance and bigotry for African Americans, were suffering from emotional and/or

psychological problems, and/or otherwise were impaired in his/her ability to function as

constables. . . .").  Further, McCullers alleges that these Defendants had been at his residence on

a prior occasion, at which time they were aggressive and rude to his girlfriend and that Township

police responded to end the encounter.  *Id.* ¶¶ 73-74.  In opposition to the Motion to Dismiss,

McCullers claims, for the first time, that the constables' "aggressive, belligerent, and rude"

behavior during their prior contact with his girlfriend, who is African American, may have been

connected to her race.  *See* Pl.'s Mem. Opp'n 8.  Ultimately, however, McCullers alleges no facts

to support his various conclusory allegations that the constables acted out of racial animus.  *See*

*Gaymon v. Esposito*, No. 11-4170, 2012 U.S. Dist. LEXIS 44310, at *35-36 (D.N.J. Mar. 29,

2012) (determining that the plaintiffs' conclusory statements were not sufficient to state a claim

that the supervisory defendants established a discriminatory policy or administered a facially neutral law in a discriminatory manner).

Also noticeably absent from the Amended Complaint are any allegations that similarly situated individuals received more favorable treatment. *See Mims v. City of Phila.*, No. 09-4288, 2010 U.S. Dist. LEXIS 50642, at *9 (E.D. Pa. May 19, 2010) (dismissing the plaintiff's equal protection claim because she "did not describe other similarly situated individuals who received more favorable treatment," and "[s]uch allegations are essential to an adequate showing of entitlement to relief"). McCullers alleges that the General Assembly of the Commonwealth of Pennsylvania made broad reform recommendations to the constable system, *see* Am. Compl. ¶¶ 27-38 and Ex. A, and he alludes to "multiple incidents, including in Lehigh County, involving Pennsylvania constables violating constitutional rights, including but not limited to, use of excessive force and shootings, prompting complaint from citizens of the heavy-handed and sometimes criminal tactics of the constables," Am. Compl. ¶ 31. But there is no mention of intentional race discrimination in these allegations. *See McClure v. City of Harrisburg*, No. 1:14-CV-0958, 2014 U.S. Dist. LEXIS 137085, at *17-18 (M.D. Pa. Sept. 29, 2014) (dismissing an equal protection claim because the plaintiff's only example of disparate treatment involved an individual who was not sufficiently similar to him). Accordingly, McCullers's Fourteenth Amendment equal protection claim is dismissed without prejudice.[4]

**2.      *McCullers has sufficiently pled Monell liability for the Fourth Amendment violation based on his allegations that the City of Allentown employed the constables despite knowing of their violent tendencies, but has failed to support a Monell claim under the Fourteenth Amendment.***

---

[4]      Although the Amended Complaint was filed after a Motion to Dismiss, the equal protection theory was not addressed therein. Thus, the Court cannot conclude that another amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend should be granted "unless amendment would be inequitable or futile").

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690.

Failing to train municipal employees can be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 388, 390. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate

indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (creating a four-part test for supervisory liability).

McCullers alleges that the City had actual knowledge of, and acquiesced in, the conduct of Altemos, Bernardi, and the John Does on July 17, 2014, and that the actions of these individual Defendants were the direct and proximate result of the policies and procedures of the City and its failure to train and supervise the constables. Am. Compl. ¶¶ 54, 70-71, 86-87.

The City asserts that McCullers's *Monell* claims against it fail because it does not have the authority to train, supervise, or discipline Pennsylvania constables and also that liability under 42 U.S.C. § 1983 cannot be based on a theory of respondeat superior. *See* City's Mem. Supp. Mot. Dismiss 5-6; Reply 2-3. The City asserts that a constable is not an employee of the state, county, or city in which he works, but rather is an elected official and an independent contractor. City's Mem. Supp. Mot. Dismiss. Further, the City points out that the incident occurred in Whitehall Township, where the City alleges it lacked sufficient control over the individual Defendants to render it liable. *Id.*

McCullers contends that his allegations that the individual Defendants were acting under the direction, training, custom, and policy of the City must be taken as true and that he is entitled to obtain discovery on his claims against the City. Pl.'s Mem. Opp'n 5-7.

