UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KEVIN MCCULLERS,                         :
                          Plaintiff,     :
                                         :
              v.                         :        No. 5:15-cv-3732
                                         :
LEHIGH COUNTY,                           :
CITY OF ALLENTOWN,                       :
HOWARD W. ALTEMOS, JR.,[1]               :
CARLOS ROBERTO BERNARDI,                 :
FRED J. CONTINO, and                     :
JOHN DOES, 1 THROUGH 10,                 :
                          Defendants.    :

_____

**O P I N I O N**
**Defendant Contino's Motion to Dismiss, ECF No. 82 - Granted**
**Defendant Altemos's Motion to Dismiss, ECF No. 83 – Granted in Part and Denied in Part**
**Defendant Bernardi's Motion to Dismiss, ECF No. 84 - Withdrawn**
**Defendant Contino's Supplemental Motion to Dismiss, ECF No. 86 - Granted**
**Defendant Contino's Motion to Dismiss Lehigh County's Crossclaims, ECF No. 91 - Granted**


**Joseph F. Leeson, Jr.**                                    **July 11, 2018**
**United States District Judge**


**I.      INTRODUCTION**

        This case[2] arises from an incident on July 17, 2014, when constable-Defendants Howard

W. Altemos, Jr. and Carlos Roberto Bernardi allegedly went to the residence of Plaintiff Kevin

McCullers to serve a warrant for unpaid parking/traffic tickets and shot at McCullers when he

drove his vehicle out of his garage, resulting in serious and permanent injuries.  The matter is

---

[1]     Although Defendant Altemos filed a bankruptcy petition on February 8, 2018, the United
States Bankruptcy Court for the Eastern District of Pennsylvania issued an Order on June 25,
2018, lifting the automatic stay for purposes of this litigation.  *See In re: Howard William
Altemose, Jr.*, No. 18-10886, at ECF No. 36 (E.D. Pa. Bank. Ct.).
[2]     The Commonwealth of Pennsylvania was dismissed as a party on June 30, 2016.  *See*
ECF Nos. 70-71.

now before the Court on a Second Amended Complaint, which Defendants Altemos and Fred J. Contino, chairman of the Constables' Education and Training Board ("the Board"), have moved to dismiss.[3]  Contino has also moved to dismiss Lehigh County's crossclaim against him.  For the reasons set forth below, the Motions to Dismiss are granted in part and denied in part as follows.  The equal protection/race discrimination claim against Altemos is dismissed.  The request to strike certain paragraphs from the Second Amended Complaint is granted in limited part and denied in part as explained herein.  The Motion to Dismiss by Altemos is otherwise denied.  The Motions to Dismiss the Second Amended Complaint by Contino are granted in their entirety and all claims against Contino are dismissed.  Contino's Motion to Dismiss Lehigh County's crossclaim against him is also granted.

## II.    BACKGROUND

On July 6, 2015, McCullers initiated this civil rights action pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and state tort claims.  Compl., ECF No. 1.  He filed a First Amended Complaint a few months later.  Am. Compl., ECF No. 26.  Defendants Bernardi, Contino, Lehigh County, and City of Allentown ("City"), as well as then-Defendant Commonwealth of Pennsylvania, moved to dismiss the First Amended Complaint.  Altemos filed a Motion to Stay the proceedings pending the outcome of the criminal case filed against him arising from the shooting incident on July 17, 2014.

In an Opinion dated June 30, 2016, this Court dismissed with prejudice all claims under the First Amendment as to all Defendants.  Opn., ECF No. 70.  It also dismissed with prejudice McCullers's Fourteenth Amendment claims for violation of his due process rights, the indemnity claim, the Commonwealth of Pennsylvania as immune, and the claims against Contino in his

---

[3]     Bernardi also filed a Motion to Dismiss, but withdrew the motion on July 9, 2018.  *See* ECF No. 106.

official capacity.  The Court dismissed without prejudice the claims against Contino in his

individual capacity, McCullers's equal protection claims, and, under limited theories, the Fourth

Amendment claims.  Contino's qualified immunity defense was denied without prejudice as

moot, but Bernardi's motion for qualified immunity and to dismiss the assault and battery claim

was denied.  Bernardi's request to strike was denied without prejudice.  Finally, Altemos's

request to stay the civil proceedings pending resolution of his state criminal proceedings was

granted.

The stay was lifted on November 15, 2017, and McCullers filed a Second Amended

Complaint on December 1, 2017.  Sec. Am. Compl., ECF No. 79.  McCullers asserts two counts:

(1) federal civil rights violations under 42 U.S.C. § 1983 for excessive force, unconstitutional

taking, and race discrimination as to all Defendants; and (2) state tort of assault and battery as to

Altemos, Bernardi, and the John Doe Defendants.  *Id.* ¶¶ 75-107.  Bernardi, Lehigh County, and

the City filed Answers, with affirmative defenses, to the Second Amended Complaint.  ECF Nos.

80-81, 105.  Lehigh County's Answer includes a crossclaim for contribution and/or

indemnification against Defendants Altemos, Bernardi, and Contino.  LC Answer, ECF No. 81.

Defendants Altemos and Contino have moved to dismiss all or part of McCullers's claims.  ECF

Nos. 82-84, 86.  Contino has also moved to dismiss Lehigh County's crossclaim.  ECF No. 91.

In Altemos's Motion to Dismiss, he argues that McCullers's Fourteenth Amendment

claim under the Equal Protection Clause for race discrimination fails to state a claim because the

Second Amended Complaint includes only vague and conclusory allegations, unsupported by

facts, that Altemos was intolerant of African Americans.  A. Mem. 4, ECF No. 83.  Altemos

asserts that McCullers also fails to allege sufficient facts showing that his actions were the

product of racial animus.  *Id.*  Next, Altemos suggests that the Second Amended Complaint is

replete with character attacks that have no bearing to any viable claim. *Id.* 6-8. He contends that paragraphs 11-14, 27, 34-36, 39-42, and 65-66 should be stricken. *Id.*

Contino has filed three Motions to Dismiss. In the first motion, he suggests that the Second Amended Complaint contains essentially the same allegations as the First Amended Complaint, simply renumbered. C. Mem. 3,[4] ECF No. 82. He contends that McCullers makes no factual allegations that Contino's actions or inactions were on the basis of race discrimination. *Id.* 6. Contino also argues that there are no allegations that either Altemos or Bernardi did not receive the required training to make them eligible for certification by the Board, or that, in light of Contino's limited authority, there were grounds to allow him to revoke their firearms certification. *Id.* 8, 10-11. In addition to Contino's alleged lack of authority as Board chairman, Contino argues that McCullers cannot show that his actions alone could have created a controlling majority of the seven-member Board[5] required for Board action. *Id.* 12 (citing *Armenti v. Tomalis*, No. 1:12-cv-2039, 2016 U.S. Dist. LEXIS 151985, at *15 (M.D. Pa. Nov. 2, 2016) (explaining the "precedential legal holding that an individual defendant cannot be held liable where less than a majority of the board acted for impermissible reasons")). Contino argues that while McCullers alleges that Contino is a policymaker based on his position as chairman of the Board, McCullers does not identify any policy, practice, or custom that Contino could have changed. *Id.* 13. He further contends that McCullers fails to show a pattern of preexisting violations to show deliberate indifference. *Id.* Contino asserts that McCullers fails to offer any facts to support the conclusory allegation that Contino directed others to violate McCullers's constitutional rights or had knowledge of and acquiesced in the actions of Altemos or Bernardi.