"Under Pennsylvania Law, constables are considered to be independent contractors." *Swinehart v. McAndrews*, 69 F. App'x 60, 62 (3d Cir. 2003) (citing *In re Act 147 of 1990*, 598

A.2d 985, 986 (Pa. 1991); *Commonwealth v. Roose*, 690 A.2d 268, 269 (Pa. Super. Ct. 1997)

("No one supervises constables in the way a police chief supervises police officers or a sheriff

supervises deputies. No municipality is responsible for their actions in the way a city, borough,

or township is responsible for its police or a county is responsible for its sheriff's office.")).  A

constable "is not an employee of the Commonwealth, the judiciary, the township or the county in

which he works."  *Maloney v. City of Reading*, No. 04-5318, 2006 U.S. Dist. LEXIS 4759, at

*22 (E.D. Pa. Feb. 8, 2006) (quoting *In re Act 147 of 1990*, 598 A.2d at 986), *aff'd* 201 F. App'x

853, 855 (3d Cir. 2006); *see also Mitchell v. Flaherty*, No. 2:11-cv-610, 2012 U.S. Dist. LEXIS

10857, at *15 (W.D. Pa. Jan. 30, 2012).  "Generally, constables in the boroughs of Pennsylvania

are elected for a term of six years."  *Mitchell*, 2012 U.S. Dist. LEXIS 10857 at *15 (citing 44 Pa.

Cons. Stat. Ann. §§7111, 7113(a)).  "The training of constables is the responsibility of the state

Constables' Education and Training Board."  *Villanova v. Solow*, No. 97-6684, 1998 U.S. Dist.

LEXIS 14686, at *6 (E.D. Pa. Sept. 18, 1998).  Therefore, "[i]t is difficult to conclude that a

municipality can make a deliberate or conscious 'choice' not to train someone whose training has

been entrusted by state law to others or not to supervise someone for whom the municipality has

been held not to be responsible."  *Id.* (citing 42 Pa. Cons. Stat. Ann. § 2943).

   "Nevertheless, a municipality arguably may be liable if a municipal official with the

authority to do so engages to perform law enforcement functions a constable who is known to

violate the rights of citizens he encounters in performing such functions."  *Villanova*, 1998 U.S.

Dist. LEXIS 14686 at *6-7 (citing *Talley v. Trautman*, No. 96-5190, 1997 U.S. Dist. LEXIS

3279 (E.D. Pa. Mar. 12, 1997)).  In *Talley*, the Court denied a borough's motion to dismiss

claims against it based on the alleged use of excessive force by a state constable because the

plaintiff alleged that the borough, although having no duty to supervise or train state constables,

chose to use a constable to enforce its laws, knowing that the constable had previously violated the constitutional rights of citizens.  *See Talley*, 1997 U.S. Dist. LEXIS 3279 at \*9-12.  *Cf. Kenney v. City of Pittsburgh*, No. 2:14-cv-00879, 2015 U.S. Dist. LEXIS 77685, at \*28-29 (W.D. Pa. June 16, 2015) (granting summary judgment to a municipality because the plaintiff failed to produce evidence to suggest any pattern or practice of constables violating rights of citizens within the city while serving warrants), *appeal docketed*, No. 66-2738 (3d Cir. July 23, 2015).

In conclusory fashion, McCullers alleges that Defendants have been deliberately indifferent to numerous "patterns, practices and customs, for which the [July 17, 2014] incident was knowingly foreseeable."  Am. Compl. ¶ 87.  Among the list of policies and customs he alleges "reasonably, foreseeably, knowingly, and causally resulted in the offenses to McCullers and his injuries," are "[p]ermitting constables to use deadly force," "[p]ermitting constables to make arrests while on a persons property," "[s]erving warrants at residences," and [i]nadequate and under training and supervision."  *Id.* ¶¶ 87-88.  The problem with some of these allegations is obvious: they are overly broad and include activities that cannot fairly be attributable to McCullers's alleged constitutional violations.  For example, simply allowing a constable to serve an arrest warrant at a person's residence cannot be said to have inflicted the injury here.  The other problem is that the allegations are too conclusory to support McCullers's *Monell* claim, and there is little to suggest, for example, that the City actually permitted constables to use deadly force.  Further, the Court's "liberal notice pleading standard will not be satisfied by a mere allegation that a training program represents a policy for which a municipality is responsible, but rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform."  *Torres*, 2008 U.S. Dist. LEXIS 50522, at \*12-13 (finding that the

plaintiff, who alleged "that Allentown did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct. . ." did not support her claim of municipal liability because there were no specific factual allegations referencing the conduct, time, place, and persons responsible, nor a specific demonstration of how the training programs were inadequate).  McCullers's reference to the study by the Joint State Government Commission, which focused on Pennsylvania's constable system as a whole, without discussion of the constables working in the City of Allentown, is also insufficient to show the City's alleged deliberate indifference and/or that its policies and customs caused the specific injury alleged in this case.