---

[4] Counsel did not number the pages of the Motion or Memorandum. Accordingly, this Court has used the page numbers electronically assigned to the documents through the Case Management Filing System.

[5] 44 Pa.C.S. § 7143(b) (outlining the seven-person composition of the Board).

*Id.* 14.  Finally, Contino asserts that the federal claims for damages are barred by qualified immunity because Pennsylvania law does not give him the authority to take the action McCullers complains he failed to take, and that if this Court interprets the law differently, then it is not clearly established.  *Id.* 14-16.

In a Supplemental Motion to Dismiss, Contino moves to dismiss the unconstitutional taking claim, an argument not advanced in his original Motion to Dismiss.  C. Supp. Mem., ECF No. 86.  He submits three arguments.  First, the claim does not apply to Contino.  *Id.*  Second, this Court did not give McCullers leave to amend to assert such a claim.  *Id.*  Third, McCullers's allegations are insufficient to show any unconstitutional taking.  *Id.*

Finally, Contino has moved to dismiss Lehigh County's crossclaim against him.  CC. Mem., ECF No. 91.  Contino asserts that the crossclaim can only relate to Count I and, regardless, in light of the pending Motions to Dismiss the Second Amended Complaint, the crossclaim is premature.  CC Mem. 3.  Contino also argues that the crossclaim does not distinguish between the types of damages, and that indemnification and contribution do not apply to punitive damages.   CC Mem. 4.

III.    FACTUAL ALLEGATIONS

The Second Amended Complaint alleges as follows: Altemos, Bernardi, and/or the John Doe Defendants[6] were employed as Pennsylvania State Constables and performed constable duties on behalf of Lehigh County and/or the City.  Sec. Am. Compl. ¶¶ 28-29.  They were

---

[6]      The John Doe Defendants are identified in the Second Amended Complaint as individuals, with the same business address as Altemos and Bernardi, who "supervised, trained and/or were otherwise responsible for properly training and/or supervising and/or monitoring Defendants, Altemos and Bernardi."  Sec. Am. Compl. ¶ 7.

appointed, trained, certified, and removed by Defendants.[7] *Id.* ¶ 30. They were supervised and reviewed by Contino as chairman of the Board, Lehigh County, and/or the City. *Id.* ¶¶ 6, 31. The Board trains constables and establishes standards for certification of constables and qualification to carry and use firearms in the performance of their duties. *Id.* ¶ 19 (citing 44 Pa.C.S. § 7148).

On July 17, 2014, Altemos, Bernardi, and/or the John Doe Defendants went to McCullers's residence to serve a warrant for unpaid parking/traffic tickets. *Id.* ¶ 43. McCullers concludes[8] that they went on behalf of, at the direction of, and/or with the actual knowledge and acquiescence of Contino, Lehigh County, and/or the City. *Id.* ¶ 47. Altemos, Bernardi, and/or the John Doe Defendants were in plain clothes and armed. *Id.* ¶ 44. They did not knock on McCullers's door or identify themselves. *Id.* ¶¶ 46, 49.

While the constables were on his property, McCullers, who is African American, was leaving his residence to go to Dunkin Donuts and drove his vehicle out from his garage. *Id.* ¶¶ 48, 61. As McCullers's was backing out, Altemos, Bernardi, and/or the John Doe Defendants shot at McCullers. *Id.* ¶¶ 52, 55. McCullers was unarmed and did nothing to provoke the shooting. *Id.* ¶¶ 51, 56-57. Bernardi and/or the John Doe Defendants shot McCullers's tire. *Id.* ¶ 54. Altemos and/or the John Doe Defendants shot McCullers. *Id.* ¶ 53. The bullet that struck McCullers entered his left side and traveled to his neck, causing paralysis. *Id.* ¶ 68. He has had

---

[7]     Any time this Court refers simply to "Defendants" it is because McCullers did not specify in the Second Amended Complaint to which Defendants he is referring. The reasonable inference for most allegations is that "Defendants" includes only Lehigh County and the City. Whether Contino is included in "Defendants" is often unclear. For purposes of this Opinion, however, all reasonable inferences are drawn in McCullers's favor.

[8]     This Court recognizes that legal conclusions need not be accepted as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a district court evaluating a motion to dismiss need not accept legal conclusions as true), but includes these conclusions, among others, in this section of the Opinion to fully explain McCullers's allegations and claims.

numerous surgeries and remains wheelchair-bound.  *Id.* ¶¶ 68-69.  Altemos was criminally

charged for his conduct in the incident and pled *nolo contendere* to Recklessly Endangering

Another Person.  *Id.* ¶¶ 59-60.

Altemos, Bernardi, and/or the John Doe Defendants never acted to deprive similarly

situated non-African Americans of their rights.  *Id.* ¶ 62.  McCullers concludes that the actions of

Altemos, Bernardi, and/or the John Doe Defendants were motivated by discrimination as they

harbored animosity toward McCullers because he is African American.  *Id.* ¶¶ 61, 81.  McCullers

also concludes that Altemos, Bernardi, and/or the John Doe Defendants conspired against him to

deprive him of his constitutional rights and to cause him bodily harm.  *Id.* ¶ 61.  Prior to the day

in question, Altemos, Bernardi, and/or the John Doe Defendants visited McCullers's residence

and were aggressive, belligerent, and rude to his girlfriend, who is also African American,

resulting in her having to contact the township police and having them respond to end the

encounter.  *Id.* ¶ 65.  Altemos and Bernardi treated similarly situated non-African Americans

better.  *Id.* ¶ 67.

It has become custom for Pennsylvania constables to serve warrants, armed and plain-

clothed, with the authority to make arrests and use deadly force.  *Id.* ¶ 45.  McCullers concludes

that on July 17, 2014, Altemos, Bernardi, and/or the John Doe Defendants were acting at the

direction of Defendants and in furtherance of an accepted custom and/or practice.  *Id.* ¶¶ 63-64.

He also concludes that Defendants knew or reasonably should have known that the lack of hiring

policies, non-enforcement of rules, and insufficient training were resulting in excessive use of

force by constables.  *Id.* ¶¶ 26, 91-95.  There were multiple prior incidents, including in Lehigh

County, of Pennsylvania constables violating constitutional rights and using excessive force.  *Id.*

¶ 27.  In April 2014, the Commonwealth of Pennsylvania, after conducting a study, proposed reforms to the constable system.  *Id.* ¶ 24.