However, McCullers has alleged facts that tend to show that Altemos and Bernardi may have had violent tendencies, as evidenced from Protection From Abuse orders allegedly entered against Altemos and domestic assault charges allegedly brought against Bernardi.  *See* Am. Compl. ¶¶ 40-48.  These specific factual allegations combined with McCullers's allegations that the City was aware of this prior behavior but allowed these individual Defendants to perform constable duties on its behalf and to carry firearms unsupervised and untrained, is sufficient at this stage of the proceedings to state a *Monell* claim under the Fourth Amendment.

Additionally, for the reasons previously discussed, there are insufficient factual allegations to support a Fourteenth Amendment equal protection claim.  There are also no specific factual allegations that would establish *Monell* liability for the City under the Fourteenth Amendment.  Despite McCullers's allegation that the City knew of the prior incident with the individual Defendants and his girlfriend, there are insufficient factual allegations showing that this incident was motivated by race.  Further, there are no specific factual allegations that Altemos and Bernardi discriminated against other persons while performing constable duties, or

14

that the City was aware of any such conduct when it decided to allow them to perform constable duties on its behalf.  McCullers is therefore advised that if he files a second amended complaint with additional specific allegations to support a Fourteenth Amendment equal protection claim, he must also assert additional factual allegations to support his theory of *Monell* liability on this claim.

### B.      McCullers has failed to state a claim against Lehigh County.

Lehigh County asserts that McCullers has not set forth a cognizable *Monell* claim under § 1983 because Altemos and Bernardi were not County employees.  Cty. Mot. Dismiss 4-7, ECF No. 30 (citing *Kenney*, 2015 U.S. Dist. LEXIS 77685 at *28).

McCullers concedes that he has not asserted a claim under the First Amendment, and his claims under the Due Process Clause of the Fourteenth Amendment are duplicative of his more specific claims under the Fourth Amendment.  Therefore, McCullers's claims against Lehigh County under the First Amendment and the Fourteenth Amendment's Due Process Clause are dismissed with prejudice.  For the reasons discussed in addressing the City's Motion, McCullers has failed to plead specific facts against Lehigh County to support an equal protection claim under the Fourteenth Amendment, and that claim is dismissed without prejudice.  His claim under the Fourth Amendment, however, is viable, and Lehigh County's Motion to Dismiss is denied in this respect.

### C.      McCullers has made sufficient factual allegations against Bernardi to support his Fourth Amendment and assault and battery claims, and to overcome Bernardi's qualified immunity defense.

McCullers claims that Bernardi violated his rights under the First, Fourth, and Fourteenth Amendments, and committed assault and battery under Pennsylvania law.  Am. Compl. ¶¶ 84-113.

Bernardi argues that the Amended Complaint does not state a claim under the First or Fourteenth Amendments,[5] and fails to establish the unreasonableness of his actions or that McCullers suffered a seizure under the Fourth Amendment. *See* Bernardi Mot. Dismiss ¶¶ 12, 28-34, ECF No. 41. Additionally, Bernardi asserts that he is entitled to qualified immunity because it was reasonable to shoot at McCullers's tire to effectuate the stop. *Id.* ¶¶ 13, 38. He submits that once the constitutional claims are dismissed, McCullers's supplemental state law claim for assault and battery should also be dismissed and, regardless, that McCullers has failed to state a claim for assault and battery. *Id.* ¶ 14. Further, Bernardi asserts that if all the claims against him are not dismissed, certain paragraphs of the Amended Complaint are immaterial, impertinent, and scandalous and should be stricken. *Id.* ¶ 16.