Count One of the Second Amended Complaint is brought against all Defendants, alleging a violation of 42 U.S.C. § 1983 for excessive force, unconstitutional taking, and race discrimination under the Fourth and Fourteenth Amendments.  Sec. Am. Compl. ¶¶ 75-99.  McCullers alleges that on July 17, 2014, Altemos, Bernardi, and/or the John Doe Defendants were acting in their individual and/or official capacities.  *Id.* ¶ 77.  They were allegedly acting either: (1) under the personal direction of Lehigh County, and/or the City, and/or Contino, or (2) with the actual knowledge and acquiescence of Lehigh County, the City, and Contino.  *Id.* ¶ 77.  Defendants allegedly knew prior to July 17, 2014, of the past history of violence and discriminatory treatment of African Americans by Altemos, Bernardi, and/or the John Doe Defendants, but failed to take remedial action.  *Id.* ¶¶ 78-79, 84-85, 90-91.  They were allegedly deliberately indifferent by permitting constables to carry firearms in the line of duty, discharge firearms unnecessarily, and make arrests with inadequate training and supervision.  *Id.* ¶ 79.  Count Two of the Second Amended Complaint asserts the state law tort of assault and battery against Altemos, Bernardi, and/or the John Doe Defendants.  *Id.* ¶¶ 100-107.

## IV.     STANDARDS OF REVIEW

### A.     Motion to Dismiss - Rule 12(b)(6)

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff

stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.       Motion to Strike - Rule 12(f)

A court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting N. *Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)). Thus, the moving party generally must demonstrate that the material "has no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* at 428-29 (quoting *River Rd. Dev. Corp. v. Carlson Corp.-Ne.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). "Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 534 (E.D. Pa. 2013) (quoting *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012)).

## V.    ANALYSIS

### A.    McCullers's equal protection/race discrimination claim is dismissed as to Altemos and Contino.

Altemos and Contino move to dismiss McCullers's Fourteenth Amendment claim under the Equal Protection Clause.  They argue that the Second Amended Complaint, like the First Amended Complaint, contains insufficient factual allegations to show that the actions of Altemos, or the actions or inactions of Contino, were the product of racial animus.  They assert that McCullers makes only vague and conclusory allegations and does not describe any similarly situated individuals who received more favorable treatment.

McCullers responds to the arguments of Altemos by referring to the vague and conclusory allegations in his Second Amended Complaint.[9]  *See* Opp. A. Mem. 4, ECF No. 88 (citing Sec. Am. Compl. ¶¶ 62, 66, 78, 81).  But, these allegations are essentially the same that were alleged in the First Amended Complaint, which this Court determined were insufficient to state an equal protection claim.  *See* Opn. 6-9 (explaining, *inter alia*, that although McCullers claimed the constables were aggressive, belligerent, and rude to his African American girlfriend on a prior visit to his residence, he "allege[d] no facts to support his various conclusory

---

[9]    McCullers does not respond to Contino's arguments to dismiss the equal protection claim.  *See* Opp. C. Mem. 5, ECF No. 87 (arguing only about Contino's position as chairman of the Board that granted firearms certifications and about whether the failure to train was obvious).  The claim may therefore be dismissed as to Contino as unopposed.  *See Dolan v. PHL Variable Ins. Co.*, No. 3:15-CV-01987, 2018 U.S. Dist. LEXIS 58852, at *24 (M.D. Pa. Apr. 6, 2018) (granting as unopposed that portion of the motion to dismiss the plaintiffs did not oppose in their opposition brief).  Regardless, for the reasons discussed in this Section of the Opinion as to Altemos, and in the absence of any allegations that the Board's training program was deficient in this respect or that Contino was deliberately indifferent, as will be discussed in greater detail below, McCullers has failed to sufficiently state an equal protection/race discrimination claim as to Contino.  *See* Joint State Government Commission report: *Constables in Pennsylvania: Proposed Statutory Reforms*, April 2014, at 18, http://jsg.legis.state.pa.us/resources/documents/ftp/publications/2014-369-Constable%20Report%206.03.14.pdf ("Report") (training constables in the area of, *inter alia*, "moral standards, ethics, individual responsibility and cultural diversity" ).

allegations that the constables acted out of racial animus"). Further, as to the allegation that Altemos did not deprive similarly situated non-African American individuals of their constitutional rights, McCullers does not include any specific facts regarding these allegedly similarly situated individuals, as is necessary. *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 238-39 (3d Cir. 2011) (concluding that the plaintiff failed to state an equal protection claim because he "simply alleged that he was treated differently from 'other similarly situated residential and commercial developers'" and that "[w]ithout more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects"). Finally, although McCullers refers to a Third Circuit case in which the Court of Appeals determined that a supervisor's use of a racial slur in front of the employee's non-African American co-workers, coupled with threats of termination, may be severe enough to create a hostile work environment, *see* Opp. C. Mem. 4 (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017)), there are no allegations here that Altemos or Contino used any racial epithets.

Consequently, McCullers's race discrimination/equal protection claim is dismissed as to Altemos and Contino.

**B.** **Allegations of racial animosity and discrimination on the part of Altemos, only, are stricken from the Second Amended Complaint.**

Altemos asserts that some of the allegations in the Second Amended Complaint are character attacks and irrelevant to any viable claim. He argues that these paragraphs should be stricken. McCullers responds that the standard for striking pleadings is strict and that Altemos does not analyze how each challenged paragraph is "scandalous," "impertinent," or "immaterial" to the litigation. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). McCullers also

contends that the allegations regarding Bernardi's alleged violent history are relevant to his claims that other Defendants were deliberately indifferent to his lack of training.

This Court agrees with McCullers that the allegations in paragraphs 27, 34-36, 39-41, and 65 may be relevant to the *Monell* claim. *See Lawson v. City of Coatesville*, No. 12-6100, 2013 U.S. Dist. LEXIS 123447, at *18 (E.D. Pa. Aug. 28, 2013) (refusing to strike allegations of police officers' racial comments because they related to the plaintiff's *Monell* claim). The motion to strike these paragraphs is therefore denied.

The motion to strike is also denied as to paragraphs 11 through 14. Although this Court finds that counsel's commentary in these paragraphs is unnecessary and does nothing to support McCullers's claims, because motions to strike are disfavored, it cannot conclude that the "allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 283 (E.D. Pa. 2009) (explaining that a motion to strike is disfavored and will usually be denied unless such a showing is made). Further, in the event the case proceeds to trial, counsel is generally entitled wide latitude in characterizing what the evidence does or does not reveal. *See Mori v. Allegheny Cnty.*, 51 F. Supp. 3d 558, 570 n.6 (W.D. Pa. 2014) (commenting that "the pleadings merely serve to alert defendants to plaintiff's plans to employ these characterizations and there does not appear to be a sound basis for striking them at this juncture"). Accordingly, the request to strike paragraphs 11-14 is denied.