### 1. *McCullers was seized under the Fourth Amendment because the constables' actions prevented him from being able to move freely.*

Bernardi's argument that there was no Fourth Amendment seizure is incorrect. A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Ashton v. City of Uniontown*, 459 Fed. App'x 185, 189 (3d Cir. 2012) (stating that a "seizure occurs whenever a government actor terminates an individual's ability to move freely."). Here, the constables intended to stop McCullers by firing at him. Accordingly, because McCullers was paralyzed from Altemos's bullet, *see* Am. Compl. ¶ 77, he was seized under the Fourth Amendment. *See Brower*, 489 U.S. at 598-99 (holding that it is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result"); *Williams v.*

---

[5]     For the reasons discussed above, McCullers's claims under the First Amendment and the Due Process Clause of the Fourteenth Amendments are dismissed with prejudice. The equal protection claim pursuant to the Fourteenth Amendment is dismissed without prejudice.

*City of Scranton*, 566 Fed. App'x 129, 132 (3d Cir. 2014) ("It is undisputed that Williams was seized when she was shot.").

>    **2.    *Bernardi's decision to shoot McCullers's tire was unreasonable because McCullers was not armed or violent, and presented no danger to others.***

Whether the force used to effect a seizure was reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

Bernardi's assertion that "it is certainly reasonable to shoot a tire when a person is fleeing," *see* Bernardi Mem. Supp. Mot. Dismiss 11, ECF No. 41-1, is unpersuasive. *See Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) (explaining that a jury could find that it was unreasonable for the defendant, an off-duty officer working as mall security, to believe that she was in danger of being struck by the plaintiff's vehicle as the plaintiff fled after stealing clothes and that it was therefore unreasonable to shoot at the vehicle). Berardi's reliance on *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014), is misplaced because in that case, unlike the instant action, the officer only fired a shot at the plaintiff's car after a high-speed police chase that lasted over five minutes. *See Plumhoff*, 134 S. Ct. at 2021-22. During the chase, the plaintiff passed more than two dozen other vehicles, several of which were forced to alter course, and collided with a police car. *Id.* The collision did not stop the plaintiff's attempts to escape, and he resumed

maneuvering his car in an attempt to flee once again.  *Id.*  The Court determined that at the time

of the shooting, the officer could have reasonably concluded that if the plaintiff resumed his

escape he would once again pose a deadly threat to others on the road and therefore acted

reasonably in firing the shot.  *Id.*

Accepting McCullers's allegations as true, which the Court must at this stage of the

proceedings, there is no evidence that McCullers would have posed a danger to others had he

escaped.  The purpose of the encounter on July 17, 2014, was to serve a warrant on him for

unpaid parking/traffic tickets, which certainly is not a violent crime.  There is nothing to suggest

that McCullers was armed or dangerous, or that he posed an immediate threat to the safety of any

person.[6]  Accordingly, McCullers has alleged sufficient facts to show that Bernardi's actions

were unreasonable under the Fourth Amendment.

### 3.    *Bernardi is not entitled to qualified immunity.*

"The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A court must consider

whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged

show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201

(2001), *overruled on other grounds* by Pearson*, 555 U.S. 223*.  "The relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable

---

[6]     There is also no evidence in the record at this time to suggest that McCullers may have
run his vehicle over any of the constables when driving out of his garage.  *Cf. Roberts v. Niebel*,
2015 U.S. Dist. LEXIS 989, at *27-31 (E.D. Pa. Jan. 6, 2015) (deciding, at summary judgment,
that the decision of four officers to fire shots at the plaintiff's vehicle as it was driving directly at
them was reasonable because an officer was "in danger of being struck or killed" and, also that
the plaintiff's flight "posed a grave public safety risk" because he was highly intoxicated and had
earlier led police on a high speed chase reaching speeds of approximately ninety miles per hour).

officer that his conduct was unlawful in the situation he confronted." *Id.* To be clearly

established, "existing precedent must have placed the statutory or constitutional question beyond

debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). "[A] defendant cannot be said to

have violated a clearly established right unless the right's contours were sufficiently definite that

any reasonable official in the defendant's shoes would have understood that he was violating it."

*Plumhoff*, 134 S. Ct. at 2023.

The unconstitutionality of shooting a fleeing driver to protect those whom his flight

might endanger is not clearly established. *Mullenix v. Luna*, 136 S. Ct. 305, 311 (2015) ("Cases

decided by the lower courts since *Brosseau* likewise have not clearly established that deadly

force is inappropriate in response to conduct like Leija's [which posed grave danger to others]."