Finally, the motion to strike is granted in part as to paragraphs 42 and 66. These paragraphs contain allegations that Altemos, Bernardi, and/or the John Doe Defendants harbored racial animus and discrimination, which are relevant only to the equal protection/race discrimination claim, which has now been dismissed as to Altemos. Because paragraphs 42 and

66 are no longer relevant to any claim against Altemos, they are immaterial and impertinent in this regard. *See Razak v. Uber Techs., Inc.*, No. 16-573, 2016 U.S. Dist. LEXIS 173351, at *16 (E.D. Pa. Dec. 14, 2016) (striking allegations that related to the dismissed claim because they were no longer pertinent); *Jones v. Thomas Jefferson Univ. Hos*p., No. 13-4316, 2015 U.S. Dist. LEXIS 14891, at *10 (E.D. Pa. Feb. 4, 2015) (striking all references to racial discrimination from the amended complaint after dismissing the racial discrimination claims). They are also prejudicial to Altemos. Any references to Altemos in paragraphs 42 and 66 are therefore stricken.[10]

### C. McCullers fails to state a claim against Contino for unconstitutional taking.

Contino moves to dismiss the unconstitutional taking claim.[11] He argues, first, that it does not appear that the claim applies to him, but regardless, McCullers fails to state a claim. Second, he argues that McCullers did not have permission from this Court to add this claim.[12] Counsel for McCullers fails to respond to any of these arguments. Instead, the brief in opposition to the motion makes no mention of the unconstitutional taking claim. *See* ECF No. 87.

The takings claim may therefore be dismissed against Contino as unopposed. *See Brown v. Diguglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (stating that where a party is represented by counsel and fails to respond, a motion may be granted as unopposed); *Dolan*, 2018 U.S. Dist. LEXIS 58852, at *24 (granting as unopposed that portion of the motion to dismiss the plaintiffs

---

[10]     Paragraph 66 refers to "Defendants" generally without specifying any Defendant by name, but is stricken as to Altemos.

[11]     Altemos has not moved to dismiss this claim.

[12]     *See* Fed. R. Civ. P. 15(a)(2) (providing that where a party previously amended the complaint, the party may only amend "with the opposing party's written consent or the court's leave"); Order dated November 15, 2017, ECF No. 77 (stating that "Plaintiff shall file an amended complaint consistent with the Opinion and Order dated June 30, 2016, *as to any claims or parties dismissed without prejudice*" (emphasis added)).

did not oppose in their opposition brief).  *See also* E.D. Pa. L.R. 7.1(c) (directing any party

opposing a motion to timely file a brief in opposition and providing that "[i]n the absence of

timely response, the motion may be granted as uncontested").  Moreover, after review of the

merits, this Court concludes that McCullers fails to state a takings claim.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the

Fourteenth, provides that private property shall not be taken for public use, without just

compensation."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (internal citations

omitted).  The Takings Clause does not prohibit the mere taking of private property; rather, "it

proscribes taking without just compensation."  *Id.*; *Williamson Cnty. Reg'l Planning Comm'n v.

Hamilton Bank*, 473 U.S. 172, 194-95 (1985).  "A plaintiff must first 'seek compensation

through the procedures the State has provided for doing so' before asserting a federal takings

claim."  *Chainey v. Street*, 523 F.3d 200, 222 (3d Cir. 2008) (concluding that the takings claim

was not ripe because the plaintiffs never pursued their claim in state court) (quoting *Williamson*,

473 U.S. at 194).

It is not clear from the Second Amended Complaint what the takings claim is based on.

Regardless, of the three possibilities that this Court has identified, none state a claim.  First, to

the extent McCullers may be relying on his own physical injury, the claim fails as a matter of

law.  *See Jones v. Phila. Police Dep't*, 57 F. App'x 939, 941 (3d Cir. 2003) (holding that a Fifth

Amendment takings claim cannot be predicated on personal injury because "to assert that one's

body is private property that may be taken by the United States for any governmental purpose of

any kind upon the payment of just compensation is to contend for something so far contrary to

our theory of government, the relationship of the government and citizens as to be untenable"

(internal quotations omitted)).  Second, to the extent that McCullers is relying on the presence of

the constables at his residence on July 17, 2014, to serve a warrant, the claim fails as a matter of law. *See Jones v. Phila. Police Dep't*, 57 Fed. Appx. 939, 941-42 (3d Cir. 2000) (determining that a "temporary physical invasion of private property by the government" with minimal economic impact (less than $500 in damages) did not entitle the owner to compensation); *Slusar v. Harff*, No. 2:11-cv-1311, 2013 U.S. Dist. LEXIS 56236, at *10-11 (W.D. Pa. Apr. 19, 2013) (holding that a constable's entry into a home to serve an arrest warrant is not a Fifth Amendment taking). Third, to the extent McCullers bases the takings claim on the damage caused to his tire when it was shot, the claim fails because he does not allege that he exhausted post-deprivation state remedies. *See Mantua Cmty. Planners v. City of Phila.*, No. 12-4799, 2013 U.S. Dist. LEXIS 173844, at *6-9 (E.D. Pa. Dec. 11, 2013) (dismissing the unconstitutional taking claim because the plaintiffs "failed to allege the necessary exhaustion of post-deprivation state remedies"). Moreover, there is nothing to suggest that Contino had any involvement with the shooting of the tire. There are also no allegations of any policy, practice, or procedure that caused the loss of property. For all these reasons, McCullers's unconstitutional taking claim is dismissed as to Contino.

**D. McCullers fails to state a claim against Contino as chairman of the Board.**

Contino moves to dismiss McCullers's failure-to-train and failure-to-supervise claims against him, as well as the claim that Contino should not have issued firearms certifications to Altemos, Bernardi, and the John Doe Defendants. Contino argues that although McCullers alleges Contino is a policymaker based on his position as chairman of the Board, McCullers does not identify any policy, practice, or custom that Contino could have changed. Contino contends that both Altemos and Bernardi received the required training to make them eligible for certification by the Board and, in light of Contino's limited authority, there were no grounds to

not issue certifications or to allow Contino to revoke their firearms certifications.  Additionally, Contino asserts that McCullers fails to allege a pattern of preexisting violations to show deliberate indifference, or that Contino directed others to violate McCullers's constitutional rights or had knowledge of and acquiesced in the actions of Altemos or Bernardi.

McCullers responds that he has sufficiently pled that Contino, as chairman of the Board that trains and certifies Pennsylvania constables, was directly involved and/or deliberately indifferent to the excessive use of force by Altemos, Bernardi, and/or the John Doe Defendants on July 17, 2014.  Opp. C. Mot. 5, ECF No. 87.  McCullers argues that he has pled "patently obvious violations of failing to train" and similar constitutional violations that "Defendants" knew of and disregarded, which demonstrate deliberate indifference.  *See id.*

      i.      **Contino cannot be liable for the conduct of Altemos, Bernardi, and/or the John Doe Defendants on July 17, 2014, under a theory of *respondeat superior*.**

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676.  "Rather, state actors are liable only for their own unconstitutional conduct."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).  There are two ways in which a state actor may be liable for the unconstitutional acts of a subordinate: (1) he participated in violating the plaintiff's constitutional rights, directed others to violate them, or had knowledge of and acquiesced in the the unconstitutional conduct; or (2) he is a policymaker and, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom that directly caused the constitutional harm.  *Id.*; *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  "Failure to" claims, such as failure to train, failure to discipline, or failure to supervise, "are generally considered a subcategory of policy or practice liability."  *Barkes*, 766 F.3d at 316.