(discussing *Plumhoff*, 134 S. Ct. 2012; *Brosseau v. Haugen*, 543 U.S. 194 (2004))). However,

the unconstitutionality of shooting a fleeing driver when there is no need to protect others may be

clearly established. *See id.* Nevertheless, a reasonable constable would know that Bernardi's

actions violated this right under the facts alleged by McCullers.[7] *See Green v. N.J. State Police*,

246 Fed. App'x 158, 162-63 (3d Cir. 2007) (holding that when an officer applies the factors set

forth in *Graham* and *Sharrar* in an unreasonable manner, he is not entitled to qualified

immunity). Under either scenario, Bernardi is not entitled to qualified immunity.

### 4.  *McCullers has stated a claim for assault and battery.*

Having determined that McCullers's constitutional claims will proceed to discovery,[8] the

Court has supplemental jurisdiction over McCullers's state law claim of assault and battery. *See*

28 U.S.C. § 1367. Further, "[t]he reasonableness of the force used in making the arrest

---

[7] *See* Am. Compl. ¶¶ 61, 66 (asserting that the constables, including Bernardi, "were never
met or threatened with deadly force," but fired upon McCullers with the intent to kill).

[8] *See also Maloney v. City of Reading*, No. 04-5318, 2006 U.S. Dist. LEXIS 4759, at *22
(E.D. Pa. Feb. 8, 2006) ("Pennsylvania law does not extend immunity to constables.").

determines whether the police officer's conduct constitutes an assault and battery." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  Because McCullers has stated a plausible claim under the Fourth Amendment, he has also stated a claim for assault and battery.  *See Hall v. Raech*, 677 F. Supp. 2d 784, 804 (E.D. Pa. 2010) (denying summary judgment on the assault and battery claim because there were factual disputes as to whether the amount of force used was reasonable as a matter of law); *Ford*, 2014 U.S. Dist. LEXIS 176829 at *9.

> **5.      *Bernardi's request to strike certain paragraphs from the Amended Complaint is denied without prejudice because he has been given leave to file a second amended complaint.***

Bernardi argues that the Amended Complaint contains numerous bald accusations against his moral character that have nothing to do with the claims against him.  *See* Bernardi Memo. Supp. Mot. Dismiss 17 (seeking to strike paragraphs 13-16, 31-33, 40-49, 68, 73-74, 87m, 87n, 90, 96-97).  Many of these challenged paragraphs are no longer relevant because they relate to McCullers's equal protection claim, which has been dismissed.  However, because McCullers has been given leave to amend, Bernardi may renew his motion to strike, if necessary.

> **D.      The Motion to Dismiss filed by the Commonwealth of Pennsylvania and Contino is denied in part and granted in part.**

McCullers claims that Contino violated his rights under the First, Fourth, and Fourteenth Amendments, Am. Compl. ¶¶ 84-105, and that the Commonwealth of Pennsylvania violated his rights under the Pennsylvania Constitution,[9] *id.* ¶¶ 124-141.  These Defendants have filed a Motion to Dismiss.  Mot. Dismiss, ECF No. 50.

> **1.      *McCullers lacks standing to assert an indemnification claim on behalf of a defendant, and the Commonwealth of Pennsylvania is immune from suit.***

The Commonwealth of Pennsylvania suggests that McCullers's indemnity claim should

---

[9]      Count Four of the Amended Complaint also refers generally to violations of "Plaintiff's Constitutional Rights to be free from unwarranted search and seizure, arrests, due process, excessive force, and similar Constitutional Rights."  *See, e.g.* Am. Compl. ¶ 133.

be dismissed because he lacks standing to raise the claim.  Com.'s Mem. Supp. Mot. Dismiss 10-12, ECF No. 50 (suggesting that indemnity is asserted by a defendant, not a plaintiff).  The Commonwealth also argues that this Court lacks subject matter jurisdiction over all claims against it, including indemnity, pursuant to its Eleventh Amendment immunity and sovereign immunity under the Pennsylvania Constitution.  *Id.* at 4, 8-9; Com.'s Reply Mot. Dismiss 1, ECF No. 65.  It further contends that McCullers's claims are improperly based on respondeat superior.  Com.'s Mem. Supp. Mot. Dismiss 6-7.