Initially, this Court finds that there are no factual allegations to suggest Contino was directly involved with the use of force by Altemos, Bernardi, and/or the John Doe Defendants. There are no allegations that Contino participated in the events on July 17, 2014, directed any Defendant to violate McCullers's constitutional rights, or had knowledge of and acquiesced in the alleged violation.[13] Accordingly, this Court considers whether McCullers has stated a claim against Contino for policy or practice liability.

The Board, "with the review and approval of the commission," is responsible for, *inter alia*, establishing and administering training programs and continuing education programs for constables "concerning subjects the [B]oard may deem necessary and appropriate," establishing standards for the certification or qualification of constables to carry or use firearms, and certifying "constables who have satisfactorily completed the basic and continuing education and training requirements." 44 Pa.C.S. §§ 7144, 7148. Assuming *arguendo* that Contino is a policymaker in these areas,[14] this Court addresses McCullers's challenges to the sufficiency of the training programs and firearms qualification standards, as well as his suggestion that the Board's screening procedure before issuing firearms certifications was insufficient, separately from his remaining failure-to claims.

---

[13] To the extent the Second Amended Complaint includes broad conclusory allegations that Altemos, Bernardi, and/or the John Doe Defendants were acting under the personal direction of or with knowledge and acquiescence by Contino, *see, e.g.* Sec. Am. Compl. ¶ 77, there are no specific factual allegations to support these conclusory statements. These allegations are therefore insufficient to state a claim. *See Moore v. City of Phila.*, No. 14-133, 2014 U.S. Dist. LEXIS 27894, at *14-15 (E.D. Pa. Mar. 5, 2014) (dismissing the supervisory liability claim because the complaint did not allege any facts from which the court could infer the supervisor had actual knowledge of the subordinates' use of excessive force).

[14] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

### ii. McCullers has failed to state a claim against Contino for failure to train.

To state a failure-to-train claim, a plaintiff "must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." *Plonka v. Borough of Susquehanna*, No. 3:17-CV-00262, 2017 U.S. Dist. LEXIS 52069, at *7-8 (M.D. Pa. Apr. 5, 2017) (internal quotations omitted). Deliberate indifference to a training program may be found where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

McCullers has failed to state a failure-to-train claim against Contino for at least two reasons. First, he does not identify any "specific" deficiency in either the constable training program or the firearms qualification program that caused his injury. *See Plonka*, 2017 U.S. Dist. LEXIS 52069, at *8-9 (dismissing the plaintiff's failure-to-train claim because the amended complaint failed "to identify any specific deficiency in any training program that caused the constitutional violation alleged"). "Plaintiffs must identify a specific deficiency, rather than general ineffectiveness of training, and there 'must be an affirmative link between the alleged inadequacies of the training and the constitutional violation at issue.'" *Id.* (quoting *Niblack v. Murray*, No. 12-6910 (MAS), 2013 U.S. Dist. LEXIS 114670, at *20 (D.N.J. Aug. 14, 2013)). McCullers, without even acknowledging that there are two training programs, essentially claims that the training is deficient in its entirety. *See* Sec. Am. Compl. ¶ 32 (alleging that the training is inadequate regarding: announcing the constables' presence, making arrests, serving warrants, discharging weapons, using deadly force, "and similar training procedures knowingly and

foreseeably resulting in the [July 17, 2014] incident"). This is not sufficiently specific. *See*

*McLaughlin v. Cunningham*, No. 13-cv-01926, 2014 U.S. Dist. LEXIS 39707, at *34-35 (E.D.

Pa. Mar. 25, 2014) (dismissing the failure-to-train claim because, *inter alia*, the plaintiff failed to

identify the specific training that was not given and only asserted in a general and conclusory

fashion that the municipality failed to use adequate training prior to the incident). Without

identifying any specific deficiencies, McCullers has failed to show a causal link to the alleged

constitutional violation. *See Plonka*, 2017 U.S. Dist. LEXIS 52069, at *8-9.

Second, McCullers's claim fails because he does not allege facts to show Contino was

deliberately indifferent to a policy or practice that caused the constitutional violation. Initially,

this Court finds that the need for more or different training was not "so obvious, and the

inadequacy so likely to result in the violation of constitutional rights." *See City of Canton*, 489

U.S. at 390. The constable training program requires all persons wishing to be constables to

complete an 80-hour basic training course before they can be certified. *See* Report;[15] *see also* 44

Pa.C.S. § 7145. Additionally, constables must complete annual training of up to 40 hours. *See*

Report at 17; *see also* 44 Pa.C.S. § 7146. Both the 80-hour basic training curriculum and the

annual continuing education curriculum include, *inter alia*, training in the proper use of force.

*Id.* at 18-19. Constables must also be certified to carry or use firearms in the performance of

their duties. *Id.* at 21; *see also* 44 Pa.C.S. § 7148. Constables must complete a 40-hour basic

firearms course, which is offered after completion of the 80-hour basic training course. Report at

21. The basic firearms course covers, *inter alia*, safe handling techniques and marksmanship,

and includes interactive judgmental shooting scenarios. *Id.* Firearms certification, like the

---

[15]    This Report was cited in the Second Amended Complaint, *see* Sec. Am. Compl. ¶ 24, and
may therefore be considered in deciding the Motion to Dismiss, *see Winer Family Tr. v. Queen*,
503 F.3d 319, 327 (3d Cir. 2007) (explaining that in deciding a motion to dismiss, the court may
consider "documents incorporated into the complaint by reference").

continuing education requirement, is annual and requires constables to complete an additional 20-hour course. *Id.* 21-22. "Both [firearms] programs emphasize safety and judgmental shooting." *Id.* at 22. There is no allegation that Altemos, Bernardi, and/or the John Doe Defendants did not complete this training. Thus, the need for more or different training was not "so obvious" to establish deliberate indifference.

To state a claim based on Contino's deliberate indifference, McCullers must therefore show that Contino was on notice the training programs were "deficient in a particular respect," which is normally accomplished by showing a pattern of similar constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). However, the Second Amended Complaint, like the First Amended Complaint, fails to allege any specific[16] incidents where either Altemos or Bernardi previously used excessive force or otherwise committed constitutional violations in the course of their constable duties.[17] In order to survive a motion to dismiss, a plaintiff must allege specific facts identifying and describing the prior incidents of misconduct. *See Peters v. Ryan*, No. 16-01332-RGA, 2017 U.S. Dist. LEXIS 56410, at *6-7 (D.

---

[16]    The Second Amended Complaint merely repeats the same non-specific allegation made in the First Amended Complaint that "[u]pon information and belief, prior to the subject incident, Defendants Altemos, Bernardi and/or John Does (1-10) were involved in incidents in which they had used excessive force and/or committed constitutional violations while performing constabulary duties." *Cf.* Am. Compl. ¶ 48, *with* Sec. Am. Compl. ¶ 41. *See also* Opn. 25 (finding McCullers's non-specific allegations that Altemos or Bernardi had "violent propensities" and that there were public complaints were insufficient to state a claim). There is no suggestion that a firearm was involved in any of the prior incidents when Defendants Altemos, Bernardi and/or John Does were performing constabulary duties.