Without mentioning the question of the Commonwealth's immunity, McCullers responds that he may proceed against the Commonwealth under a theory of indemnification based on 42 Pa. Cons. Stat. § 8525.  Pl.'s Mem. Opp'n 7-8, ECF No. 64.  Additionally, McCullers contends that the Commonwealth authorizes constables to assimilate police powers without supervision and that each incident involving a Pennsylvania constable acting in the color of uniform should be considered a violation of the Pennsylvania Constitution.  *Id.* at 8.

The statute McCullers's cites to support his indemnification claim provides:

> When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

42 Pa. Cons. Stat. § 8548.  However, McCullers lacks standing to raise indemnification on behalf of a defendant.  *See Fath v. Borough of Coraopolis*, No. 08-1216, 2010 U.S. Dist. LEXIS 43104, at *31 (W.D. Pa. May 3, 2010) (concluding that the plaintiff lacked standing to raise a claim for indemnification under 42 Pa. Cons. Stat. § 8548 on behalf of the offending officer against the borough, who employed the officer).  His indemnification claim is therefore dismissed.

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). "There are two limited circumstances under which a state's Eleventh Amendment immunity can be overcome": when the state has waived its immunity and when Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. *Allen v. Sweeney*, No. 11-5602, 2012 U.S. Dist. LEXIS 166732, at *21-22 (E.D. Pa. Nov. 20, 2012) (dismissing all § 1983 claims against the Commonwealth). Neither exception applies here. *See id.* Moreover, the Commonwealth of Pennsylvania is not a "person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

"Under the doctrine of sovereign immunity, the Commonwealth and its officials and employees, acting within the scope of their duties, are immune from suit unless the immunity is specifically waived by the General Assembly." *Gallagher v. Green*, No. 12-3840, 2014 U.S. Dist. LEXIS 140740, at *16-17 (E.D. Pa. Oct. 2, 2014) (citing 1 Pa. Con. Stat. § 2310). *See also Green v. United States*, 418 Fed. App'x 63, 66 (3d Cir. 2011) (concluding that sovereign immunity bars suit against the Commonwealth). While the "General Assembly has waived sovereign immunity in nine categories of actions," "[i]ntentional torts and civil rights actions are not within the narrow exceptions set forth by the statute." *Id.* Furthermore, McCullers's indemnity theory does not revive his claim against the Commonwealth. *See Durham v. United States*, 9 F. Supp. 2d 503, 506-07 (M.D. Pa. 1998) (dismissing the Commonwealth as immune regardless of its decision to indemnify individual defendants).

Accordingly, the Commonwealth of Pennsylvania and the indemnity claim are dismissed with prejudice.

**2.**      ***The claims against Contino in his official capacity claims are dismissed with prejudice, but without prejudice in his individual capacity.***

Contino asserts that while Count One includes a damages claim against him in his official capacity, he is not a "person" amenable to suit under § 1983.  Com.'s Mem. Supp. Mot. Dismiss 6 (discussing 37 Pa. Code § 431, *et seq.*).  He also argues that he has limited authority under the statutory provisions creating the Constables' Education and Training Board.  More specifically, he contends that he does not have the power to remove an elected constable and has no discretion to deny certification for a constable that passes basic training.  *Id.* at 13-16.  Even if he is a proper defendant to McCullers's claims, Contino asserts that there is insufficient evidence to impose *Monell* liability on him.  *Id.* at 17.  Finally, Contino argues that qualified immunity bars any claims for damages against him.  *Id.* at 18-19.

In response, McCullers submits that as chairman of the Constables Education and Training Committee, which he alleges undisputedly trains and certifies Pennsylvania constables, Contino is directly involved with setting firearm qualification standards, and that in light of the pattern of preexisting violations, the failure to train amounts to deliberate indifference on his part.  Pl.'s Mem. Opp'n 6.  McCullers also argues that he does not base liability on respondeat superior and that he has alleged sufficient facts to prevent a qualified immunity defense.  *Id.* at 7.