[17]    The allegations regarding prior domestic assaults between Altemos and his wife and between Bernardi and his wife are unrelated to their performance of constable duties. *See* Sec. Am. Compl. ¶¶ 36-38. Further, although McCullers alleges that a handgun was involved in the domestic argument between Altemos and his wife, there is no mention of a weapon being involved during the domestic incident between Bernardi and his wife. *See id.*

Del. Apr. 13, 2017) (dismissing the excessive force claim because the bald assertion of prior similar incidents of illegal assaults and excessive force failed to state a claim for relief). McCullers failed to include any details about the alleged prior incidents with Altemos or Bernardi in his pleadings. *See McLaughlin*, 2014 U.S. Dist. LEXIS 39707, at *34-35 (dismissing the failure-to-train claim because, *inter alia*, the plaintiff failed to provide any factual information about the prior incidents of excessive force by the defendant-officer to demonstrate deliberate indifference).

McCullers also failed to allege any facts to support his conclusory statement that the lack of training resulted in the excessive use of force by constables generally. *See* Sec. Am. Compl. ¶ 26; *Kipp v. Allegheny Cnty.*, No. 2:11-cv-1553, 2012 U.S. Dist. LEXIS 59139, at *3 (W.D. Pa. Apr. 27, 2012) (dismissing the excessive force claims against the supervisory defendant because the plaintiff did not plead any facts to support the conclusory allegation that the supervisor knew of prior misconduct or failed to enforce, or to discipline officers for prior violations of, prison policy). His suggestion that the proposed reforms in the 2014 Report put Contino on notice of the need for more or different training is not persuasive because the Report did not state that there was a need for additional training or that the current training program was inadequate. Rather, the Report proposed that the basic-training hours be increased from 80 hours to a range between 80 and 100 hours to allow the Board to change or add topics without having to remove others. *See* Report at 2, 25. The other proposals in the Report were unrelated to constable training. *See id.* at 26, 29 (recommending that constables be required to wear uniforms and that judicial authority to remove constables be expanded). As the United States Supreme Court has repeatedly commented, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to

something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392; *see also Connick*, 563 U.S. at 67. For this reason, the Court demands a higher standard of fault to impose liability: that of deliberate indifference. *City of Canton*, 489 U.S. at 392. McCullers has not met that standard.

For all these reasons, the failure-to-train claim against Contino is dismissed. *See Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *13-14 (E.D. Pa. June 30, 2008) (dismissing the failure-to-train claim because the amended complaint failed "to specifically demonstrate how the training programs for the police officers [we]re inadequate").

### iii. McCullers fails to state a claim against Contino for issuing firearms certifications without proper screening.

McCullers alleges, once again,[18] that Contino wrongly permitted Altemos, Bernardi, and/or the John Doe Defendants to carry firearms "when he/they could not as citizen(s), under the circumstances." *See* Sec. Am. Compl. ¶ 95. However, McCullers fails to explain why they would not have been permitted to carry firearms as citizens. The only possible allegations in the Second Amended Complaint that might tend to support this averment are, first, the suggestion that Altemos may have been prohibited from possessing a firearm because of a Protection from Abuse ("PFA")[19] order and, second, the reference to criminal charges against Altemos, Bernardi, and/or the John Doe Defendants. *See id.* ¶¶ 35-39. The allegations in both regards are insufficient.

First, McCullers does not allege that there was in fact a PFA order against Altemos on or about July 17, 2014, or that any such order included a firearms prohibition. Rather, McCullers

---

[18] McCullers simply repeats the allegations that were made in the First Amended Complaint in the Second Amended Complaint. *Cf.* Am. Compl. ¶¶ 41-42, 101-102, *with* Sec. Am. Compl. ¶¶ 35-36, 95. However, this Court previously held that these allegations were insufficient to state a claim against Contino. *See* Opn. 24-26.

[19] *See* Protection from Abuse Act, 23 Pa.C.S. §§ 6101-6122.

merely alleges that "[u]pon information and belief," Altemos had PFA orders entered against him, "dating as far back as *1998*," and that in 2013, "Altemos's wife *filed* a PFA against [him]." *Id.* at ¶¶ 35-36 (emphasis added). The Protection from Abuse Act allows certain persons to seek relief by filing a petition with the court alleging abuse by the defendant. *See* 23 Pa.C.S. § 6106(a). A temporary order may be entered ex parte, but within ten days of the filing of the petition, the court must hold a hearing to determine if a final order should be entered. *See* 23 Pa.C.S. § 6108. A final order "shall be for a fixed period of time not to exceed three years," although it may be extended upon agreement or after an additional hearing. *See id.* The order "may" direct the defendant to "temporarily" relinquish firearms and "may" prohibit the defendant from acquiring or possessing any firearms "for the duration of the order," but a firearms prohibition is not mandatory in a PFA order. *See* 23 Pa.C.S. § 6108(a)(7). Consequently, because McCullers does not allege that either (1) the prior PFA orders dating back to 1998 included firearm prohibitions and were extended and still in effect in July 2014, or (2) a PFA order was entered against Altemos in 2013 after his wife filed a petition, the order was still in effect at the time of the incident, and the order included a firearms prohibition, he has failed to show that Altemos would not have been eligible to carry a firearm as a citizen. *See* 18 Pa.C.S. § 6109 (explaining the restrictions for a citizen to be issued a firearms license); *see also* 18 Pa.C.S. § 6105(c)(6) (stating that a "person who is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S. § 6108, which order provided for the relinquishment of firearms during the period of time the order is in effect" is prohibited from possessing a firearm until "the expiration or vacation of an active protection from abuse order or portion thereof relating to the relinquishment of firearms").

Second, although McCullers refers to criminal charges "made against" Bernardi dating back to 2003, and to criminal "infractions" and criminal "incidents" involving Altemos, Bernardi, and/or the John Doe Defendants, *see* Sec. Am. Compl. ¶¶ 37-39, there are no allegations that any of these Defendants was ever convicted of a criminal offense. The mere bringing of charges, without a criminal conviction to certain criminal offenses, does not prohibit a person from possessing a firearm. *See* 18 Pa. C.S. §§ 6105, 6109. McCullers's allegations in this regard are therefore insufficient to show that Altemos, Bernardi, and/or the John Doe Defendants would not have been eligible to carry firearms as citizens.

Furthermore, McCullers does not allege that Altemos, Bernardi, or the John Doe Defendants failed to complete the required constable training programs or otherwise meet the firearms qualification[20] for constables. Under these circumstances, Contino had no authority to not issue firearms certifications to Altemos, Bernardi, and the John Doe Defendants. *See* 37 Pa. Code § 431.42 ("A constable holding certification who is 21 years of age or older and who is not precluded under State or Federal law from possessing or using a firearm may enroll in a firearms qualification course."); 37 Pa. Code § 431.44 (explaining that a constable who meets the eligibility for firearms qualification and completes the required training, attaining a passing score and demonstrating proficiency in each of the practical skills, "is qualified" to carry a firearm); 37 Pa. Code § 431.48 ("The Board will reactivate a firearms certification . . . .").