A state is not a "person" under the meaning of § 1983.  *Will*, 491 U.S. at 71.  Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Id.*  Thus, a state official acting in his official capacity is also not a person under § 1983.  *Id.*; *Ngyuen v. Pennsylvania*, No. 87-1207, 2016 U.S. Dist. LEXIS 63060, at *64 (E.D. Pa. May 12, 2016).  Moreover, the "Eleventh Amendment prohibits actions in federal court for monetary relief against state officials acting within the scope of their official capacity."  *Allen v. Sweeney*, No. 11-5602, 2012 U.S. Dist. LEXIS 166732, at *21-22

(E.D. Pa. Nov. 20, 2012) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).  "Under the doctrine

of sovereign immunity, the Commonwealth and its officials and employees, acting within the

scope of their duties, are immune from suit unless the immunity is specifically waived by the

General Assembly."  *Gallagher v. Green*, No. 12-3840, 2014 U.S. Dist. LEXIS 140740, at *16

(E.D. Pa. Oct. 2, 2014) (citing 1 Pa. Con. Stat. § 2310).  *See also* 42 Pa. Stat. Ann. § 8522(b)

(listing the nine categories of actions in which sovereign immunity has been waived).

Consequently, McCullers's federal constitutional claims against Contino in his official capacity

are dismissed with prejudice.

Nevertheless, a "supervisory official can be held liable in his individual capacity to the

same extent as a municipality when his failure to train subordinates results in a constitutional

violation."  *Jankowski v. Lellock*, No. 2:13-cv-194, 2014 U.S. Dist. LEXIS 33960, at *16 (W.D.

Pa. Mar. 17, 2014) (citing *Sample*, 885 F.2d at 1118).  There are two theories of supervisory

liability that may be applicable here: (1) "[i]ndividual defendants who are policymakers may be

liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm,'" *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d

Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989));

and (2) the supervisory defendant "participated in violating the plaintiff's rights, directed others

to violate them, or, as the person in charge, had knowledge of and acquiesced in his

subordinates' violations," *A.M.*, 372 F.3d at 586 (citing *Baker v. Monroe Township*, 50 F.3d

1186, 1190-91 (3d Cir. 1995)).

The Amended Complaint does not allege that Contino is a policymaker.  However,

McCullers argues in response to the Motion to Dismiss that Contino is directly involved with

setting firearm qualification standards and that in light of the pattern of preexisting violations, his failure to train was deliberately indifferent.  Deliberate indifference may be found where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights . . . ." *City of Canton*, 489 U.S. at 390.  Despite McCullers's allegation that Altemos and Bernardi had violent histories, there are no allegations that either Defendant previously used excessive force or otherwise committed constitutional violations in the course of their constable duties. McCullers's reference to the Joint State Government Commission is insufficient to establish a pattern of preexisting violations to make the need for more or different training in the instant action "so obvious" as to equate with deliberate indifference.  McCullers has failed to show that an existing policy, custom, or practice created an unreasonable risk of the ultimate injury, or that Contino was deliberately indifferent to such a risk.  Further, McCullers's conclusory allegations that Contino may have directed the activities of Altemos and Bernardi on July 17, 2014, is insufficient to state a claim.  The claim against Contino is therefore dismissed without prejudice to McCullers's right to amend.  *See Grayson*, 293 F.3d at 108 (holding that leave to amend should be granted "unless amendment would be inequitable or futile").

Because there are insufficient facts to state a claim against Contino, resolution of the qualified immunity defense is premature.  *See Spell v. Allegheny County Admin.*, No. 14-1403, 2015 U.S. Dist. LEXIS 36903, at *17-18 (W.D. Pa. Mar. 23, 2015) (determining that because there was no factual basis for the § 1983 claims, there was no need to address qualified immunity).  However, in the event that McCullers decides to file a second amended complaint, he must provide specific factual allegations as to Contino's involvement to enable the Court to make a determination of the qualified immunity issue, if necessary.  *See Thomas v. Indep. Twp.*,

25

463 F.3d 285, 301 (3d Cir. 2006) (holding that, "[w]hen presented with a complaint that does not lend itself to any early resolution of the qualified immunity issue, a district court has several options," which includes demanding more specific factual allegations at the pleading stage).