Additionally, for the reasons set forth dismissing the failure-to-train claim, McCullers also has not shown that Contino was deliberately indifferent to a policy, practice, or custom that caused his constitutional violation. His claim regarding firearms certification is dismissed.

---

[20] To the extent McCullers challenges the adequacy of the firearms qualification standards, this claim was addressed in the previous section regarding the failure-to-train claim.

### iv.    McCullers's remaining "failure-to" claims against Contino are dismissed.

McCullers asserts that Contino is also liable for failing to: (1) provide appropriate eligibility parameters for constables or a reasonable manner for their hire, election, and/or appointment; (2) supervise Altemos, Bernardi and the John Doe Defendants; (3) review and discipline them for prior misconduct; (4) recommend their removal; and (5) set-up an appropriate review board to accept public complaints.  *See* Sec. Am. Compl. ¶¶ 79-92, 95.  However, because Contino lacked the authority to act in these other areas, the claims are dismissed.

First, constables are either elected or, in the event of a vacancy, appointed by the court of common pleas.  44 Pa.C.S. §§ 7111-7122.  The Board has no involvement.

Similarly, the Board's responsibilities do not include the supervision of constables.  *See* 44 Pa.C.S. §§ 7144, 7148.  Rather, "[c]onstables are independent contractors acting without supervision."  *In re Pender*, No. MD-767-2010, 2010 Pa. Dist. & Cnty. Dec. LEXIS 179, at *6 (C.P. July 20, 2010).

The Board also has no involvement in reviewing, disciplining, or removing constables. This power lies solely with the court of common pleas.  *See* 44 Pa.C.S. §§ 7171-7172.

Finally, the Board has no authority to create a review board to consider complaints.  *See* 44 Pa.C.S. § 7144(9) (explaining the Board's duties in the limited areas of training and certification).

Because the Board had/has no authority in these areas, Contino was also without power to act.  Thus, he was not a policymaker.  *See Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (holding that a prerequisite to establishing municipal liability "is a showing that a policymaker was responsible either for the policy or, through acquiescence, for the custom" and that the "policy or custom was the proximate cause of the injuries sustained").  Moreover,

assuming arguendo Contino was a policymaker, McCullers has not, for the reasons previously discussed, alleged sufficient facts to show that Contino was deliberately indifferent. *See, e.g. Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that the plaintiffs' "vague assertions about the police department's failure to investigate other wrongdoings," coupled with the incident before the court, did not support a finding of a municipal policy or custom of "negligent supervision" rising to the level of deliberate indifference).

All of McCullers's claims against Contino are therefore dismissed.[21]

### E. Contino's motion to dismiss Lehigh County's crossclaim is granted.

Although all of McCullers's claims against Contino have been dismissed, Lehigh County's crossclaim for contribution and/or indemnification against Contino is not automatically dismissed. *See Core Constr. & Remediation, Inc. v. Vill. of Spring Valley*, No. 06-CV-1346, 2007 U.S. Dist. LEXIS 73069, at *29-30 (E.D. Pa. Sep. 27, 2007) ("A dismissal of one co-defendant does not necessitate the dismissal of a crossclaim against such defendant by a co-defendant."). Accordingly, this Court addresses Contino's motion to dismiss the crossclaim.[22]

---

[21] Because all the claims against Contino are dismissed, there is no need to address his qualified immunity defense.

[22] Contino asserts that the motion is timely because he was never served with Lehigh County's crossclaim. Counsel is correct that service was never effectuated. *See* Fed. R. Civ. P. 5(b)(2)(E) (providing that service may be complete by sending a pleading "to a registered user by filing it with the court's electronic-filing system . . . but is not effective if the filer or sender learns that it did not reach the person to be served"); Notice of Electronic Mailing, ECF No. 81. It appears that the failure to serve resulted because counsel for Contino, who had been terminated on June 30, 2016, when the First Amended Complaint was dismissed, had not yet reentered his appearance between the filing of the Second Amended Complaint and Lehigh County's Answer with Crossclaim, and service of the Answer with Crossclaim was only made electronically. Lehigh County does not mention either the service or timeliness issue in response to Contino's Motion to Dismiss.

In light of the fact that counsel for Contino was notified of, and received access to, the pleading within the time limit for service, *see* Fed. R. Civ. P. 4(m), this Court will not dismiss for failure to make timely service. Further, Contino's Motion to Dismiss is deemed timely.

In the memorandum of law supporting the motion, Contino argues that the crossclaim is premature because of his pending motion to dismiss McCullers's claims. However, at the time the crossclaim was filed, there was no pending motion to dismiss, *cf.* LC Answer (filed December 14, 2017), *with* C Mot. (filed December 20, 2017), and it has now been decided. Additionally, the case Contino cites to support this argument determined that it was "premature to address the question of whether and how any [of the co-defendants] may be liable in tort contribution or indemnity to the [other defendants] when actual liability [wa]s yet undetermined." CC Mem. 3 (quoting *Koehler v. Juniata Cnty. Sch. Dist.*, No. 1:07-CV-0117, 2008 U.S. Dist. LEXIS 32079, at *45 (M.D. Pa. Apr. 17, 2008) (dismissing the motions to dismiss the crossclaim without prejudice to the defendants' "ability to raise the issue at a more appropriate stage of this proceeding")). The court concluded that the motion to dismiss the crossclaim, and not the crossclaim itself, was premature. This decision is therefore contrary to Contino's position.

While this Court agrees that it would be premature to actually decide "whether and how" Contino may be liable when Lehigh County's liability is undetermined, it must nevertheless dismiss the crossclaim if Lehigh County has failed to state a claim for indemnification and/or contribution. *See Rainbow Trucking, Inc. v. Ennia Ins. Co.*, 88 F.R.D. 596, 597 (E.D. Pa. 1980) ("A crossclaim, like a complaint, need not detail facts sufficient to state a cause of action, but it must include a short and plain statement of the claim showing that the pleader is entitled to relief." (internal citations omitted)). Unlike the motion to dismiss in *Koehler*, Contino's motion to dismiss the crossclaim is not premature. *See A.C. v. Scranton Sch. Dist.*, No. 3:15-2198, 2017 U.S. Dist. LEXIS 46038, at *11-12 (M.D. Pa. Mar. 29, 2017) (rejecting the defendant's

argument that the crossclaim against it for contribution and indemnification was premature and dismissing the crossclaim).

To establish a right of contribution, Lehigh County must demonstrate that it and Contino are joint tortfeasors. *See Travelers Indem. Co. v. Stengel*, 512 F. App'x 249, 251-52 (3d Cir. 2013). Joint tortfeasors are "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S. § 8322.[23] In determining joint and several liability, courts consider

> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place, or result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same *injuria* as distinguished from the *damnum*.