**E.      This civil action will be stayed until the criminal charges pending against Altemos, which arose from the incident at issue in this litigation, have been resolved.**

Criminal charges have been filed against Altemos in the Lehigh County Court of Common Pleas for his actions on July 17, 2014. *See Commonwealth v. Altemos*, CP-39-CR-0004539-2015 (Lehigh Cty. Ct. Com. Pl. filed Oct. 20, 2015). Altemos faces charges of aggravated assault and recklessly endangering another person. *Id.* According to the docket, his trial is scheduled for October 25, 2016. *Id.*

Altemos has moved to stay these civil proceedings pending the completion of his criminal trial. ECF No. 31. McCullers objects to the stay, arguing that he would be prejudiced because Altemos is likely to dissipate assets that would otherwise go toward any future monetary award. ECF No. 48. No other Defendant has filed an opposition to the request for a stay.

To determine whether to stay a civil action pending the resolution of a related criminal case, the court should consider:

> (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest.

*In re Adelphia Commc'ns. Secs. Litig.*, No. 02-1781, 2003 U.S. Dist. LEXIS 9736, at *7 (E.D. Pa. May 13, 2003).

Here, there is significant overlap between the cases as the focus of each surrounds Altemos' decision to fire at McCullers on July 17, 2014. Altemos has been indicted and is scheduled for trial later this year. Accordingly, the burden on Altemos if this civil matter is not

stayed is great, as he would be forced to choose between waiving his Fifth Amendment rights and defending this civil action, or asserting the privilege possibly to the detriment of this civil case. *See Medical Inv. Co. v. Int'l Portfolio, Inc.*, No. 12-3569, 2014 U.S. Dist. LEXIS 74613, at *6 (E.D. Pa. May 30, 2014) ("'The strongest case for a stay . . . in [a] civil case occurs during a criminal prosecution after an indictment is returned.'" (quoting *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998)). Despite McCullers's arguments, any prejudice by a delay is minimal and militates in favor of a stay. *See In re Adelphia*, 2003 U.S. Dist. LEXIS 9736, at *12-13 (finding that the plaintiffs, who could not point to any evidence that the defendants were intentionally liquidating assets or otherwise trying to gain an advantage during the delay, failed to demonstrate sufficient prejudice to warrant reconsideration of the stay). While the court has an interest in the speedy resolution of cases, staying the civil action will avoid unnecessary litigation regarding privilege issues. *See id.* at *15-16 (commenting that criminal convictions will likely encourage civil settlements thereby eliminating the need to litigate some issues). Further, while it is not unconstitutional to force a civil defendant to choose whether to assert his Fifth Amendment privileges, "the strong potential for an unjust result outweighs the efficiencies gained by allowing the case to proceed." *See Walsh*, 7 F. Supp. 2d at 529. Additionally, there is no harm to the public interest if this matter is stayed. *See id.* (determining that the public interest weighed in favor of a stay because a the government would be able to conduct a complete, unimpeded investigation into potential criminal activity). Therefore, Altemos's request for a stay is granted. *See Aluminium Bahr. B.S.C. v. Dahdaleh*, No. 8-299, 2012 U.S. Dist. LEXIS 153456, at *5-6 (W.D. Pa. Oct. 25, 2012) (staying the civil action pending resolution of the defendant's criminal charges, despite the continued risk of asset

dissipation and the increased difficulties in discovery, to ensure that the information used to support a criminal defense would not be preliminarily subject to civil discovery).

## V.      CONCLUSION

In light of McCullers's concession that he does not possess a claim under the First Amendment, those claims are dismissed with prejudice as to all Defendants.  McCullers's Fourteenth Amendment claims for violation of his due process rights are dismissed with prejudice, but dismissed without prejudice under the theory of an equal protection violation. Under the limited theories discussed herein, the Fourth Amendment claims may proceed against all moving Defendants.  However, the Commonwealth of Pennsylvania is dismissed with prejudice as immune from suit.  The indemnity claim is also dismissed with prejudice because McCullers lacks standing to raise indemnification on behalf of a defendant.  McCullers's claims against Contino are dismissed.  The claims against Contino in his official capacity are dismissed with prejudice and are dismissed without prejudice in his individual capacity.  Contino's qualified immunity defense is denied without prejudice as moot.  Bernardi's motion for qualified immunity and to dismiss the assault and battery claim is denied.  Bernardi's request to strike is denied without prejudice.  Finally, Altemos's request to stay the civil proceedings pending resolution of his state criminal proceedings is granted.

A separate order will be issued.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge

28