*Morris v. Lenihan*, 192 F.R.D. 484, 490 (E.D. Pa. 2000) (quotations omitted). "In order to be joint tortfeasors, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.'" *Foulke v. Dugan*, 212 F.R.D. 265, 270 (E.D. Pa. 2002) (quoting *Lasprogata v. Qualls*, 397 A.2d 803, 806 n.4 (Pa. Super. 1979)). "Two persons are not acting jointly for the purposes of committing a joint tort if 'the acts of the original wrongdoer [and the joint tortfeasor] are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff.'" *Id.* (quoting *Lasprogata*, 397 A.2d at 179, n.3). However, contribution "is applicable to joint tortfeasors regardless of the basis upon which they are found liable to the plaintiff." *Alexander v. Hargrove*, No. 93-5510, 1994 U.S. Dist. LEXIS 11488, at *20-21 (E.D.

---

[23]     "Section 1983 recognizes that in certain areas federal law is unsuited or insufficient to furnish suitable remedies and that federal law simply does not cover every issue which may arise in civil rights actions." *Alexander v. Hargrove*, No. 93-5510, 1994 U.S. Dist. LEXIS 11488, at *18-19 (E.D. Pa. Aug. 16, 1994) (applying state law to the contribution/indemnification crossclaim).

Pa. Aug. 16, 1994) (citing *Moran v. G. & W.H. Corson, Inc.,* 586 A.2d 416, 420 (Pa. Super. 1991)).

"Unlike contribution, which involves equal apportionment of liability among concurrent tortfeasors, indemnification shifts the entire loss from one party to another." *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993). "[A] defendant is entitled to indemnification when its liability arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party." *Morris*, 192 F.R.D. at 489 (citing the employer-employee relationship as an example of such a "legal relationship"). The courts consider whether the party seeking indemnity had any part in causing the injury. *Id.* (citing *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986)). Where the defendants seeking indemnification are accused of violating the plaintiff's constitutional rights, their "liability would not come about by the operation of law or through a legal relationship, but through their own independent acts or omissions," and therefore not entitle them to indemnity. *Id.*

Lehigh County's crossclaim for contribution and/or indemnification is confined to three paragraphs, including the wherefore clause. *See* LC Answer 11-12. First, Lehigh County, without admitting the truth of McCullers's allegations, "incorporates the allegations of Plaintiff's Second Amended Complaint (Doc. No. 79) to the extent such allegations pertain to the Cross-Claim Defendants." *Id.* Second, Lehigh County alleges that "[i]f it is judicially determined that the allegations of Plaintiff's Second Amended Complaint (Doc. No. 79) are true, said allegations being specifically denied as they relate to Defendant Lehigh County, then one or more of the Cross-Claim Defendants[24] are alone liable to Plaintiff, jointly or severally liable, or liable over to

---

[24] Altemos, Bernardi, and Contino are named as crossclaim defendants.

Defendant Lehigh County for indemnity and/or contribution." *Id.* Finally, Lehigh County asserts that, if it is found liable to McCullers, "the Cross-Claim Defendants, to the extent permitted by law and not barred by law or any order of any court of competent jurisdiction, are jointly and severally liable and/or liable over to Defendant Lehigh County." *Id.*

These allegations fail to state a claim for contribution and/or indemnification. *See Rainbow Trucking, Inc.*, 88 F.R.D. at 597 (finding that the crossclaim for contribution and/or indemnification, which alleged merely that the plaintiffs were entitled to a verdict and incorporated the plaintiffs' allegations into the crossclaim, did not show how or why the crossclaimant was entitled to the requested relief from the other defendants).

As to its request for contribution, Lehigh County does not allege any facts to suggest that it and Contino are joint tortfeasors. The crossclaim does not even mention the words "joint tortfeasor," let alone discuss the factors a court considers in determining joint and several liability. *See Bank v. City of Phila.*, 991 F. Supp. 2d 523, 538 (E.D. Pa. 2014) (dismissing the crossclaim because it did not allege that the crossclaim litigants were joint tortfeasors, and was devoid of any discussion of the factors the courts use to determine joint and several liability). Lehigh County's conclusory allegation that Contino is "jointly or severally liable," which is notably made in the same sentence that includes the alternative allegation that Contino is "liable over" to Lehigh County, is insufficient to state a claim. *See AMCO Ins. Co. v. Varish Constr., Inc.*, No. 1:09-CV-01813, 2010 U.S. Dist. LEXIS 83382, at *18-19 (M.D. Pa. July 15, 2010) (dismissing the crossclaim for indemnification and contribution for failure to state a claim because the crossclaimant alleged nothing more than legal conclusions, unsupported by fact). Further, the allegations of McCullers's Second Amended Complaint, which are incorporated into

the crossclaim, are also insufficient to show the joint and several liability of Lehigh County and Contino. Lehigh County has therefore failed to state a claim for contribution.

Lehigh County has also failed to state a claim for indemnification because its liability as to the actions of Contino arises, if at all, out of its own conduct. *See Lampkin v. Gappa*, No. 10-3015, 2011 U.S. Dist. LEXIS 35837, at *9 (E.D. Pa. Mar. 27, 2011) (explaining that indemnity arises by operation of law, without active fault on the part of the party seeking indemnification, to pay damages caused by another person's negligence). McCullers alleges, *inter alia*, that Lehigh County was at fault for the injuries he suffered by allowing Altemos and Bernardi to perform constable duties on its behalf despite knowledge that the officers had violent tendencies. *See* Opn. 11-13, 15 (explaining that although Lehigh County had no authority to train, supervise, or discipline Pennsylvania constables, it may be liable for engaging a constable to perform law enforcement functions who is known to violate the rights of the citizens he encounters in performing such functions (citing *Villanova v. Solow*, No. 97-6684, 1998 U.S. Dist. LEXIS 14686, at *6-7 (E.D. Pa. Sept. 18, 1998))). Furthermore, there is no alleged legal relationship that would cause Lehigh County to be liable for the actions of Contino. *See Morris*, 192 F.R.D. at 489 (holding that "a defendant is entitled to indemnification when its liability arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party" (citing *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370-72 (Pa. 1951))).

Lehigh County's crossclaim is therefore dismissed as to Contino.

## VI. CONCLUSION

McCullers fails to allege sufficient factual allegations to support an equal protection/race discrimination claim against Altemos and Contino because, *inter alia*, he does not describe any

similarly situated individuals who received more favorable treatment.  This claim is dismissed, and any reference to Altemos among these allegations is stricken.  Next, in the absence of any factual allegations of Contino's involvement or the exhaustion of any state post-deprivation remedies, McCullers's unconstitutional taking claim against Contino is dismissed.  The remaining claims against Contino, which include various theories of "failure-to" liability, are also dismissed because McCullers failed to show Contino's deliberate indifference and/or because Contino lacked the authority to act.  Finally, Lehigh County's crossclaim against Contino for contribution and/or indemnification is dismissed because there are no allegations that Lehigh County and Contino were joint tortfeasors or that there was any legal relationship between the two compelling Contino to cover damages on behalf of Lehigh County.  Contino is terminated as a party in this action.

A separate order will be issued.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge